## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

| | | |
|---|---|---|
| PHILIP SERPE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. _____ |
| | : | |
| FEDERAL TRADE COMMISSION; | : | Hon. Judge _____ |
| | : | |
| Service pursuant to Fed. R. Civ. P. 4(i)(1),(2): | : | |
| Hon. Markenzy Lapointe, U.S. Attorney | : | |
| U.S. Attorney's Office, Southern District of Florida | : | |
| 500 East Broward Boulevard | : | |
| Ft. Lauderdale, FL 33394 | : | |
| | : | |
| Federal Trade Commission | : | |
| Attn: Civil Process Clerk | : | |
| U.S. Attorney General | : | |
| 950 Pennsylvania Avenue, NW | : | |
| Washington, DC 20530-0001 | : | |
| | : | |
| Federal Trade Commission | : | |
| 600 Pennsylvania Avenue, NW | : | |
| Washington, DC 20580 | : | |
| | : | |
| AND | : | |
| | : | |
| HORSERACING INTEGRITY AND | : | |
| SAFETY AUTHORITY, INC., | : | |
| | : | |
| Service pursuant to Fed. R. Civ. P. 4(h): | : | |
| John C. Roach, Registered Agent | : | |
| 176 Pasadena Drive | : | |
| Building One | : | |
| Lexington, KY 40503 | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## VERIFIED COMPLAINT

Plaintiff Philip Serpe, for his Verified Complaint against Defendants the Federal Trade Commission ("FTC") and Horseracing Integrity and Safety Authority, Inc. ("Authority"), states as follows:

### I.    INTRODUCTION

1.    Serpe brings this action because the Horseracing Integrity and Safety Act ("HISA") and the regulations promulgated under it ("HISA Rules") are unconstitutional. HISA and the HISA Rules are unconstitutional—both facially and as applied—because, *first*, HISA's delegation of federal regulatory power to the Authority violates the private nondelegation doctrine, and, *second*, HISA and the HISA Rules violate the Seventh Amendment's right to a jury trial.

2.    Because HISA and the HISA Rules are unconstitutional, the Authority's enforcement of HISA and the HISA Rules against Serpe is unconstitutional. Serpe therefore challenges the Authority's enforcement and seeks to dissolve and vacate the provisional suspension imposed against him, which is causing Serpe to suffer irreparable injury.

3.    The Court should declare HISA and the HISA Rules to be unconstitutional, preliminarily and permanently enjoin Defendants from enforcing HISA and the HISA Rules against Serpe, and dissolve and vacate the Authority's provisional suspension against Serpe.

### II.    PARTIES, JURISDICTION, AND VENUE

4.    Serpe is an individual who resides at 2412 N.E. 9th Street, Hallandale Beach, FL 33309.

5.    The Authority is a nonprofit Delaware corporation whose registered agent for service of process is John C. Roach, 176 Pasadena Drive, Building One, Lexington, KY 40503.

6.      The FTC is the federal agency given limited authority under HISA. Its headquarters are in Washington, DC.

7.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case presents claims arising under the U.S. Constitution. The Court also has subject-matter jurisdiction under 28 U.S.C. § 1337 because HISA purports to regulate commerce. The Court may grant the requested injunctive relief pursuant to 5 U.S.C. § 706 and Fed. R. Civ. P. 65. The Court may grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57.

8.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Verified Complaint occurred within this judicial district, including that Serpe resides and is suffering harm in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(3) because the Authority and the FTC are subject to this Court's personal jurisdiction. Venue is proper under 28 U.S.C. § 1391(e)(1) because the FTC is an agency of the United States and is deemed to reside in this judicial district, a substantial part of the events or omissions giving rise to the Verified Complaint occurred in this judicial district, and Serpe resides in this judicial district.

## III.    FACTS

### A.    <u>The Authority is unaccountable for its exercise of federal regulatory power.</u>

*HISA's broad delegation of federal regulatory power to the Authority*

9.      For more than 100 years, Thoroughbred racing in the United States has been regulated solely by states through their traditional police powers. That dynamic was dramatically upended when, in 2020, HISA became federal law. *See generally* 15 U.S.C. §§ 3051-3060.

10.      HISA purports to nationalize the regulation of horseracing uniformly across the country. To do so, HISA unconstitutionally grants to the Authority, which is a nongovernmental,

private, independent, self-regulatory, nonprofit corporation, broad federal regulatory power to develop, implement, and enforce the HISA Rules in preemption of existing state regulations.

11.     HISA's legislative mandate is "sweeping," covering virtually all aspects of horseracing. *See id.* §§ 3053(a), 3054(a); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 872 (5th Cir. 2022). HISA empowers the Authority to "exercise independent and exclusive national authority over . . . all horseracing safety, performance, and anti-doping and medication control matters for covered horses, covered persons, [and] covered horseraces." 15 U.S.C. § 3054(2). A "Covered Horse" is any thoroughbred horse that is subject to HISA. *Id.* § 3051(4). A "Covered Horserace" is any horserace involving Covered Horses. *Id.* § 3051(5).

12.     Despite being a private entity, the Authority is delegated federal regulatory authority and sits jurisdictionally within a federal regulatory agency—the FTC.

13.     HISA's delegation of federal regulatory authority to the Authority is breathtakingly broad. In general, the Authority may, among other things, regulate the horseracing industry throughout the United States and collect and spend fees, including monetary fines and penalties, assessed against those whom it regulates. *Id.* § 3052(3)(C).

14.     The Authority's specific powers are far-reaching. The Authority may adopt rules governing doping, medication control, and racetrack safety; investigate violations of its rules by issuing and enforcing subpoenas and instituting charges; and, upon instituting charges for violations of the rules, adjudicate its charging decisions through an arbitration process constructed by the Authority, under rules developed by the Authority, and by an arbitrator selected and trained by the Authority.

*The ADMC Program's strict liability treatment of Clenbuterol*

15.     The Authority's rules on "permitted and prohibited medications, substances, and methods," *see id.* § 3055(c)(1)(B), form the Anti-Doping and Medical Control Program ("ADMC Program") in HISA Rule 3000 Series. *See* 88 Fed. Reg. 5070-5201.

