UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF LOUISIANA
FT. LAUDERDALE DIVISION

| | | |
|---|---|---|
| PHILIP SERPE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 0:24-cv-61939-DSL |
| | : | |
| FEDERAL TRADE COMMISSION; AND | : | Hon. Judge David S. Leibowitz |
| HORSERACING INTEGRITY AND | : | |
| SAFETY AUTHORITY, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

I.   FACTS ................................................................................................................ 1

   A.  HISA's unconstitutional delegation of power to the Authority ....................................... 1

   B.  Strict liability treatment of Clenbuterol, the substance at issue in this case ................... 2

   C.  The Authority's private enforcement through HIWU ..................................................... 3

   D.  HIWU's enforcement against Serpe .............................................................................. 6

II.   ARGUMENT ...................................................................................................... 7

   A.  Serpe is likely to succeed on the merits. ....................................................................... 9

      1.  The HISA and the HISA Rules violate the private nondelegation doctrine. ............ 9

         a.  HISA's enforcement provisions are facially unconstitutional. ......................... 10

         b.  As applied, the Authority's enforcement against Serpe is unconstitutional. ..... 12

      2.  HISA and the HISA Rules violate the Seventh Amendment .................................. 13

         a.  The HISA Rules are facially unconstitutional. .................................................. 14

         b.  As applied, the Authority's enforcement of HISA and HISA Rules against Serpe is unconstitutional. ....................................................................... 19

   B.  Serpe has suffered and will continue to suffer irreparable harm. ................................ 20

   C.  The balance of hardship and public interest factors favor Serpe. ................................ 21

III.  CONCLUSION .................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong v. Exceptional Child Center, Inc.*,
   575 U.S. 320, 327 (2015)...............................................................................................8

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
   700 F. Supp. 3d 1136 (N.D. Ga. 2023) .........................................................................22

*BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*,
   425 F.3d 964 (11th Cir. 2005) ......................................................................................21

*Bennett v. Spear*,
   520 U.S. 154 (1997).......................................................................................................12

*Collins v. Yellen*,
   594 U.S. 220 (2021) (Thomas, J., concurring) ..............................................................8

*Consumers' Rsch., Cause Based Com., Inc. v. Fed. Commc'ns Comm'n*,
   88 F.4th 917 (11th Cir. 2023) ..............................................................................9, 10, 11

*Curtis v. Loether*,
   415 U.S. 189 (1974).......................................................................................................13

*Dep't of Transp. v. Ass'n of Am. Railroads*,
   575 U.S. 43 (2015)...........................................................................................................9

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*,
   954 F.3d 118 (2d Cir. 2020)............................................................................................8

*Florida v. Dep't of Health & Hum. Servs.*,
   19 F.4th 1271 (11th Cir. 2021) .....................................................................................22

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010)..................................................................................................8, 10

*Gonzalez v. Governor of Ga.*,
   978 F.3d 1266 (11th Cir. 2020) ...............................................................................9, 22

*Granfinanciera, S. A. v. Nordberg*,
   492 U.S. 33 (1989).........................................................................................................19

*Heft v. Md. Racing Comm'n*,
   592 A.2d 1110 (Md. 1991) ............................................................................................17

*Jackson v. Nat'l Football League*,
   802 F. Supp. 226 (D. Minn. 1992)................................................................................21

*Keister v. Bell*,
　879 F.3d 1282 (11th Cir. 2018) ...................................................................8, 9

*LabMD, Inc. v. F.T.C.*,
　776 F.3d 1275 (11th Cir. 2015) ......................................................................12

*League of Women Voters of U.S. v. Newby*,
　838 F.3d 1 (D.C. Cir. 2016)..............................................................................22

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992)...........................................................................................10

*State ex rel. Morris v. W. Virginia Racing Comm'n*,
　55 S.E.2d 263 (W. Va. 1949).....................................................................17, 18

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
　107 F.4th 415 (5th Cir. 2024) .............................................................10, 11, 12, 13

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
　53 F.4th 869 (5th Cir. 2022) .............................................................................10

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
　No. 5:21-CV-071-H, 2023 WL 2753978 (N.D. Tex. Mar. 31, 2023)....................20

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
　715 F.3d 1268 (11th Cir. 2013) ......................................................................22

*Palmer v. Braun*,
　287 F.3d 1325 (11th Cir. 2002) ........................................................................8

*Parsons v. Bedford*,
　28 U.S. 433 (1830)...........................................................................................13

*Sackett v. E.P.A.*,
　566 U.S. 120 (2012)...........................................................................................12

*Securities & Exchange Comm'n v. Jarkesy*,
　144 S. Ct. 2117 (2024)................................................................... *passim*

*Sierra Club v. Trump*,
　929 F.3d 670 (9th Cir. 2019) ..........................................................................12

*Sierra v. City of Hallandale Beach*,
　996 F.3d 1110 (11th Cir. 2021) .........................................................................9

*State v. Nelson*,
　576 F. Supp. 3d 1017 (M.D. Fla. 2021)...........................................................22

*TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*,
  102 F. Supp. 3d 1321 (S.D. Fla. 2015) .................................................................9

*Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of
  Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*,
  910 F.3d 1130 (11th Cir. 2018) ............................................................................8

*Tull v. United States*,
  481 U.S. 412 (1987)..............................................................................15, 16, 18

*United States v. Askins & Miller Orthopaedics, P.A.*,
  924 F.3d 1348 (11th Cir. 2019) ..........................................................................20

*United States v. Martin*,
  411 F. Supp. 2d 370 (S.D.N.Y. 2006)...................................................................16

**Statutes**

5 U.S.C. § 702 ..................................................................................................12

5 U.S.C. § 706(2)(A)-(B) .....................................................................................7

15 U.S.C. § 3051(4),(5) .......................................................................................1

15 U.S.C. §§ 3051-3060 .......................................................................................1

15 U.S.C. § 3052(3)(C).........................................................................................2

15 U.S.C. § 3054 ......................................................................................... *passim*

15 U.S.C. § 3055 ......................................................................................... *passim*

15 U.S.C. § 3057...............................................................................3, 15, 16, 19

15 U.S.C. § 3058..............................................................................................5, 6

**Other Authorities**

88 Fed. Reg...................................................................................................2, 4

Fed. R. Civ. P. 65(a) ...................................................................................7, 8, 22