16.     The ADMC Program distinguishes between Banned Substances and Controlled Substances. *See* HISA Rule 3111(a)(1)-(2). A Banned Substance is "prohibited at all times . . . on the basis of the Agency's determination that medical, veterinary, or other scientific evidence or experience supports their actual or potential (i) ability to enhance the performance of Covered Horses, (ii) masking properties, or (iii) detrimental impact on horse welfare[.]" HISA Rule 3111(a)(1). A Controlled Substance is allowed to be used or administered at certain times but is "prohibited to be present in a Post-Race Sample or Post-Work Sample, except as otherwise specified[.]" *Id.*

17.     The medication at issue in this case—Clenbuterol—is regulated as a Banned Substance.

18.     Under the ADMC Program, "[i]t is the personal and nondelegable duty of the Responsible Person to ensure that no Banned Substance is present in the body of his . . . Covered Horse(s)." HISA Rule 3212.

19.     A Covered Person "is therefore strictly liable for any Banned Substance . . . found to be present in a Sample collected from his . . . Covered Horse(s)." HISA Rule 3212(a); *see* 15 U.S.C. § 3057(a)(2) (The Authority may impose "strict liability for covered trainers for . . . the presence of a prohibited substance or method in a sample or the use of a prohibited substance or method[.]").

20.     Strict liability is harsh on the Covered Person but the lightest of all burdens for the Authority to prove.

21.     "[I]t is not necessary [for the Authority] to demonstrate intent, fault, negligence, or knowing use on the part of the Responsible Person in order to establish . . . [an ADMC Program violation for a Banned Substance]." HISA Rule 3212.

22.     In other words, because a Banned Substance is "prohibited at all times," there is zero tolerance.

23.     No amount of a Banned Substance is permitted—ever, regardless of circumstances.

24.     Even the presence of a Banned Substance caused by environmental or inadvertent contamination is not excused, only potentially mitigating the consequences imposed for an ADMC Program violation but not providing a complete defense.

### The Authority's private enforcement through HIWU

25.     HISA permits, but does not require, the Authority to commence an enforcement action for an alleged ADMC Program violation in federal district court. *See* 15 U.S.C. § 3054(j)(1).

26.     Where the Authority chooses not to commence an enforcement action in federal district court, it may commence the enforcement action in an agency-friendly administrative resolution process, which starts with a disciplinary process established by the Authority.

27.     An action in federal district court would, of course, include all the protections of the federal judicial system, including adjudication by a Senate-confirmed, lifetime-appointed federal district court judge; pleading standards, motion practice, and access to discovery under the Federal Rules of Civil Procedure; evidentiary rulings under the Federal Rules of Evidence; and entitlement to a jury trial.

28.     The administrative resolution process, on the other hand, lacks these protections. It is no surprise, then, that the Authority has never initiated an enforcement action in federal district court. In every contested ADMC Program enforcement action commenced to date, the Authority has chosen the administrative resolution process.

29.     As required under HISA, the Authority contracted enforcement of the ADMC Program to Drug Free Sport, LLC ("Drug Free Sport"), a private company. 15 U.S.C. § 3054(e)(1)(A),(B). Drug Free Sport conducts enforcement through a specially created division, the Horseracing Integrity and Welfare Unit ("HIWU"). HIWU is yet another private entity within the Authority's federal regulatory structure.

30.     HIWU prosecutes alleged ADMC Program violations, and the Authority may "impose[] a final civil sanction for a violation committed by a covered person pursuant to the rules or standards of the Authority[.]" 15 U.S.C. § 3058(a).

31.     At the first level of the administrative resolution process, an arbitration is held before an arbitrator selected from an Arbitral Body. The Authority and HIWU selected and contracted with JAMS to supply the pool of arbitrators. *See* HISA Rule 7020(a). There is a minimum of five arbitrators in the pool, all of whom are "appointed by mutual agreement of the Authority and [HIWU]." HISA Rule 7030(a).

32.     It is not hyperbole—but it is remarkable—that HIWU selects the individuals who adjudicate its enforcement actions for alleged ADMC Program violations. In this way, HISA and the HISA Rules consolidate

33.     The arbitration is subject to the Arbitration Procedures promulgated in HISA Rule 7000 Series. ***There is no entitlement to a jury trial***.

34.     The Authority constructed the administrative resolution process so that HIWU has the easiest of paths for proving an ADMC Program violation.

35.     Neither the Authority nor HIWU has an obligation to conduct an independent pre-charging or pre-enforcement investigation. For example, the Authority and HIWU are not required to inspect the barn or stall where the Covered Horse was kept prior to collection of the horse's blood or urine samples, conduct DNA testing for confirming the identity of a horse's sample, interview witnesses, investigate alternative sources, subpoena video surveillance or recordings, or collect or disclose exculpatory evidence.

36.     During the arbitration, there is no entitlement to documents or information, unlike in federal district court. "Requests for discovery and wide-ranging or otherwise disproportionate document requests shall not be permitted." HISA Rule 7260(b); 88 Fed. Reg., *Self-Regulatory Organization's Summary of Comments Received Pre-Submission and Its Responses to Those Comments* (same).

37.     "[D]ocument production requests ***may*** be permitted," but even these are subject to the discretion of the arbitrator. HISA Rule 7260(b) (emphasis added). This means that if the arbitrator determines that document requests "do not fit in the circumstances," there is no procedural document- or information-gathering mechanism at all. *See id.*

38.     An arbitrator may issue "subpoenas for witnesses, documents, information, or other evidence upon the request of any party," but these are also subject to the arbitrator's discretion, and the arbitrator must "keep in mind the expedited nature of the proceedings . . . " HISA Rule 7260(f).

39.     HISA Rule 7260(f) takes interrogatories and depositions completely off the table. "[T]he arbitrator(s) . . . shall not issue a subpoena for a deposition, because depositions (along with

formal written discovery in civil litigation) are not in keeping with the expedited nature of the Arbitration Procedures." *Id.*

40.     Upon information and belief, arbitrators have routinely denied basic discovery requests in ADMC Program enforcement actions that would have been available under the Federal Rules of Civil Procedure.