HISA ................................................................................................... *passim*

Plaintiff Philip Serpe, who is a horse trainer, moves for a preliminary injunction against Defendants Federal Trade Commission ("FTC") and the Horseracing Integrity and Safety Authority, Inc. ("Authority"). Serpe seeks to preliminarily enjoin Defendants from taking any action against him to enforce the Horseracing Integrity and Safety Act ("HISA") or the rules promulgated under HISA by the Authority ("HISA Rules"). Serpe's Verified Complaint (Document 1) asserts two causes of action challenging HISA and the HISA Rules as unconstitutional. Serpe is substantially likely to succeed on both claims and has suffered, and will continue to suffer, irreparable harm because of Defendants' enforcement actions under HISA and the HISA Rules, including the Authority's provisional suspension imposed against him. The Court should enjoin Defendants from taking any enforcement action against Serpe under HISA and the HISA Rules and dissolve and vacate the provisional suspension.

I.   **FACTS**

A.  **HISA's unconstitutional delegation of power to the Authority**

For more than 100 years, Thoroughbred racing in the United States has been regulated solely by states through their traditional police powers. Ver. Compl. ¶ 9. That dynamic was dramatically upended when, in 2020, HISA became federal law. *Id.* (citing 15 U.S.C. §§ 3051-3060). HISA purports to nationalize the regulation of horseracing across the country. *Id.* ¶ 10. To do so, HISA unconstitutionally grants to the Authority, which is a nongovernmental, private, independent, self-regulatory, nonprofit corporation, "independent and exclusive national authority over . . . all horseracing safety, performance, and anti-doping and medication control matters for covered horses, covered persons, [and] covered horseraces." *Id.* ¶¶ 10-11 (citing 15 U.S.C. § 3054(2)). A "Covered Horse" is any thoroughbred horse that is subject to HISA, and "Covered Horserace" is any horserace involving Covered Horses. *Id.* ¶ 11 (citing 15 U.S.C. § 3051(4),(5)).

Despite being a private entity, the Authority is delegated broad federal regulatory power and sits jurisdictionally within a federal regulatory agency—the FTC. *Id*. ¶ 12. In general, the Authority may, among other things, regulate the horseracing industry throughout the United States and collect and spend fees from those it regulates. *Id*. ¶ 13 (citing 15 U.S.C. § 3052(3)(C)). The Authority's specific powers are far-reaching. *Id*. ¶ 14. The Authority may adopt rules governing doping, medication control, and racetrack safety; investigate violations of its rules by issuing and enforcing subpoenas and instituting charges; and, upon instituting charges for violations of the rules, adjudicate its charging decisions through an arbitration process constructed by the Authority, under rules developed by the Authority, and by an arbitrator selected and trained by the Authority. *Id*.; *see* 15 U.S.C. §§ 3054(g)(1)(A), 3054(h), 3054(j)(1), 3057(1), 3058(a).

### B.  Strict liability treatment of Clenbuterol, the substance at issue in this case

As part of its legislative mandate, the Authority developed rules on "permitted and prohibited medications, substances, and methods." Ver. Compl. ¶¶ 11, 15. These rules form the Anti-Doping and Medical Control Program ("ADMC Program") in HISA Rule Series 3000. *Id.* ¶ 15 (citing 88 Fed. Reg. 5070-5201). The ADMC Program distinguishes between Banned Substances and Controlled Substances. *Id.* ¶ 16 (citing HISA Rule 3111(a)(1)-(2)). A Banned Substance is "prohibited at all times . . . on the basis of the Agency's determination that medical, veterinary, or other scientific evidence or experience supports their actual or potential (i) ability to enhance the performance of Covered Horses, (ii) masking properties, or (iii) detrimental impact on horse welfare[.]" *Id.* (citing HISA Rule 3111(a)(1)). A Controlled Substance is allowed to be used or administered at certain times but is "prohibited to be present in a Post-Race Sample or Post-Work Sample, except as otherwise specified[.]" *Id.* (citing HISA Rule 3111(a)(1)). The medication at issue in this case—Clenbuterol—is regulated as a Banned Substance. *Id.* ¶ 17.

2

"It is the personal and nondelegable duty of the Responsible Person to ensure that no Banned Substance is present in the body of his . . . Covered Horse(s)." *Id.* ¶ 18 (citing HISA Rule 3212). A Covered Person "is therefore strictly liable for any Banned Substance . . . found to be present in a Sample collected from his . . . Covered Horse(s)." *Id.* ¶ 19 (citing HISA Rule 3212(a) and 15 U.S.C. § 3057(a)(2)) ("The Authority may impose "strict liability for covered trainers for . . . the presence of a prohibited substance or method in a sample or the use of a prohibited substance or method[.]")). Strict liability is harsh on the Covered Person but the lightest of all burdens for the Authority to prove. *Id.* ¶ 20. "[I]t is not necessary [for the Authority] to demonstrate intent, fault, negligence, or knowing use on the part of the Responsible Person in order to establish . . . [an ADMC Program violation for a Banned Substance]." *Id.* ¶ 21 (citing HISA Rule 3212). Even the presence of a Banned Substance caused by environmental or inadvertent contamination is not excused, only potentially mitigating the consequences imposed for an ADMC Program violation but not providing a complete defense. *Id.* ¶ 24.

### C.  The Authority's private enforcement through HIWU

HISA permits, but does not require, the Authority to commence an enforcement action for an alleged ADMC Program violation in federal district court. *Id.* ¶ 25 (citing 15 U.S.C. § 3054(j)(1)). Where the Authority chooses not to commence an enforcement action in federal district court, it may commence the enforcement action in an agency-friendly administrative resolution process, which starts with a disciplinary process established by the Authority. *Id.* ¶ 26; *see* HISA Rule 7000 Series. The Horseracing Integrity and Welfare Unit ("HIWU"), which is a specially created division within a private company, enforces ADMC Program violations for the Authority. *Id*. ¶¶ 29-30. Given the protections of the federal judicial system, which the Authority's

disciplinary process lacks, it is no surprise that the Authority has never commenced an ADMC Program enforcement action in federal district court. *Id.* ¶¶ 27-28.