41.     The lack of discovery tools necessary to put on a defense is exacerbated by HIWU's lopsided burden of proof.

42.     HIWU has "the burden of establishing that a violation . . . has occurred to the comfortable satisfaction of the [arbitrator], bearing in mind the seriousness of the allegation that is made." HISA Rule 3121(a). "This standard of proof in all cases is greater than a mere balance of probability (i.e., preponderance of the evidence) but less than clear and convincing evidence or proof beyond a reasonable doubt." *Id.*

43.     HIWU must prove an ADMC Program violation for a Banned Substance through scientific analysis and testing of a horse's blood and/or urine samples as conducted by laboratories selected by the Authority. *See* HISA Rule 3122.

44.     The laboratories' scientific analysis and testing are subject to the Equine Standards for Laboratories and Accreditation promulgated in HISA Rule 6000 Series.

45.     These "Laboratory Standards" carry the force of federal regulations, *see* 88 Fed. Reg., and are binding on the Authority and the FTC.

46.     In theory, the Laboratory Standards are meant as scientific safeguards for ensuring authenticity and minimum reliability of a laboratory's analysis of samples. *See* 15 U.S.C. § 3055(4)(D).

47.     The HISA Rules require that a horse's blood and urine samples are collected for scientific testing and analysis. *See generally* HISA Rule 5000 Series. At the time of collection, A Samples and B Samples of blood and urine are collected in blood tubes and urine containers, respectively. Sample collection is subject to the Equine Standards for Testing and Investigation in HISA Rule 5000 Series.

48.     A Responsible Person may choose to waive analysis of the B Sample, which allows HIWU to prove a HISA Rule 3212 violation by demonstrating merely "the presence of a Banned Substance . . . in the Covered Horse's A Sample . . ." HISA Rule 3212(b)(1).

49.     However, where the B Sample is analyzed, HIWU is deemed to have established "sufficient proof" of a HISA Rule 3212 violation by demonstrating that the "B Sample confirms the presence of the Banned Substance . . . found in the A Sample[.]" HISA Rule 3212(b)(2).

50.     If the B Sample confirms the A Sample, the Responsible Person **shall** be provisionally suspended upon notification of the B Sample confirmation. HISA Rule 3247(a)(1).

51.     The Authority's selected laboratories are "presumed to have conducted sample analysis and custodial procedures in accordance with the Laboratory Standards [in HISA Rule 6000 Series]." HISA Rule 3122(c).

52.     A Responsible Person may only "rebut this presumption by establishing that a departure from the Laboratory Standards occurred that could reasonably have caused the Adverse Analytical Finding or other factual basis for any other violation asserted." *Id*. Where the presumption is rebutted, "the [Authority] shall have the burden of establishing that such departure did not cause the Adverse Analytical Finding or other factual basis for the violation asserted." *Id.*

53.     Cumulatively, HISA Rule 3122 establishes a "burden-shifting framework" that (1) presumes the validity of the A Sample and B Sample results, (2) requires the Responsible Person

to prove that a laboratory's departure from the HISA Rules could have caused the detection of the Banned Substance (without access to discovery), and, where such a departure is proved, (3) permits HIWU to nonetheless prove its case by showing that the laboratory's departure did not result in the detection of the Banned Substance. In practice, arbitrators apply this framework to nullify the HISA Rules that do not touch upon a laboratory's testing of Samples—like chain of custody and laboratory certification requirements.

54.     To give enforcement its teeth, HISA directs the Authority to "develop a list of civil penalties with respect to the enforcement of rules for covered persons and covered horseraces under its jurisdiction." 15 U.S.C. § 3054(i). And how sharp the teeth are—even for a first-time violation.

55.     Where HIWU has proved a HISA Rule 3212 violation, all the following consequences must be imposed: (1) disqualification of the horse's results, (2) forfeiture of the purse, (3) two-year period of ineligibility, *i.e.*, suspension, and (4) a monetary fine up to $25,000. *See* HISA Rules 1029, 3223. Additionally, the arbitrator may require the Responsible Person to pay some or all of HIWU's share of arbitration costs. HISA Rule 3223.

56.     A Responsible Person may avoid some, but not all, of the consequences if he proves he lacked any fault:

> If a Covered Person establishes in an individual case that he or she bears No Fault or Negligence for the Anti-Doping Rule Violation(s) charged, the otherwise applicable period of Ineligibility and other Consequences for such Covered Person shall be eliminated (except for those set out in Rule 3221(a)[1] and Rule 3620[2]). When the violation is of Rule 3212 (presence of a Banned Substance), the Covered Person must also establish how the Banned Substance entered the Covered Horse's system as a pre-condition to application of this Rule 3224(a)."

HISA Rule 3224(a).

---

[1] HISA Rule 3221(a) requires automatic disqualification of the Covered Horse's race results.
[2] HISA Rule 3620 requires that a violation be publicly disclosed.

57.     If the Responsible Person proves he lacked "Significant Fault or Negligence," the arbitrator has the discretion, but is not obligated, to reduce the consequences. HISA Rule 3225.

58.     But without any requirement that the Authority conduct a pre-enforcement investigation, and in the absence of the procedural protections and discovery tools that exist in federal district court, a Responsible Person is hard pressed to prove he or she lacked fault or negligence or lacked significant fault or negligence.

59.     The arbitrator's decision "shall be the final decision or civil sanction of the Authority" but is subject to review by an Administrative Law Judge. 15 U.S.C. § 3055(4)(B). This is the second level of HISA's administrative resolution process.

60.     The ALJ's decision is subject to discretionary review by the FTC. *Id.* Review by the FTC is the third level of HISA's administrative resolution process.

61.     After the FTC's review, or the FTC's decision to not grant discretionary review, a Responsible Person may appeal under the Administrative Procedure Act ("APA"). *See* 15 U.S.C. § 3058(c)(2)(B) ("If an application for review under subparagraph (A) is denied, the decision of the administrative law judge shall constitute the decision of the Commission without further proceedings.").

62.     HISA delegates to the Authority breathtakingly broad and coercive federal regulatory power over virtually all horseracing activities in the United States. But HISA's enforcement provisions, which empower the Authority to commence enforcement without any oversight by the FTC, insulate the Authority and HIWU and leave them unaccountable to any political actor. *See* 15 U.S.C. § 3052(a); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black ("Horsemen's II")*, 107 F.4th 415, 428-31 (5th Cir. 2024).