At the first level of the administrative resolution process, an arbitration is held before an arbitrator is selected from an Arbitral Body. *Id.* ¶ 31. The Authority and HIWU selected and contracted with JAMS to supply the pool of arbitrators. *Id.* (citing HISA Rule 7020(a)). There is a minimum of five arbitrators in the pool, all of whom are "appointed by mutual agreement of the Authority and [HIWU]." *Id.* (citing HISA Rule 7030(a)). As constructed by the Authority in HISA Rule 7000 Series, the arbitration is lopsided. *See id.* ¶¶ 33-41. There is no entitlement to documents or information. *Id.* ¶ 36. Document requests, subpoenas, and other requested evidence are subject to the arbitrator's discretion. *Id.* ¶¶ 37-39 (citing HISA Rule 7260). ***There is no entitlement to a jury trial***. *Id.* ¶ 33.

HIWU has "the burden of establishing that a violation . . . has occurred to the comfortable satisfaction of the [arbitrator], bearing in mind the seriousness of the allegation that is made." *Id.* ¶ 42 (citing HISA Rule 3121(a)). HIWU must prove an ADMC Program violation for the presence of a Banned Substance through scientific analysis and testing of a horse's blood and/or urine samples as conducted by laboratories selected by the Authority. *Id.* ¶ 43 (citing HISA Rule 3122). The laboratories' scientific analysis and testing are subject to the Laboratory Standards promulgated in HISA Rule 6000 Series, which carry the force of federal regulations and are binding on the Authority and the FTC. *Id.* ¶¶ 43-45 (citing 88 Fed. Reg.).

The HISA Rules require that a horse's blood and urine samples are collected for scientific testing and analysis. *Id.* ¶ 47 (citing HISA Rule 5000 Series). At the time of collection, A Samples and B Samples of blood and urine are collected in blood tubes and urine containers, respectively. *Id.* Sample collection is subject to HISA Rule 5000 Series. *Id.* A Responsible Person may choose

to waive laboratory analysis of the B Sample, which allows HIWU to prove a HISA 3212 violation merely by demonstrating "the presence of a Banned Substance . . . in the Covered Horse's A Sample . . ." *Id.* ¶ 48 (citing HISA Rule 3212(b)(1)). However, where the B Sample is analyzed, HIWU is deemed to have established "sufficient proof" of a HISA Rule 3212 violation by demonstrating that the "B Sample confirms the presence of the Banned Substance . . . found in the A Sample[.]" *Id.* ¶ 49 (citing HISA Rule 3212(b)(2)).

To give enforcement its teeth, HISA directs the Authority to "develop a list of civil penalties with respect to the enforcement of rules for covered persons and covered horseraces under its jurisdiction." *Id.* ¶ 54 (citing 15 U.S.C. § 3054(i)). Where HIWU proves a HISA Rule 3212 violation, all the following consequences must be imposed: (1) disqualification of the horse's results, (2) forfeiture of the purse, (3) two-year period of ineligibility, *i.e.*, suspension, and (4) a monetary fine up to $25,000. *Id.* ¶ 55 (citing HISA Rules 1020, 3223). Additionally, the arbitrator may require the Responsible Person to pay HIWU's share of arbitration costs. *Id.* (citing HISA Rule 3223).

The arbitrator's decision is "the final decision or civil sanction of the Authority" but is subject to review by an Administrative Law Judge ("ALJ"). *Id.* ¶ 59 (citing 15 U.S.C. § 3055(4)(B)). This is the second level of HISA's administrative resolution process. *Id.* The ALJ's decision is subject to discretionary review by the FTC, which is the third level of HISA's administrative resolution process. *Id.* ¶ 60. After the FTC's review, or the FTC's denial of discretionary review, a Responsible Person may appeal under the Administrative Procedure Act ("APA"). *Id.* ¶ 61 (citing 15 U.S.C. § 3058(c)(2)(B)). While HISA grants the FTC limited oversight, the FTC lacks any power to review the Authority's decision to commence an ADMC Program enforcement action or impose a provisional suspension until ***after*** enforcement is

complete and penalties are imposed. *Id.* ¶ 63 (citing 15 U.S.C. § 3058). The Authority and HIWU are therefore unchecked in their enforcement against a Responsible Person—even where they do so unconstitutionally—unless and until the FTC exercises its discretion to grant review. *Id.*

### D.  HIWU's enforcement against Serpe

On August 10, 2024, Fast Kimmie, which Serpe trained, finished first in a race run at Saratoga Racetrack. *Id.* ¶ 65. A Samples and B Samples of Fast Kimmie's blood and urine were collected as a result of Fast Kimmie winning the race. *Id.* ¶ 66. Testing and analysis of the A Samples of blood and urine was performed by the Kenneth L. Maddy Equine Analytical Chemistry Laboratory at the University of California, Davis ("UC Davis"). *Id.* ¶ 67. UC Davis detected Clenbuterol in the A Sample of urine (but not in the A Sample of blood) and reported an Adverse Analytical Finding ("AAF") due to the detection of a Banned Substance. *Id.* ¶¶ 67-68, 73. HIWU notified Serpe that UC Davis had issued an AAF due to the detection of Clenbuterol. *Id.* ¶ 68. This was the first time that Serpe learned of his alleged violation of the ADMC Program, even though the subject race occurred nearly a month earlier. *Id.* ¶ 69.

Serpe denied that he administered, or caused the administration of, Clenbuterol to Fast Kimmie. *Id.* ¶ 71. He requested that B Sample testing and analysis be performed and that HIWU conduct blood and hair testing, together with DNA analysis, which would identify and confirm whether the A Sample tested by UC Davis was actually collected from Fast Kimmie. *Id.* ¶ 71-72. HIWU denied Serpe's request for hair testing and DNA analysis. *Id.* ¶ 73.