63.     HISA attempted to justify this unconstitutional delegation of federal regulatory power by purporting to provide oversight by the FTC. However, when it comes to ADMC enforcement decisions, the FTC acts as a rubber stamp and lacks any power to review an enforcement decision until *after* enforcement is complete and penalties are imposed. *See* 15 U.S.C. § 3058. The Authority and HIWU are therefore unchecked in their enforcement against a Responsible Person—even where they do so unconstitutionally—unless and until the FTC exercises its discretion to grant review.

**B.      The Authority's enforcement against Serpe is unconstitutional.**

64.     Serpe is a horse trainer who trained the horse Fast Kimmie.

65.     On August 10, 2024, Fast Kimmie finished first in a race run at Saratoga Racetrack.

66.     As a result of winning the race, A Samples and B Samples of Fast Kimmie's blood and urine were collected.

67.     Testing and analysis of the A Samples of blood and urine was performed by the Kenneth L. Maddy Equine Analytical Chemistry Laboratory at the University of California, Davis ("UC Davis").

68.     The Authority began flexing its enforcement muscle against Serpe on September 4, 2024, when HIWU notified Serpe that Fast Kimmie's A Sample of urine had resulted in an adverse analytical finding ("AAF") for the detection of Clenbuterol.

69.     This was the first time that Serpe learned of his alleged violation of the ADMC Program, even though the subject race occurred nearly a month earlier.

70.     By written response to HIWU, Serpe denied he administered, or caused the administration of, Clenbuterol to Fast Kimmie.

71.     Adamant in his innocence, Serpe requested that B Sample testing and analysis be performed, exercising his right under HISA Rule 3246.

72.     Serpe also requested that HIWU conduct blood and hair testing, together with DNA analysis, which would identify and confirm whether the A Sample tested by UC Davis was actually collected from Fast Kimmie.

73.     HIWU responded that Clenbuterol was not detected in Fast Kimmie's A Sample of blood and denied Serpe's request for hair testing and DNA analysis.

74.     Hair testing and DNA analysis are critical to Serpe's defense against the alleged ADMC Program violation.

75.     B Sample testing and analysis was performed by the Ohio Department of Agriculture Analytical Toxicology Laboratory

76.     On October 10, 2024, HIWU issued Serpe a charge letter, which is attached as **Exhibit A**, stating that testing and analysis of the B Sample of urine confirmed the detection of Clenbuterol.

77.     The charge letter further stated, "[A]s required by ADMC Program Rule 3247(a)(1) of the Protocol, HIWU has imposed a Provisional Suspension on you as the Responsible Person effective as of today's date **October 10, 2024**" (original emphasis).

78.     The charge letter advised Serpe that he had one week—until October 17, 2024—to (1) admit the ADMC Program violation and accept, dispute, or seek to mitigate HIWU's proposed consequences or (2) deny the ADMC Program violation and dispute HIWU's proposed consequences at a "hearing in accordance with ADMC Program Rule 3261 (Protocol) and Arbitration Procedures."

79.     HIWU's proposed consequences consist of disqualification of Fast Kimmie's race result, including forfeiture of all purses and compensation; a 14-month suspension; a fine of $25,000 or 25% of the total race purse (whichever is greater) and payment of some or all of HIWU's adjudication and legal costs (under HISA Rule 3223); public disclosure in accordance with HISA Rule 3620; and all other consequences which may be required under the HISA Rules.

80.     To contest the alleged ADMC Program Violation and dispute the proposed consequences, HIWU's charge letter presented Serpe only the option of doing so "at a hearing before an adjudicator from the Arbitral Body in accordance with ADMC Program Rule 3261 of the Protocol and Arbitration Procedures codified at Rule Series 7000." Ex. A. If Serpe declined to proceed with the arbitration, then he is "deemed to have waived [his] right to a hearing, admitted the Anti-Doping Rule Violation(s) charged, and accepted the Consequences specified by HIWU in [the] EAD Charge Letter without any mitigation of those Consequences." *Id.* All the proposed consequences would then be imposed automatically, including the monetary fine.

81.     On October 14, 2024, Serpe responded to HIWU's charge letter by demanding, in writing, that HIWU rescind the provisional suspension and advise whether it will bring its enforcement action in federal district court. Serpe's response is attached as **Exhibit B**.

82.     The next day, HIWU responded by referring Serpe to the charge letter "for an explanation of the options available to him under [the ADMC Program]." HIWU's response is attached as **Exhibit C**.

83.     Even though HISA explicitly permits HISA to "commence a civil action against [Serpe] . . . to enforce any civil sanctions imposed . . . and for all other relied to which the Authority may be entitled," HIWU's charge letter does not present Serpe the option to have HIWU's enforcement action commenced in federal district court.

15

84.     To date, neither the Authority nor HIWU has taken any steps to bring its HISA enforcement action against Serpe in federal district court.

**C.      Recent judicial decisions make clear that HISA and the HISA Rules are unconstitutional.**

85.     Two recently decided cases are relevant to Serpe's causes of action.

86.     In *Horsemen's II*, the Fifth Circuit Court of Appeals held that "HISA's enforcement provisions [] violate the private nondelegation doctrine." 107 F.4th at 435.

87.     In *S.E.C. v. Jarkesy*, 144 S. Ct. 2117, 219 L. Ed. 2d 650 (2024), the United States Supreme Court held that the Seventh Amendment's jury trial right applied to enforcement of the Security and Exchange Commission's anti-fraud regulations. Under the Court's ruling, an agency's enforcement for civil monetary penalties must be brought in an Article III court and is subject to the Seventh Amendment's jury trial right.

**D.      Serpe is suffering, and will continue to suffer, irreparable harm.**

88.     The Authority's provisional suspension against him means that Serpe is currently suspended from participating in HISA-regulated training activities and Covered Horseraces in every state outside the Fifth Circuit—even though HIWU has yet to prove its charge alleging an ADMC Program violation.

89.     The imposition of the provisional suspension required Serpe to transfer 19 horses out of his case to other trainers in order for the horses, per HIWU's non-promulgated policy, to be able to race.

90.     As a result of the provisional suspension, Serpe is being denied once-in-a-lifetime racing opportunities involving horses that he previously trained and would have continued to train but for the suspension, training income, and racing winnings.

91.     In addition to lost once-in-a-lifetime racing opportunities, training income, and racing winnings, Serpe has lost customers, goodwill, and business.