B Sample testing and analysis was performed by the Ohio Department of Agriculture Analytical Toxicology Laboratory. *Id.* ¶ 75. On October 10, 2024, HIWU issued Serpe a charge letter stating that testing and analysis of the B Sample of urine confirmed the detection of Clenbuterol. *Id.* ¶ 76. The letter charged Serpe with an alleged ADMC Program violation and

stated, "[A]s required by ADMC Program Rule 3247(a)(1) of the Protocol, HIWU has imposed a Provisional Suspension on you as the Responsible Person effective as of today's date **October 10, 2024**." (original emphasis). *Id.* ¶ 77; *see id.* at Ex. A. The charge letter advised Serpe that he had one week—until October 17, 2024—to (1) admit the ADMC Program violation and accept, dispute, or seek to mitigate HIWU's proposed consequences or (2) deny the ADMC Program violation and dispute HIWU's proposed consequences at a "hearing in accordance with ADMC Program Rule 3261 (Protocol) and Arbitration Procedures [under HISA Rule 7000 Series]." *Id.* ¶ 78.

Serpe responded to demand that HIWU rescind the provisional suspension and bring its enforcement action in federal district court. *Id.* ¶ 81. HIWU responded by referring Serpe to the charge letter "for an explanation of the options available to him under [the ADMC Program]." *Id.* ¶ 82. The charge letter does not present the option to have HIWU's enforcement action commenced in federal district court. *Id.* ¶ 83. To date, neither the Authority nor HIWU has taken any steps to bring its HISA enforcement action against Serpe in federal district court. *Id.* ¶ 84. Serpe now seeks relief from this Court, including injunctive relief. *See id.* ¶ 96, "Wherefore" ¶.

## II.    ARGUMENT

Serpe's claims arise under the APA and as implied equitable causes of action for violation of the United States Constitution. *Id.* ¶¶ 97-149. The APA mandates that the Court "shall . . . hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A)-(B). Under the APA, the reviewing court may "issue all necessary and appropriate" relief to "preserve status or rights pending conclusion of the review proceedings," *id.* § 705, including a preliminary injunction under Fed. R. Civ. P. 65(a). Courts also recognize "an implied private right of action under the Constitution to seek equitable relief to

'preven[t] entities from acting unconstitutionally.'" *Collins v. Yellen*, 594 U.S. 220, 263 n.1 (2021) (Thomas, J., concurring); *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 133-34 (2d Cir. 2020) ("[A] plaintiff may invoke the court's equitable powers to enjoin a defendant from violating constitutional provisions that do not, themselves, grant any legal rights to private plaintiffs. . . ."); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) ("The Government does not appear to dispute such a right to relief as a general matter, without regard to the particular constitutional provisions at issue here."); *see, e.g.*, *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015) (recognizing that a plaintiff has a cause of action "in equity" to enforce the Supremacy Clause, even though that clause "is not the source of any federal rights" (internal quotation marks omitted)).

To obtain an injunction, Serpe must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018) (citing *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002)); *see* Fed. R. Civ. P. 65(a). Serpe can make this showing, and the Court should therefore enjoin Defendants from taking any enforcement action against Serpe under HISA and the HISA Rules. The Court may do so without a hearing because Serpe's claims arise from the undisputed facts about Defendants' enforcement against Serpe. *See Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1169 (11th Cir. 2018) ("[W]here material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.") (citation omitted).

### A.  Serpe is likely to succeed on the merits.

Serpe is entitled to a preliminary injunction. To obtain an injunction on either Count I or Count II, Serpe must allege facts sufficient to "demonstrate a likelihood of success at trial as to [his] prima facie case." *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015). The likelihood of success on the merits is the most important of the preliminary injunction factors. *Keister*, 879 F.3d at 1287. "A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270-71 n.12 (11th Cir. 2020) (emphasis in original).

### 1.   The HISA and the HISA Rules violate the private nondelegation doctrine.

Count I alleges that HISA's enforcement provisions violate the private nondelegation doctrine. *See* Ver. Compl. ¶¶ 97-112. The private nondelegation doctrine is derived from the Constitution's Vesting Clauses. *See* U.S. Const. Art. I, § 1, Art. II, § 1, cl. 1, Art. III, § 1; *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 87-88 (2015) (Thomas, J., concurring) ("Although no provision of the Constitution expressly forbids the exercise of governmental power by a private entity, our so-called 'private nondelegation doctrine' flows logically from the three Vesting Clauses."); *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1133 (11th Cir. 2021) (Newsom, J., concurring) ("From [Article II's] explicit vesting, it follows that the 'executive Power' can't be exercised by private parties."). The doctrine reinforces the "commonsense principle" that a private entity may "wield the government's power" only if "(1) the entity 'function[s] subordinately' to the agency, and (2) the agency retains 'authority and surveillance over the activities' of the private entity." *Consumers' Rsch., Cause Based Com., Inc. v. Fed. Commc'ns Comm'n*, 88 F.4th 917, 925, 926 (11th Cir. 2023), *cert. denied sub nom. Consumers' Rsch. v. Fed. Commc'ns Comm'n*, 144 S. Ct. 2628 (2024) (citation omitted). If, as here, "the private entity does not function subordinately

to the supervising agency, [then] the delegation of power is unconstitutional." *Id.* (citing *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 881 (5th Cir. 2022)).

To start, Serpe has standing to challenge HISA's enforcement provisions and HISA Rules because the Authority, through HIWU, charged him with an alleged ADMC Program violation and imposed a provisional suspension. Serpe is therefore the "object" of the enforcement action taken by the Authority under HISA and the HISA Rules. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 56162 (1992) ("When the suit is one challenging the legality of government action . . . standing depends considerably upon whether the plaintiff is himself an object of the action . . . at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 427 (5th Cir. 2024) (*Horsemen's II*) ("Horsemen have shown a credible threat that the Authority will bring enforcement actions against their members in the future."). Serpe does not have to proceed with a HISA Rule 7000 Series arbitration because he is not "required . . . to bet the farm . . . by taking the violative action before testing the validity of the law[.]" *See Free Enter. Fund*, 561 U.S. at 490 (citation and internal quotation marks omitted).