92.     Further, the provisional suspension is causing Serpe reputational harm. HIWU reported the alleged ADMC Program violation on its website. HIWU, "Pending ADMC Violations," HIWU.ORG, https://www.hiwu.org/cases/pending?terms=serpe (last visited Oct. 16, 2024). The Thoroughbred Daily News, a website that is widely read in the horseracing industry, published an article about the alleged ADMC Program violation. Bill Finley, "Trainer Phil Serpe has Horse Test Positive for Clenbuterol" (Sep. 5, 2024), THOROUGHBREDDAILYNEWS.COM, https://www.thoroughbreddailynews.com/trainer-phil-serpe-has-horse-test-positive-for-clenbuterol/.

93.     Over his more-than-40-year career, with more than 8,000 starts, none of Serpe's trained horses have tested positive for a prohibited medication.

94.     Prior to his provisional suspension, Serpe earned $691,499 across 68 starts in 2024. His career earnings are $34,770,002, with a per-start average earnings of $4,316. Serpe's career win percentage is 13%—rising as high as 18% (three years) but never falling below 5% (2020). Serpe's career win-place-show percentage is 39%—rising as high as 50% (2021) but never falling below 24% (2020). Serpe's Equibase statistics are attached as **Exhibit D**.



Equibase,      "Trainer      Profile    |      Philip      M.      Serpe,"
https://www.equibase.com/profiles/Results.cfm?type=People&searchType=T&eID=1692      (last
visited Oct. 16, 2024).

95.    Still, the economic value of the losses of once-in-a-lifetime racing opportunities,
training income, racing winnings, customers, goodwill, and business are difficult—if not
impossible—to quantify. The losses are irreparable in nature.

96.    Unless Defendants are enjoined from taking enforcement action against Serpe
under HISA and the HISA Rules, including by enforcing the provisional suspension, Serpe will
continue to suffer irreparable harm.

## IV.    CAUSES OF ACTION

<div align="center">

**COUNT I**
**Violation of the Private Nondelegation Doctrine**
**(Administrative Procedure Act, 5 U.S.C. § 702, & Implied Equitable Cause of Action)**

</div>

97.    Serpe adopts each of the above averments as if restated in full.

98.     In *Horsemen's II*, the Fifth Circuit declared HISA's enforcement provisions to be "facially unconstitutional" because they "violate the private nondelegation doctrine." *Horsemen's II*, 107 F.4th at 421.

99.     The HISA enforcement provisions deemed to be unconstitutional in *Horsemen's II* are the same enforcement provisions that the Authority, through HIWU, is exercising against Serpe.

100.    As the Fifth Circuit correctly observed, under HISA, the FTC does not "retain[ ] the discretion to approve, disapprove, or modify" the Authority's enforcement actions. *Id.* at 430 (citation omitted).

101.    HISA does not "require the Authority or [HIWU] to seek the FTC's approval before investigating, searching, charging, sanctioning, or suing. All these actions are enforcement actions, and, by the plain terms of the Act, they can be done by the private entities without the FTC's involvement." *Id.* at 429.

102.    Here, the Authority's enforcement action to provisionally suspend Serpe happened "without the [FTC's] say-so," which "is not permitted under the private nondelegation doctrine." *Id.* at 429-30; *see* HISA Rule 3229.[3]

103.    Beyond the power to provisionally suspend a person like Serpe, HIWU, on the Authority's behalf, may issue subpoenas and launch investigations, 15 U.S.C. § 3054(h), commence and prosecute enforcement actions through HISA's administrative resolution process

---

[3] The power to provisionally suspend is potent. It allows the Authority to provisionally suspend a Covered Person—as occurred to Serpe—even before conducting an administrative hearing. Even though the HISA Rules do not provide for an arbitration proceeding solely for determining the provisional suspension issue, the Authority's position is that a provisional suspension may only be lifted after the Responsible Party shows a substantial likelihood of success before an arbitrator. Thus, it is impossible to contest a provisional suspension without agreeing to an arbitration, which risks waiver of a Covered Person's right to have an enforcement action brought in a federal district court under 15 U.S.C. § 3054(j)(1). Moreover, demonstrating likelihood of success is exceedingly difficult without access to discovery (and which, albeit unavailable under the HISA Rules, would be denied by an arbitrator nonetheless).

and in federal district courts, *id.* § 3054(j), and issue guidance that sets forth "an interpretation of an existing rule, standard, or procedure" or "a policy or practice with respect to the administration or enforcement of such an existing rule." *Id.* § 3054(g)(1)(A).

104.    The Authority alone, through HIWU, decides "whether to investigate a covered entity for violating HISA's rules" and "whether to sanction it," and therefore, "[HISA's] plain terms permit only one conclusion: HISA is enforced by a private entity." *Horsemen's II*, 107 F.4th at 429. "That is not permitted under the private nondelegation doctrine." *Id.* at 430.

105.    On a facial basis, HISA permits the Authority, through HIWU, to commence a HISA enforcement action and impose civil sanctions without any oversight by the FTC. HISA is therefore facially unconstitutional.

106.    A "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" and/or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A)-(B). Because they violate the private nondelegation doctrine, HISA and the HISA Rules must be declared unconstitutional and vacated.

107.    On an as-applied basis, the Authority, through HIWU, commenced a HISA enforcement action and, under HISA and the HISA Rules, imposed a provisional suspension against Serpe without any oversight by the FTC. The Authority's enforcement against Serpe under HISA and the HISA Rules is therefore unconstitutional.

108.    The Authority's provisional suspension is a "final agency action." *Id.* § 702. Serpe's provision suspension "mark[s] the consummation of the agency's decisionmaking process" to provisionally suspend Serpe—based solely on the purported test results of the A Sample and B Sample and prior to an adjudication that HIWU has carried its legal burden of proving the alleged

ADMC Program violation. The Authority's imposition of the provisional suspension constitutes an action "by which rights [and] obligations have been determined, [and] from which legal consequences will flow." *LabMD, Inc. v. F.T.C.*, 776 F.3d 1275, 1278 (11th Cir. 2015) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

109.    Alternatively, the Authority's provisional suspension is an unconstitutional exercise of agency power, which may be enjoined at any time. *See, e.g.*, *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 133-34 (2d Cir. 2020) ("[A] plaintiff may invoke the court's equitable powers to enjoin a defendant from violating constitutional provisions that do not, themselves, grant any legal rights to private plaintiffs. . . ."); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010) ("The Government does not appear to dispute such a right to relief as a general matter, without regard to the particular constitutional provisions at issue here."); *Collins v. Yellen*, 594 U.S. 220, 263, 141 S. Ct. 1761, 1790, 210 L. Ed. 2d 432 (2021) (Concurring, J., Thomas) ("We have indicated that individuals may have an implied private right of action under the Constitution to seek equitable relief to "'preven[t] entities from acting unconstitutionally.'"); *Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019) ("Either way, it cannot be that both an equitable claim and an APA claim foreclose the other, leaving Plaintiffs with no recourse.").