### a. HISA's enforcement provisions are facially unconstitutional.

HISA's enforcement provisions "violate the private nondelegation doctrine." *See Horsemen's II*, 107 F.4th at 435. HISA's enforcement provisions violate the private nondelegation doctrine because the FTC does not "retain[ ] the discretion to approve, disapprove, or modify" the Authority's enforcement actions. *Id.* at 430 (citation omitted). "HISA unqualifiedly gives [the] power to the Authority. . . . for charging and adjudicating violations and levying sanctions," not the FTC. *Id.* at 432. For example, HISA does not "require the Authority or [HIWU] to seek the

FTC's approval before investigating, searching, charging, sanctioning, or suing. All these actions . . . can be done by the private entities without the FTC's involvement." *Id.* at 429; *see* 15 U.S.C. § 3054(g)(1)(A), (h), (j). The Authority may, "without the [FTC's] say-so," decide "whether to investigate a covered entity for violating HISA's rules" and "whether to sanction it." *Horsemen's II*, 107 F.4th, at 429-30. "HISA's plain terms permit only one conclusion: HISA is enforced by a private entity," which "is not permitted under the private nondelegation doctrine." *Id.* at 429-30.

      *Horsemen's II* is highly persuasive. In *Consumers' Rsch., Cause Based Com., Inc.*, the Eleventh Circuit applied the same legal test from *Horsemen's II*, noting the Fifth Circuit's "apt[]" explanation in that case and joining the Fifth Circuit in holding that an agency's delegation of statutory authority to a private entity that does not "function[] subordinately" to the agency violates the private nondelegation doctrine. 88 F.4th 917, 925 (11th Cir. 2023), *cert. denied sub nom. Consumers' Rsch. v. Fed. Commc'ns Comm'n*, 144 S. Ct. 2629 (2024). Any argument that the Authority's "enforcement power is subordinate to the FTC" because "the FTC at least partially supervises the Authority because it can review sanctions at the back end, after ALJ review" is contrary to decades-old Supreme Court precedent and should quickly fail. *See Horsemen's II*, 107 F.4th at 430. The argument, which was rejected by the Fifth Circuit, ignores "everything the Authority [is] permitted to do up [until]" the FTC's decision whether to grant discretionary review of the ALJ's decision. *Id.*

      As the Fifth Circuit recently determined in *Horsemen's II*, HISA's enforcement provisions "violate the private nondelegation doctrine." *Id.* at 435. Serpe is likely to succeed on his facial challenge under Count I that HISA's enforcement provisions are unconstitutional. *See* Ver. Compl. ¶¶ 105-110, 112.

**b. As applied, the Authority's enforcement against Serpe is unconstitutional.**

The Authority's enforcement action against Serpe is a clear example of why HISA's enforcement provisions are unconstitutional. "Consider everything the Authority [has already been] permitted to do" against Serpe—"launch an investigation into [him] . . . charge him with a violation" and provisionally suspend him. *See Horsemen's II*, 107 F.4th at 430; Ver. Compl. 100-101, 103, 116, 118-119, 151-152, 154-156, 164, 180. "Each and every one of those actions is 'enforcement' of HISA[,]" and "[e]ach [has occurred here] . . . without any supervision by the FTC." *Horsemen's II*, 107 F.4th at 430.

In particular, the Authority's imposition of the provisional suspension clearly violates the private nondelegation doctrine.[1] The provisional suspension, which the Authority imposed through a charge letter, went "into [immediate] effect" and would remain in place even if Serpe sought to contest the alleged ADMC Program violation in a HISA Rule 7000 Series arbitration. *See Horsemen's II*, 107 F.4th at 430; Ver. Compl. ¶¶ 50, 77-78, 103, n.3, & Ex. A. The Authority provisionally suspended Serpe on its own, "without the FTC's involvement," *Horsemen's II*, 107 F.4th at 429, and even though the time for Serpe to accept, dispute, or seek to mitigate HIWU's

---

[1] The provisional suspension is a "final agency action" that may be reviewed under the APA. *See* 5 U.S.C. § 702. The provision suspension "mark[s] the consummation of the agency's decisionmaking process" as to whether Serpe has any "rights" to participate in training activities and compete in Covered Horseraces while challenging the alleged ADMC Program violation. *See LabMD, Inc. v. F.T.C.*, 776 F.3d 1275, 1278 (11th Cir. 2015) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). By imposing a provisional suspension, the Authority has "determined" that Serpe has no such "rights," and "legal consequences will flow" from the Authority's determination that Serpe is provisionally suspended. *See id.* at 1278; HISA Rule 3230 (imposing consequences for participation during provisional suspension period).

It is immaterial that Serpe may contest the alleged ADMC Program violation in a HISA Rule 7000 Series arbitration. "The mere possibility that [the Authority] might reconsider" the provisional suspension or that the provisional suspension could be reversed in a HISA Rule 7000 Series arbitration "does not suffice to make an otherwise final agency action nonfinal." *See Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012).

Even if the provisional suspension is not reviewable under the APA, it is, at a minimum, an unconstitutional exercise of agency power that may be enjoined. *See Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019) ("Either way, it cannot be that both an equitable claim and an APA claim foreclose the other, leaving Plaintiffs with no recourse.").

proposed consequences had not expired. Ver. Compl., Ex. A. The provisional suspension resulted directly from the Authority's initial decision, through HIWU, to charge Serpe with an alleged ADMC Program violation. The FTC had no discretion over the Authority's decision because the Authority and HIWU are allowed to "implement and enforce [HISA]" "each within the scope of their powers and responsibilities under this chapter." 15 U.S.C. § 3054(a)(1).

Applying *Horsemen's II* here, all the Authority's enforcement actions against Serpe, including but not limited to the imposition of the provisional suspension, "violate[s] the private nondelegation doctrine." 107 F.4th at 435. Serpe is likely to succeed on his as-applied challenge under Count I that HISA's enforcement provisions are unconstitutional. *See* Ver. Compl. ¶¶ 105-110, 112.