110.    On both a facial and as-applied basis, HISA and the Authority's enforcement action against Serpe under HISA and the HISA Rules violate the private nondelegation doctrine.

111.    Serpe has been injured, and will continue to be injured, as a direct and proximate result of HISA's violation of the private nondelegation doctrine and the Authority's enforcement action under HISA and the HISA Rules.

112.    Due to the Authority's enforcement action against Serpe under HISA and the HISA Rules in violation of the private nondelegation doctrine, the Authority's provisional suspension of Serpe must be dissolved.

**COUNT II**
**Denial of Jury Trial Right**
**(U.S. Const. Amend. VII)**
**(Administrative Procedure Act, 5 U.S.C. § 702, & Implied Equitable Cause of Action)**

113.    Serpe adopts each of the above averments as if restated in full.

114.    HISA permits the Authority to "commence a civil action" in federal district court to enforce civil sanctions for a violation of HISA or the HISA Rules, "and for all other relief to which the Authority may be entitled." 15 U.S.C. § 3054(j)(1).

115.    Notably, the Authority is not statutorily required to bring a HISA enforcement action in federal district court, but rather may utilize the "disciplinary process" established by the Authority under 15 U.S.C. § 3054 for "imposing civil sanctions against covered persons or covered horses" for an alleged ADMC Program violation. 15 U.S.C. § 3054(c)(1)(B),(d)(1).

116.    The Authority's promulgation of HISA Rule 7000 Series establishes arbitration procedures for adjudicating an alleged ADMC Program violation. HISA Rule 7010 ("The Arbitration Procedures set forth in this [HISA] Rule 7000 Series shall apply to all adjudications arising out of the [HISA] Rule 3000 Series.").

117.    The arbitration procedures state that an alleged ADMC Program violation "shall be adjudicated by an independent arbitral body" and do not include the right to a jury trial. HISA Rule 7020(a).

118.    In other words, Congress delegated to the Authority the power to enforce an alleged ADMC Program violation without requiring the Authority to bring the enforcement action in an Article III court.

119.    Congress's delegation is facially unconstitutional because it violates the Seventh Amendment. The Authority's enforcement of an alleged ADMC Program violation pursuant to HISA Rule 7000 Series is facially unconstitutional for the same reason.

120.    "[T]he Seventh Amendment guarantees that in '[s]uits at common law, . . . the right of trial by jury shall be preserved." *Jarkesy*, 144 S. Ct. at 2128. "In construing this language, [the U.S. Supreme Court] ha[s] noted that the right is not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified." *Id.* (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). "The [Seventh] Amendment therefore 'embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume.'" *Id.* (quoting *Parsons v. Bedford*, 28 U.S. 433, 447 (1830)).

121.    "The Seventh Amendment extends to" a HISA enforcement action for an alleged ADMC Program violation—like the HISA enforcement action at issue here—because it is "legal in nature." *See id.*

122.    A HISA enforcement action for an alleged ADMC Program violation is "legal in nature" because the Authority is entitled to seek "civil penalties, [which are] a form of monetary relief." *See id.*; 15 U.S.C. § 3057(d)(3)(A). The civil penalties include "lifetime bans from horseracing, disgorgement of purses, ***monetary fines and penalties***, and changes to the order of finish in covered races[.]" 15 U.S.C. § 3057(d)(3)(A) (emphasis added).

123.    If Serpe is found to be liable for the alleged ADMC Program violation, up to a $25,000 monetary fine must be imposed against him.

124.    The monetary fines and penalties that the Authority may impose are a "legal" remedy because they are "designed to punish or deter the wrongdoer." *See Jarkesy*, 144 S. Ct. at 2128. HISA mandates that the Authority issue regulations governing "anti-doping and medication

control rule violations," 15 U.S.C. § 3057(1), and to "develop a list of civil penalties with respect to the enforcement of rules," *id.* § 3054(i). Pursuant to this mandate, the Authority has promulgated the ADMC Program, which includes a list of rule violations and corresponding sanctions. HISA is explicit that the Authority's imposition of civil sanctions for an ADMC Program violation "shall . . . deter safety, performance, and [ADMC Program] rule violations." *Id.* § 3057(d)(2)(C). Accordingly, under the ADMC Program, the Authority imposes monetary fines and penalties for HISA Rule 3212 violations for a Banned Substance. HISA Rules 3212, 3223.

125.    The monetary fines and penalties that the Authority may impose are not equitable because they not "designed . . . solely to 'restore the status quo.'" *Jarkesy*, 144 S. Ct. at 2129 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). For instance, nothing in HISA or the HISA Rules "obligate[s]" the FTC or the Authority "to return any" of the monetary fines or penalties collected by the Authority, or to compensate those whom Congress enacted HISA to protect (such as the betting public). *See id.* (citing *Tull*, 481 U.S. at 422-23). "In sum, [the Authority's imposition of monetary fines and penalties under HISA] [is] designed to punish and deter, not to compensate." *See id.* at 2130 (citing *Tull*, 481 U.S. at 422).

126.    The Authority's entitlement to impose monetary fines and penalties for an ADMC Program violation "is all but dispositive." *Id.* at 2129.