### 2. HISA and the HISA Rules violate the Seventh Amendment.

Count II asserts that the Authority's enforcement of an alleged ADMC Program violation outside an Article III court violates the Seventh Amendment's jury trial right. Ver. Compl. ¶¶ 113-149. "[T]he Seventh Amendment guarantees that in '[s]uits at common law, . . . the right of trial by jury shall be preserved.'" *Securities & Exchange Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (citing U.S. Const. amend. VII). "In construing this language, [the U.S. Supreme Court] ha[s] noted that the right is not limited to the 'common-law forms of action recognized' when the Seventh Amendment was ratified." *Id.* (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). "The [Seventh] Amendment therefore 'embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume.'" *Id.* (quoting *Parsons v. Bedford*, 28 U.S. 433, 447 (1830)).

### a.   The HISA Rules are facially unconstitutional.

On their face, the HISA Rules violate the Seventh Amendment because they do not allow the Authority to enforce an ADMC Program violation in an Article III court. Rather, HISA allows, and the HISA Rules mandate, the Authority to initiate an ADMC Program enforcement action in the disciplinary process established by the Authority. *See* 15 U.S.C. § 3054(j)(1); HISA Rule 7060(a)-(b) (Except when a case is resolved under HISA Rule 3349, which does not apply here, the Authority "***shall*** initiate proceedings with the Internal Adjudication Panel.") (emphasis added); *see generally* HISA Rule 7000 Series. Unlike in an Article III court, the disciplinary process does not include a jury trial—HISA Rule 7000 Series does not even mention federal district court. HISA Rule 7020(a) (An ADMC Program violation "***shall*** be adjudicated by an independent arbitral body in accordance with the [HISA] Rule 3000 Series and these Arbitration Procedures.") (emphasis added).

The Seventh Amendment applies because a HISA enforcement action for an ADMC Program violation is "legal in nature." *See id.* First, an ADMC Program violation is subject to civil sanctions, which are "legal remedies." *See* HISA Rules 3220, 3221, 3222, 3223; *Jarkesy*, 144 S. Ct. at 2129 (a claim is "legal in nature" if it provides a "legal remedy" such as "civil penalties"); *see also* 15 U.S.C. §§ 3054(i) ("The Authority shall develop a list of civil penalties with respect to the enforcement of rules for covered persons and covered horseraces under its jurisdiction."), 3057(d)(1),(3)(A) ("The Authority shall establish uniform rules . . . imposing civil sanctions[,]" including "monetary fines and penalties[.]"). Under HISA Rule 3223(b), the civil sanction of monetary fines and penalties "***shall apply***" to the ADMC Program violation brought against Serpe (emphasis added).

The monetary fines and penalties are a "legal" remedy because they are "designed to punish or deter the wrongdoer." *See Jarkesy*, 144 S. Ct. at 2129. We know this because HISA explicitly required the Authority to "develop a list of civil penalties with respect to the enforcement of [the ADMC Program]" to "***deter*** safety, performance, and [ADMC Program] rule violations." 15 U.S.C. § 3057(d)(2)(C) (emphasis added).  A violation of the ADMC Program results in, among other punishments, a fine of up to $25,000. *See* Rules 1020, 3223. Under the ADMC Program, the fine is designed solely to punish the Responsible Party for violating the party's "nondelegable duty" to "ensure that no Banned Substance is present in the body." HISA Rule 3212(a).

Equally, the amount of the fine—and the issue of whether a fine is issued in the first place—is determined according to a Responsible Party's degree of culpability. HISA Rules 3224(a), 3325, 3223; *Jarkesy*, 144 S. Ct. at 2130 ("Each tier [of penalty] conditions the available [size of the] penalty on the culpability of the defendant and the need for deterrence[.]"). Under the ADMC Program, a Responsible Party may avoid a fine only by showing that the party "did not know or suspect, and could not reasonably have known or suspected, even with the exercise of utmost caution, that he or she had . . . committed an Anti-Doping Rule Violation or Controlled Medication Rule Violation." HISA Rule 1020. Otherwise, a Responsible Party may only reduce the size of the fine by showing that the party's "fault or negligence, when viewed in the totality of the circumstances . . . was not significant in relationship to the Anti-Doping Rule Violation or Controlled Medication Rule Violation in question." *Id.*

The monetary fines and penalties imposed under the ADMC Program are not equitable because they are not "designed . . . solely to 'restore the status quo.'" *Jarkesy*, 144 S. Ct. at 2129 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). Nothing in HISA or the HISA Rules "obligate[s]" the FTC or the Authority "to return any" of the monetary fines or penalties collected

by the Authority, or to compensate those whom Congress enacted HISA to protect (such as the betting public). *See id.* at 2130 (citing *Tull*, 481 U.S. at 422-23). "In sum, [the Authority's imposition of monetary fines and penalties] [is] designed to punish and deter, not to compensate." *See id.* (citing *Tull*, 481 U.S. at 422). The Authority's statutory obligation to impose monetary fines and penalties for an ADMC Program violation "is all but dispositive." *Id.* at 2129.

Second, a violation of the ADMC Program bears a "close relationship" with a claim for common-law fraud. *Id.* at 2130 ("The close relationship between the causes of action in this case and common law fraud confirms that conclusion."). To create the ADMC Program, HISA tasked the Authority with issuing "a list of permitted and prohibited medications, substances, and methods," 15 U.S.C. § 3055(c)(1)(B), as well as a list of "violations applicable to covered horses and covered persons." 15 U.S.C. § 3057(a)(1). In establishing the ADMC Program's various prohibited-substances provisions, the Authority was required to "take into consideration" that "[t]he welfare of covered horses, the integrity of the sport, and the confidence of the betting public require **full disclosure** to regulatory authorities regarding the administration of medications and treatments to covered horses." 15 U.S.C. § 3055(b)(7) (emphasis added). HISA mandated that the ADMC Program "be designed to ensure **fair and transparent** horseraces[.]" *Id.* § 3057(d)(2)(b) (emphasis added).