127.    The "close relationship between [a HISA enforcement action for an alleged ADMC Program violation] and common law fraud confirms th[e] conclusion" that such enforcement action implicates the Seventh Amendment's jury trial right. *See id.* "[B]oth target the same basic conduct: misrepresenting or concealing material facts." *Id.*

128.    It is clear that the Authority intended the ADMC Program to protect against conduct akin to common law fraud because that is precisely what HISA required the Authority to do. For

instance, 15 U.S.C. § 3055 required the Authority, in developing the ADMC Program, to "take into consideration" that "[t]he welfare of covered horses, the integrity of the sport, and the confidence of the betting public require **full disclosure** to regulatory authorities regarding the administration of medications and treatments to covered horses." 15 U.S.C. § 3055(b)(7) (emphasis added). Similarly, 15 U.S.C. § 3057 mandated that the ADMC Program "be designed to ensure **fair and transparent** horseraces[.]" *Id.* § 3057(d)(2)(b) (emphasis added).

129.     In requiring the Authority to develop the ADMC Program such that it ensures full disclosure, fairness, and transparency, Congress "dr[ew] upon" "common law fraud principles." *Jarkesy*, 144 S. Ct. at 2130; *see, e.g., United States v. Martin*, 411 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) ("B]reaking the rules of the horserace by doping a horse, like smuggling, violates fundamental notions of honesty, fair play and right dealing and is therefore an act within the meaning of a 'scheme to defraud.'"); *Heft v. Md. Racing Comm'n*, 592 A.2d 1110, 1113 (Md. 1991) ("The Legislature's purpose in granting to the Racing Commission the authority to promulgate rules was to assure that horse races in Maryland are 'conducted fairly, decently and clean[ly].'"); *State ex rel. Morris v. W. Virginia Racing Comm'n*, 55 S.E.2d 263, 275 (W. Va. 1949) (affirming racing commission rule as an "effective means by which fraud and deceit in connection with horse racing can be minimized").

130.     A HISA enforcement action for an alleged ADMC Program violation is further analogous to common law fraud because the ADMC Program is designed to ensure that competition among Covered Horses is clean and "free from the influence" of performance-enhancing medications. *See* 15 U.S.C. § 3055(b)(1) ("Covered horses should compete only when they are free from the influence of medications, other foreign substances, and methods that affect their performance.").

131.     The Authority has characterized HISA as a "clear mandate" from Congress "to ensure a fair, clean sport," likening its role as protecting against fraud in horseracing. *See* Press Release, HISAUS.ORG (Jul. 11, 2023), [https://hisaus.org/news/hisa-makes-significant-strides-in-first-year-of-implementation](https://hisaus.org/news/hisa-makes-significant-strides-in-first-year-of-implementation) (HISA Board of Directors Chair Charles Scheeler: "HISA will continue to work diligently to fulfil that mandate, to protect horses and jockeys and to ensure a fair, clean sport.").

132.     A HISA enforcement action for an alleged ADMC Program violation is akin to a "fraud suit." *See Jarkesy*, 144 S. Ct. at 2139. A charged person—such as Serpe—therefore "has the right to be tried by a jury of his peers before a neutral adjudicator." HISA and the HISA Rules, however, "concentrate the roles of prosecutor, judge, and jury in the hands of [the Authority and HIWU]." *Id.* "[T]he Seventh Amendment requires [more]." *Id.* at 2140 (J. Gorsuch, concurring).

133.     The "public rights" exception to the Seventh Amendment does not apply to a HISA enforcement action for an alleged ADMC Program violation, and a jury is required. *Jarkesy*, 144 S. Ct. 2117, 2135 (citing *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33 (1989)). The public rights exception recognizes that "Congress may assign [certain] matters for decision to an agency without a jury, consistent with the Seventh Amendment." *Id.* at 2131. Public rights include a narrow "class of cases concerning . . . matters [that] 'historically could have been determined exclusively by the executive and legislative branches,' even when they were 'presented in such form that the judicial power [wa]s capable of acting on them[.]'" *Id.* at 2132.

134.     ***First***, the Authority's power to issue penalties under the ADMC Program is derived from common-law notions of fraud and does not resemble any "matter[] [that] 'historically could have been determined exclusively by the executive and legislative branches[.]'" *Id.* When enacting HISA, Congress did not rely on its power to collect "public funds [owed] to the Treasury" or its

powers related to "relations with Indiana tribes," "the administration of public lands," or "the granting of public benefits such as payments to veterans, pensions, and patent rights." *Id.* (citing public rights exception cases). Punishing common law fraud, on the other hand, has historically been within the power of the states. Congress's enactment of HISA is inspired by common law notions of fraud, such as punishing misrepresentations and omissions that undermine the "confidence of the betting public." 15 U.S.C. § 3055(b)(7).

135.    ***Second,*** a HISA enforcement action for an alleged ADMC Program violation provides for monetary fines and penalties, "a punitive remedy that [the U.S. Supreme Court] has recognized 'could only be enforced in courts of law.'" *Id.* at 2136 (quoting *Tull*, 481 U.S. at 422).

136.    ***Third***, Congress's mandate to Authority for the development of the ADMC Program "employ[s] . . . terms of art" that are synonymous with common law fraud, such as "fairness" and "disclosure." *See id.*; 15 U.S.C. §§ 3055(b)(7), 3057(d)(2)(b).

137.    ***Fourth***, HISA does not "assign" an alleged ADMC Program violation "for adjudication" exclusively by an arbitrator under HISA Rule 7000 Series, but rather permits the Authority to bring an enforcement action in federal district court (which the Authority has never done). *See Jarkesy*, 144 S. Ct. at 2139 (citing *Granfinanciera, S. A.*, 492 U.S. at 52); 15 U.S.C. § 3054(j)(1). While HISA assigns enforcement to the Authority, which conducts enforcement through HIWU, "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Id.* at 2136 (citation omitted).

138.    Because the public rights exception to the Seventh Amendment does not apply, the Authority must bring a HISA enforcement action for an alleged ADMC Program violation in an Article III court—where a person like Serpe is entitled to a jury trial.

139.     Despite being permitted to bring a HISA enforcement action in a federal district court, which would have ensured Serpe's right to a jury trial, the Authority, through HIWU, has refused to do so. Instead, the Authority has offered Serpe only the option of contesting the charge in a HISA Rule 7000 Series arbitration, which does not provide for a jury trial.

140.     On a facial basis, the Authority's enforcement of an alleged ADMC Program violation outside an Article III court is unconstitutional under the Seventh Amendment.

141.     A "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" and/or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A)-(B). Because they violate the Seventh Amendment's jury trial rights, HISA and the HISA Rules must be declared unconstitutional.