In requiring that the ADMC Program ensure "full disclosure," "fair[ness]," and "transparen[cy]," Congress "dr[ew] upon" "common law fraud principles." *Jarkesy*, 144 S. Ct. at 2130. HISA established the ADMC Program to prevent, among other harms, fraud on the betting market—a principle long recognized as the cornerstone of horseracing regulations. *See, e.g., United States v. Martin*, 411 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) ("[B]reaking the rules of the horserace by doping a horse, like smuggling, violates fundamental notions of honesty, fair play

and right dealing and is therefore an act within the meaning of a 'scheme to defraud.'"); *Heft v. Md. Racing Comm'n*, 592 A.2d 1110, 1113 (Md. 1991) ("The Legislature's purpose in granting to the Racing Commission the authority to promulgate rules was to assure that horse races in Maryland are 'conducted fairly, decently and clean[ly].'"); *State ex rel. Morris v. W. Virginia Racing Comm'n*, 55 S.E.2d 263, 275 (W. Va. 1949) (affirming racing commission rule as an "effective means by which fraud and deceit in connection with horse racing can be minimized"). The ADMC Program seeks to prevent fraud on the betting markets by ensuring that the "betting public" is provided with equal access to information concerning "the administration of medications and treatments to covered horses," *i.e.*, concerning the administration of performance-enhancing drugs.[2] The ADMC Program, therefore, establishes a penalty scheme to remedy, among other conduct, misrepresentations and omissions of material fact, *i.e.*, fraud. *Jarkesy*, 144 S. Ct. at 2130 ("Both target the same basic conduct: misrepresenting or concealing material facts.").

The "public rights" exception to the Seventh Amendment does not apply. The exception recognizes that "Congress may assign [certain] matter[s] for decision to an agency without a jury, consistent with the Seventh Amendment." *Id.* at 2131. Public rights include a "class of cases concerning . . . matters [that] 'historically could have been determined exclusively by the executive and legislative branches,' even when they were 'presented in such form that the judicial power [wa]s capable of acting on them[.]" *Id.* at 2132. Public rights are "made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *Id.* If the suit concerns private rights, "then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Id.*

---

[2] This is why the Authority decides which drugs are Banned Substances based on "the Agency's determination that medical, veterinary, or other scientific evidence or experience supports their actual or potential (i) ability to enhance the performance of Covered Horses, [and] (ii) masking properties[.]" HISA Rule 3111(a)(1)-(2).

The Court's analysis in *Jarkesy* illustrates that a HISA enforcement action for an ADMC Program violation implicates private rights. First, the Authority's power to issue penalties under the ADMC Program does not resemble any "matter[] [that] 'historically could have been determined exclusively by the executive and legislative branches[.]'" *Id.* When enacting HISA, Congress did not rely on its power to collect "public funds [owed] to the Treasury" or its powers related to "relations with Indian tribes," "the administration of public lands," or "the granting of public benefits such as payments to veterans, pensions, and patent rights." *Id.* at 2132, 2133 (citing public rights exception cases). Instead, HISA is intended, in part, to punish fraudulent misrepresentations and omissions concerning performance-enhancing drug use, which undermine the "confidence of the betting public." 15 U.S.C. § 3055(b)(7). Punishing fraud perpetrated on the betting public has been historically within the exclusive power of the States. *See e.g.*, *W. Virginia Racing Comm'n*, 55 S.E.2d at 275 ("[T]he implied undertaking, on the part of the State, [is] that patrons of racetracks who . . . make wagers on horse races, shall be given assurance that they will not be deprived of their money through fraudulent practices."). Although HISA enforcement penalties may "originate in a newly fashioned regulatory scheme," "what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Jarkesy*, 144 S. Ct. at 2136. The "substance" of a HISA enforcement action for an ADMC Program violation is "akin to a fraud suit" to remedy misrepresentation and omissions to the betting public. *See id.* at 2139.

Second, like the SEC anti-fraud civil penalties considered in *Jarkesy*, a HISA enforcement action for an ADMC Program violation provides for monetary fines and penalties, which are "a punitive remedy that [the U.S. Supreme Court] ha[s] recognized 'could only be enforced in courts of law.'" *Id.* at 2136 (quoting *Tull*, 481 U.S. at 422). This is evidenced by Congress's mandate to the Authority for developing the ADMC Program, which "employ[s] . . . terms of art" that are

synonymous with common law fraud, such as "fairness" and "disclosure." *See id.*; 15 U.S.C. §§ 3055(b)(7), 3057(d)(2)(b).

Third, HISA does not "assign" an alleged ADMC Program violation "for adjudication" exclusively by an arbitrator under HISA Rule 7000 Series, but rather permits the Authority to bring an enforcement action in federal district court. 15 U.S.C. § 3054(j)(1); *see Jarkesy*, 144 S. Ct. at 2139 (citing *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 52 (1989)). Indeed, HISA does not express any intent by Congress that an ADMC Program enforcement action must be brought in the disciplinary process established by the Authority, and yet, that is exactly what the Authority developed the HISA Rules to unconstitutionally require. *See* HISA Rule 7020(a). Vindicating a Responsible Person's jury trial right would not—in any way—undermine Congress's aims in enacting HISA. If anything, it would promote Congress's goal of ensuring that the HISA Rules "shall provide for adequate due process." *See* 15 U.S.C. § 3057(c)(3).

Considering *Jarkesy*, HISA and the HISA Rules violate the Seventh Amendment because they do not require the Authority to enforce an ADMC Program violation in an Article III court. Serpe is likely to succeed on his facial challenge under Count II that HISA and the HISA Rules are unconstitutional. *See* Ver. Compl. ¶¶ 140-147.

### b. As applied, the Authority's enforcement of HISA and HISA Rules against Serpe is unconstitutional.

The Authority's enforcement action against Serpe violates the Seventh Amendment. To date, neither the Authority nor HIWU has taken any steps to bring its HISA enforcement action against Serpe in federal district court. Ver. Compl. ¶ 84. When Serpe inquired whether the Authority would bring the enforcement action in an Article III court—as it may under HISA, *id.* ¶ 83—the Authority instead presented Serpe the option of contesting the alleged ADMC Program violation only in a HISA Rule 7000 Series arbitration. As the Authority stated in its charge letter,

Serpe is subject to an automatic monetary penalty if he declines the Authority's option of contesting the alleged ADMC Program violation in the HISA Rule 7000 Series arbitration. *Id.* ¶¶ 80, 83, 143, & Ex. A. The monetary penalty would be applied without a jury trial. *Id.* ¶ 144. Even if Serpe proceeded with a HISA Rules 7000 Series arbitration, he would not be entitled to a jury trial at any point during the arbitration. *Id.* ¶¶ 33, 116-117. Because Serpe's right to a jury trial under the Seventh Amendment has been denied, and will continue to be denied, Serpe is likely to succeed on his facial challenge under Count II that HISA and the HISA Rules are unconstitutional. *Id.* ¶¶ 140-147.