142.     On an as-applied basis, the Authority's enforcement against Serpe for an alleged ADMC Program violation is unconstitutional under the Seventh Amendment.

143.     In addition to the provisional suspension, Serpe is subject to an automatic monetary penalty if he declines the Authority's option of contesting the alleged ADMC Program violation in the HISA Rule 7000 Series arbitration. Ex. A.

144.     The Authority's enforcement action against Serpe already resulted in the imposition of the provisional suspension. *Id.* The charge will further result in the imposition of legal and equitable remedies if Serpe declines to contest the alleged ADMC Program violation in the HISA Rule 7000 Series arbitration, which does not include a jury trial. *Id.*

145.     "[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."

28

*Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970). In such a circumstance, "the legal claims involved in the action must be determined prior to any final [agency] determination of [the] equitable claims." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962).

146.    Therefore, the Authority's enforcement action against Serpe violates, and will continue to violate, the Seventh Amendment by subjecting Serpe to legal remedies without a jury trial. *See Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 454-55 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688, 216 L. Ed. 2d 1255 (2023), *cert. denied*, 143 S. Ct. 2690, 216 L. Ed. 2d 1256 (2023), *aff'd and remanded*, 144 S. Ct. at 2117 ("Here, the SEC sought to ban Jarkesy from participation in securities industry activities and to require Patriot28 to disgorge ill-gotten gains—both equitable remedies. Even so, the penalty facet of the action suffices for the jury-trial right to apply to an adjudication of the underlying facts supporting fraud liability.") (vacating entirely under the Seventh Amendment) (citations omitted)); *Burgess v. Fed. Deposit Ins. Corp.*, No. 7:22-CV-00100-O, 2022 WL 17549785, at *2 (N.D. Tex. Dec. 1, 2022) ("In this case, the FDIC's claims against Plaintiff depend on the same underlying facts. Therefore, in accordance with *Jarkesy*, Plaintiff is entitled to a jury trial as to the entire shared body of overlapping issues, rendering the whole Enforcement Proceeding unconstitutional.").

147.    The APA provides for judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Absent a final order imposing a penalty, "allegations made in an enforcement suit do not impose the kind of legal obligations with which finality doctrine is concerned." *Dow Chem. v. U.S. E.P.A.*, 832 F.2d 319, 325-26 (5th Cir. 1987) (citing *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 244-45 (1980)). Therefore, the APA has not precluded Serpe's current "remedy in a court" which is "an equitable cause of action for injunctive relief." *Sierra Club*, 929 F.3d at 700;

*see generally Hardison v. Cohen*, 375 F.3d 1262, 1266-67 (11th Cir. 2004); *e.g.*, *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 133-34 (2d Cir. 2020) ("[A] plaintiff may invoke the court's equitable powers to enjoin a defendant from violating constitutional provisions that do not, themselves, grant any legal rights to private plaintiffs. . . ."); *Sierra Club*, 929 F.3d at 699 ("Either way, it cannot be that both an equitable claim and an APA claim foreclose the other, leaving Plaintiffs with no recourse.").

148.    Serpe has been injured, and will continue to be injured, as a direct and proximate result of the Authority's delegation under HISA to enforce an alleged ADMC Program violation outside an Article III court. Indeed, Serpe's right to a jury trial under the Seventh Amendment has been denied and will continue to be denied until the Authority is enjoined from taking further enforcement action against Serpe.

149.    Due to Serpe being denied his Seventh Amendment right to a jury trial, the provisional suspension imposed by the Authority against Serpe must be dissolved.

## V.    PRAYER FOR RELIEF

WHEREFORE, Serpe respectfully requests that the Court:

1.    On Count I, pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, enter a judgment declaring HISA and the HISA Rules to be facially unconstitutional under the private nondelegation doctrine;

2.    On Count I, pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, enter a judgment declaring the Authority's enforcement action against Serpe under HISA and the HISA Rules, as applied, to be unconstitutional under the private nondelegation doctrine;

3.    On Count II, pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, enter a judgment declaring HISA's delegation of power to the Authority to enforce an alleged ADMC

Program violation outside an Article III court to be facially unconstitutional under the Seventh Amendment;

4.      On Count II, pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, enter a judgment declaring the Authority's enforcement against Serpe for an alleged ADMC Program violation outside an Article III court, as applied, to be unconstitutional under the Seventh Amendment;

5.      On each and all counts, dissolve the provisional suspension imposed by the Authority against Serpe;

6.      On Count I, pursuant to Fed. R. Civ. P. 65, preliminarily and permanently enjoin Defendants from taking any enforcement action against Serpe under HISA or the HISA Rules.

7.      Alternatively, on Count II, pursuant to Fed. R. Civ. P. 65, preliminary and permanently enjoin Defendants from taking any enforcement action against Serpe without a jury trial.

8.      Award Serpe all nominal, compensatory, and other damages to which he may be entitled due to the violations of his constitutional rights;

9.      Award all further relief in law or equity to which Serpe may be entitled; and

10.     Grant a jury trial on all issues so triable.

<div align="center" style="text-align:left; margin-left:50%">

Respectfully submitted,

*/s/* Bradford J. Beilly
Bradford J. Beilly
Bradford J. Beilly, P.A.
1144 S.E. 3rd Avenue
Ft. Lauderdale, FL 33316
Phone: (954) 763-7000
Fax:    (954) 525-0404
Email: brad@beillylaw.com

</div>

J. Austin Hatfield (*pro hac vice* application pending)
Frost Brown Todd LLP
400 West Market Street, Suite 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax:     (502) 581-1087
Email: ahatfield@fbtlaw.com

*Counsel for Plaintiff Philip Serpe*

0158832.0795288   4890-2249-7009v1

## VERIFICATION

I have read the foregoing allegations and to the best of my knowledge, information, and belief, they are true and correct.

_____

PHILIP SERPE

STATE OF NEW YORK )
) s.s.
COUNTY OF NASSAU )

Subscribed, sworn to before me by Philip Serpe this 17th day of October, 2024.

My commission expires: Feb 28th 2028

_____

NOTARY PUBLIC

CLINT PIERRE
Notary Public, State of New York
No. 01PI0021566
Qualified in Nassau County
Commission Expires February 28, 20__