**B. Serpe has suffered and will continue to suffer irreparable harm.**

Serpe must show he has suffered or will suffer irreparable harm. Harm is irreparable where there is no adequate remedy at law, such as monetary damages.[3] *See United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359 (11th Cir. 2019) (vacating district court's order denying injunctive relief).

Serpe has suffered irreparable harm in multiple forms. First, Serpe is currently suspended from participating in HISA-regulated training activities and Covered Horseraces in every state outside the Fifth Circuit—even though HIWU has yet to prove its charge alleging an ADMC Program violation. Ver. Compl. ¶ 88. As a result of the provisional suspension, Serpe is being denied once-in-a-lifetime racing opportunities involving horses that he previously trained and would have continued to train but for the suspension, training income, and racing winnings. *Id.* ¶ 90. As courts have held, illegal restraints and restrictions against participating in sporting events constitute irreparable harm. *See Nat'l Horsemen's Benevolvent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2023 WL 2753978, at *67 (N.D. Tex. Mar. 31, 2023) ("Other courts have

---

[3] But as in *Askins & Miller Orthopaedics*, the availability of monetary damages is not necessarily dispositive. 924 F.3d at 1359.

concluded that plaintiffs can 'make a sufficient showing of irreparable harm' by demonstrating that they 'remain restricted under an illegal system' or rule in a sporting event that would lead to disqualification.") (enjoining HISA enforcement; collecting cases); *Jackson v. Nat'l Football League*, 802 F. Supp. 226, 230-31 (D. Minn. 1992) ("[T]he four players who remain restricted by the Plan B rules make a sufficient showing of irreparable harm because they suffer irreparable injury each week that they remain restricted under an illegal system of player restraints.").

Second, HIWU's provisional suspension required Serpe to transfer 19 horses out of his care. Ver. Compl. ¶ 89. This caused Serpe to immediately lose customers, goodwill, and business. *Id.* ¶ 90. *See BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC,* 425 F.3d 964, 970 (11th Cir. 2005) ("[T]he loss of customers and goodwill is an irreparable injury.").

Third, the provisional suspension is causing Serpe reputational harm. Ver. Compl. ¶ 92. Serpe's reputation is that, over his more-than-40-year career, with more than 8,000 starts, none of his trained horses have tested positive for a prohibited medication. *Id.* ¶ 93. Yet now, the Authority's unconstitutional enforcement against Serpe—for an alleged ADMC Program violation that Serpe disputes—is sullying Serpe's reputation, including on a widely read horseracing industry website. *See id.* ¶ 92.

Serpe attests that the economic value of his losses is difficult—if not impossible—to quantify. Ver. Compl. ¶ 95. Unless Defendants are enjoined from their continued enforcement against him, Serpe will continue to suffer irreparable harm, including the loss of once-in-a-lifetime racing opportunities. *Id.* at ¶ 193.

### C.  The balance of hardship and public interest factors favor Serpe.

Finally, "[t]he last two requirements for a permanent injunction involve a balancing of the equities between the Parties and the public." *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,

700 F. Supp. 3d 1136, 1374 (N.D. Ga. 2023). Since the FTC is a party, these factors are merged. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2020) ("The third and fourth factors merge when, as here, the [g]overnment is the opposing party.") (cleaned up). Defendants will not be harmed if they cannot take further enforcement action against Serpe because; indeed, "the public has no interest in the enforcement of what is very likely an unconstitutional statute." *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013). Likewise, there is no public interest in the enforcement of an "unlawful agency action." *State v. Nelson*, 576 F. Supp. 3d 1017, 1032 (M.D. Fla. 2021); *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1315 (11th Cir. 2021) (Lagoa, J., dissenting) ("[T]here is 'no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.'") (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The balance-of-hardships and public interest factors therefore weigh entirely in favor of granting injunctive relief.

## III.   CONCLUSION

Serpe is entitled to a preliminary injunction under Fed. R. Civ. P. 65(a). The Court should preliminarily enjoin Defendants from taking any enforcement action against Serpe under HISA and the HISA Rules, including enforcement of the provisional suspension, and imposing or enforcing any civil penalties or sanctions against Serpe under HISA and the HISA Rules.

Respectfully submitted,

/s/ Bradford J. Beilly
Bradford J. Beilly
Bradford J. Beilly, P.A.
1144 S.E. 3rd Avenue
Ft. Lauderdale, FL 33316
Phone: (954) 763-7000
Fax:    (954) 525-0404
Email: brad@beillylaw.com

J. Austin Hatfield (admitted *pro hac vice*)
Frost Brown Todd LLP
400 West Market Street, Suite 3200
Louisville, KY 40202
Phone: (502) 589-5400
Fax: (502) 581-1087
Email: ahatfield@fbtlaw.com

*Counsel for Plaintiff Philip Serpe*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2024, the forgoing was electronically filed with the Clerk of the Court by using the CM/ECF System, which will effectuate service upon all persons, and served the same day via U.S. Mail, postage prepaid, upon the following:

Federal Trade Commission
c/o Hon. Markenzy Lapointe, U.S. Attorney
U.S. Attorney's Office, Southern District of Florida
500 East Broward Boulevard
Ft. Lauderdale, FL 33394

Federal Trade Commission
Attn: Civil Process Clerk
U.S. Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Horseracing Integrity and Safety Authority, Inc.
John C. Roach, Registered Agent
176 Pasadena Drive
Building One
Lexington, KY 40503

*/s/* Bradford J. Beilly
*Counsel for Plaintiff Philip Serpe*

0158832.0795288  4875-2577-8673