# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

Case No. 0:24-cv-61939-LEIBOWITZ

PHILIP SERPE,

      Plaintiff,

v.

FEDERAL TRADE COMMISSION; AND
HORSERACING INTEGRITY AND
SAFETY AUTHORITY, INC.,

      Defendants.

_____/

## DEFENDANT HORSERACING INTEGRITY AND SAFETY AUTHORITY'S
## OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 7

I.      Plaintiff Fails To Show Irreparable Harm ................................................................. 7

II.     Plaintiff Is Unlikely To Succeed On The Merits ..................................................... 11

      A.    Plaintiff's Seventh Amendment Claim Is Not Ripe .................................. 11

      B.    The Seventh Amendment Does Not Apply To HISA Enforcement Actions ............ 16

III.    The Equities And Public Interest Weigh Against Injunctive Relief ................................. 18

CONCLUSION ................................................................................................................... 20

## TABLE OF AUTHORITIES

C<small>ASES</small>:

*Alabama v. United States Army Corps of Eng'rs,*
    424 F.3d 1117 (11th Cir. 2005) ...........................................................................8, 11

*Alpine Sec. Corp. v. FINRA,*
    121 F.4th 1314 (D.C. Cir. 2024) ..........................................................................9, 10

*Axon Enterprise, Inc. v. FTC,*
    598 U.S. 175 (2023).............................................................................................9, 10

*Benisek v. Lamone,*
    585 U.S. 155 (2018)................................................................................................20

*Blankenship v. FINRA,*
    No. CV 24-3003, 2024 WL 4043442 (E.D. Pa. Sept. 4, 2024) .........................10, 15

*Board of Trade of City of Chicago v. Commodity Futures Trading Comm'n,*
    704 F.2d 929 (7th Cir. 1983) ..................................................................................13

*Burks v. Wisconsin Dep't of Transp.,*
    464 F.3d 744 (7th Cir. 2006) ..................................................................................14

*Chavez v. Florida SP Warden,*
    742 F.3d 1267 (11th Cir. 2014) .................................................................................7

*Cheffer v. Reno,*
    55 F.3d 1517 (11th Cir. 1995) .................................................................................15

*Church v. City of Huntsville,*
    30 F.3d 1332 (11th Cir. 1994) ...................................................................................8

*City of Los Angeles v. Patel,*
    576 U.S. 409 (2015)................................................................................................15

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
    526 U.S. 687 (1999)................................................................................................13

*Curtis v. Loether,*
    415 U.S. 189 (1974)................................................................................................14

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.,*
    108 F.4th 194 (3d Cir. 2024) ....................................................................................9

*Digital Props., Inc. v. City of Plantation*,
 121 F.3d 586 (11th Cir. 1997) ...............................................................15

*Direct Mktg. Ass'n v. Brohl*,
 575 U.S. 1 (2015) ...................................................................................14

*Doe #1-#14 v. Austin*,
 572 F. Supp. 3d 1224 (N.D. Fla. 2021) ..................................................15

*Dombrowski v. Pfister*,
 380 U.S. 479 (1965) ...............................................................................10

*Edmonson v. Leesville Concrete Co.*,
 500 U.S. 614 (1991) ...............................................................................12

*Euristhe v. Beckmann*,
 No. 4:23-CV-00653-O-BP, 2024 WL 2019769 (N.D. Tex. Apr. 22, 2024) ...........................12
 No. 4:23-CV-00653-O-BP, 2024 WL 2141966 (N.D. Tex. May 13, 2024) ...........................12

*Ex Parte Peterson*,
 253 U.S. 300 (1920) ...............................................................................14

*Florida Growers Ass'n v. Su*,
 No. 8:23-CV-889-CEH-CPT, 2024 WL 670464 (M.D. Fla. Jan. 5, 2024) ...........................19
 No. 8:23-CV-889-CEH-CPT, 2024 WL 1343021 (M.D. Fla. Mar. 29, 2024) .......................19

*Florida v. Department of Health & Hum. Servs.*,
 19 F.4th 1271 (11th Cir. 2021) ..............................................................11

*Flowers Indus. v. FTC*,
 849 F.2d 551 (11th Cir. 1988) ...............................................................15

*Garvie v. City of Ft. Walton Beach*,
 366 F.3d 1186 (11th Cir. 2004) .............................................................14

*GeorgiaCarry.org, Inc. v. United States Army Corps of Eng'rs*,
 788 F.3d 1318 (11th Cir. 2015) ...............................................................7

*Gonzalez v. Governor of Ga.*,
 978 F.3d 1266 (11th Cir. 2020) .............................................................18

*Gray v. Jennings*,
 No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025) ...................................9

*Great Am. Ins. Co. v. Fountain Eng'g, Inc.*,
 No. 15-CIV-10068-JLK, 2015 WL 6395283 (S.D. Fla. Oct. 22, 2015) ....................................7

*Harris v. Mexican Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009) ...................................................................14

*In re Abbott*,
   117 F.4th 729 (5th Cir. 2024) .....................................................................17

*In re Egidi*,
   571 F.3d 1156 (11th Cir. 2009) .....................................................................9

*Itel Cap. Corp. v. Cups Coal Co.*,
   707 F.2d 1253 (11th Cir. 1983) ...................................................................14

*Kim v. FINRA*,
   698 F. Supp. 3d 147 (D.D.C. 2023) .......................................................19, 20

*Klein v. Oved*,
   No. 9:22-CV-80160-KAM, 2023 WL 7129942 (S.D. Fla. June 22, 2023) ...........................10

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
   103 F.4th 748 (10th Cir. 2024) ................................................................9, 10

*Louisiana v. Horseracing Integrity & Safety Auth. Inc.*,
   No. 6:22-cv-01934, 2023 WL 6063813 (W.D. La. Sept. 13, 2023) ...........................19

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982) ...................................................................................12

*Majano Garcia v. Martin*,
   379 F. Supp. 3d 1301 (S.D. Fla. 2018) .........................................................18

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
   785 F.3d 684 (D.C. Cir. 2015) ......................................................................9

*MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*,
   544 F. Supp. 3d 1334 (S.D. Fla. 2021) ..........................................................8

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................11

*Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
   896 F.2d 1283 (11th Cir. 1990) .....................................................................9

*Oceanic Steam Navigation Co. v. Stranahan*,
   214 U.S. 320 (1909) ...................................................................................18

*Offolter v. Horseracing Integrity & Safety Auth.*,
   No. CIV-24-749-D, 2024 WL 3732056 (W.D. Okla. Aug. 8, 2024) ..........................9

*Oklahoma v. United States,*
    62 F.4th 221 (6th Cir. 2023) .......................................................................4, 19

*SEC v. Jarkesy,*
    603 U.S. 109 (2024)........................................................1, 11, 13, 16, 17, 18

*Siegel v. LePore,*
    234 F.3d 1163 (11th Cir. 2000) (en banc) ...................................7, 9, 11

*Texas v. United States,*
    523 U.S. 296 (1998).............................................................................15

*Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.,*
    445 F. Supp. 875 (S.D. Fla. 1978) ......................................................7

*Tull v. United States,*
    481 U.S. 412 (1987)...........................................................................13

*Walmsley v. FTC,*
    117 F.4th 1032 (8th Cir. 2024) ...........................................................4

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008).............................................................................10

*Wreal, LLC v. Amazon.com, Inc.,*
    840 F.3d 1244 (11th Cir. 2016) ........................................................11

**CONSTITUTION AND STATUTES:**

U.S. CONST. amend. VII ................................................................................13

5 U.S.C.
    § 704................................................................................................4

15 U.S.C.
    § 3052(a) .........................................................................................3
    § 3053.............................................................................................3
    § 3054(j) .........................................................................................18
    § 3055(c)(4)(B) ................................................................................13
    § 3058(a) .........................................................................................3, 12
    § 3058(b) .........................................................................................12
    § 3058(b)(1) ....................................................................................13
    § 3058(b)(3)(B)................................................................................4
    § 3058(c) .........................................................................................12

FLA. STAT.
    § 550.0251(10) (2024) .....................................................................16

Horseracing Integrity and Safety Act of 2020, Pub. L. No. 116-260, div. FF, tit.
XII, § 1201, 134 Stat. 1182, 3252 (2020) (codified as amended at 15 U.S.C.
§§ 3051-3060) ................................................................................................3

LA. STAT. ANN.
§ 4:224 (2022) ..............................................................................................17
§ 49:955 (2022) .............................................................................................17
§ 49:964(F) (2022) .........................................................................................17

W. VA. CODE
§ 19-23-14(b) ...............................................................................................17
§ 19-23-16(f) ................................................................................................17

**REGULATIONS AND OTHER AUTHORITIES:**

16 C.F.R. § 1.148(b) ............................................................................................3

166 CONG. REC. H4981 (daily ed. Sept. 29, 2020) .......................................2, 3

166 CONG. REC. S5514 (daily ed. Sept. 9, 2020) ...............................................2

88 Fed. Reg. 5,070 (Jan. 26, 2023) ....................................................................4

88 Fed. Reg. 27,894 (May 3, 2023) ....................................................................4

Angst, Frank, *What's Going On Here: No More Room for Clenbuterol*,
BLOODHORSE DAILY (Nov. 1, 2021) ...............................................................5

FLA. ADMIN. CODE R.75-3.001(2) .....................................................................16

FTC, *Order Approving the Anti-Doping and Medication Control Rule Proposed
by the Horseracing Integrity and Safety Authority* (Mar. 27, 2023) ..........4

HELERINGER, Robert L., EQUINE REGULATORY LAW (2012) .............................16

HISA Rule
1020 ..............................................................................................................5
3010(e)(1) .....................................................................................................4
3212 ................................................................................................5, 6, 13, 17
3212(a) ..........................................................................................................5
3223(b) .........................................................................................................13
3224(a), .......................................................................................................14
3224(c) .........................................................................................................14
3325(b) .........................................................................................................14
3247 ..............................................................................................................5
7020 ..............................................................................................................4

H.R. REP. NO. 116-554 (2020) ..........................................................................2

Horseracing Integrity & Safety Authority, *HISA Announcement Regarding Provisional Suspensions* (Nov. 4, 2024) .................................................................................5

## INTRODUCTION

Defendant Horseracing Integrity and Safety Authority, Inc. (Authority) opposes Plaintiff's unwarranted motion for a preliminary injunction. Plaintiff filed this suit one week after the Authority charged him with violating a health-and-safety rule promulgated under the Horseracing Integrity and Safety Act of 2020 (HISA). But there is no longer any emergency. The only immediate harm Plaintiff complains of—a provisional suspension pending an arbitration proceeding—*was lifted back in November 2024* (two weeks after the motion was filed). No other sanction has been imposed or will be imposed imminently. The arbitration proceeding on the alleged violation was only recently initiated (with any hearing at least months away), and any possible sanction imposed after completion of that proceeding would be subject to further review by the Federal Trade Commission (FTC) under the congressionally mandated regulatory scheme. Put simply, Plaintiff is free to continue training horses or otherwise engage in horseracing activities pursuant to the Act without limitation. He thus faces no risk of irreparable harm—"the single most important prerequisite" for preliminary injunctive relief. The Court should deny the motion for that reason alone.

Nor can Plaintiff show that he is likely to succeed on his Seventh Amendment claim. For starters, the claim is not ripe. Plaintiff cannot say whether there will be any subsequent government proceeding to which the Constitution applies. Even if there is, the type of remedy that will be reviewed there—an "all but dispositive" Seventh Amendment consideration, *SEC v. Jarkesy*, 603 U.S. 109, 123 (2024)—remains unknown. There is also no telling whether there will be any factual dispute for a jury to resolve. And even if the Court assumed all those unknowns in Plaintiff's favor, the "public rights" exception to the Seventh Amendment would apply. In fact, Plaintiff's repeated emphasis on the history of state horseracing regulation only underscores the lack of any

Seventh Amendment problem: that history uniformly shows private regulation or administrative adjudications of horseracing violations, not common-law suits or jury trials.

The equitable factors likewise weigh heavily against granting Plaintiff a preliminary injunction. The requested relief would effectively immunize Plaintiff from a health-and-safety program that Congress required and the FTC approved—leaving Plaintiff unaccountable and the horses he trains at risk.

The Court should deny Plaintiff's motion.

## **BACKGROUND**

1. "[A] beloved tradition in the United States since the early days of the Republic," horseracing is a fixture of American culture and a "major source of jobs and economic opportunity." 166 CONG. REC. H4981-4982 (daily ed. Sept. 29, 2020) (statement of Rep. Barr). Over the last decade, however, "the joy of the races [wa]s marred by accidents that endanger[ed] both the horses and the riders." *Id.* at H4980 (statement of Rep. Pallone). Thoroughbreds died from race-related injuries at a fatality rate two-to-five times greater than in Europe or Asia. H.R. REP. NO. 116-554, at 17 (2020). These casualties sparked investigations by officials, concern within the industry, and "even call[s] for this sport to be abolished altogether." 166 CONG. REC. S5514 (daily ed. Sept. 9, 2020) (statement of Sen. McConnell). At the heart of these troubles was a "patchwork system" of state-by-state regulatory schemes that led to "wide disparit[ies]" in standards and enforcement and eroded the betting public's confidence. 166 CONG. REC. H4981 (statement of Rep.Tonko).

In 2020, a broad coalition of stakeholders rallied around "bipartisan, bicameral progress" toward finally remedying the "tragedies on the track." 166 CONG. REC. S5514-5515 (daily ed. Sept. 9, 2020) (statement of Sen. McConnell). The congressional effort culminating in HISA was

not only cheered by animal-welfare proponents, but also hailed by "limited government conservative[s]" who sought a framework for "smarter, more effective, and streamlined regulation for the industry"—sorely needed given that the "lack of uniformity ha[d] impeded interstate commerce." 166 CONG. REC. H4982 (statement of Rep. Barr). President Trump signed the Act into law later that year. Pub. L. No. 116-260, div. FF, tit. XII, § 1201, 134 Stat. 1182, 3252 (2020) (codified as amended at 15 U.S.C. §§ 3051-3060).

The Act protects athletes (equine and human), the betting public, and the integrity of the sport through the development and uniform enforcement of racetrack-safety, medication-control, and anti-doping rules. To effectuate that goal, the Act leverages the expertise of the Authority, a private standards-setting nonprofit organization, subject to "[FTC] oversight." 15 U.S.C. §§ 3052(a), 3053. The Authority may propose rules (or rule modifications), which the FTC alone may approve, reject, or revise. *Id.* §§ 3053, 3054(c)(2). The Authority also may enforce HISA rules, including by investigating and disciplining violations, pursuant to FTC-approved "procedures and rules." *Id.* §§ 3054(c), 3057.

If the Authority determines that there has been a rule violation, the Authority must "promptly submit to the [FTC] notice of the civil sanction." 15 U.S.C. § 3058(a). That sanction, in turn, "shall be subject to de novo review" by an FTC-appointed administrative law judge (ALJ). *Id.* § 3058(b). The ALJ's decision is then subject to review by the Commissioners themselves. *Id.* § 3058(c). The FTC applies a *de novo* standard to both "the factual findings and conclusions of law"; may "allow the consideration of additional evidence"; may "affirm, reverse, modify, set aside, or remand for further proceedings"; and may "make any finding or conclusion that, in the judgment of the [FTC], is proper and based on the record." *Id.* § 3058(c)(3). The ALJ or the Commissioners may stay any sanction pending review by the agency. *Id.* § 3058(d); 16 C.F.R.

§ 1.148(b).  And the FTC's decision is a final agency action subject to Article III review.  5 U.S.C. § 704; *see* 15 U.S.C. § 3058(b)(3)(B).

This framework—which mirrors the relationship between the Securities and Exchange Commission (SEC) and Financial Industry Regulatory Authority (FINRA)—has repeatedly withstood constitutional scrutiny.  The Sixth and Eighth Circuits have upheld HISA across the board.  *See Oklahoma v. United States*, 62 F.4th 221 (6th Cir. 2023); *Walmsley v. FTC*, 117 F.4th 1032 (8th Cir. 2024).  Although the Fifth Circuit declared the Act's enforcement provisions facially unconstitutional under the private nondelegation doctrine, the Supreme Court in October 2024 granted the Authority's emergency application for a stay of the Fifth Circuit's outlier mandate.  *See Horseracing Integrity & Safety Authority, Inc. v. National Horsemen's Benevolent & Protective Ass'n*, No. 24A287 (U.S. Oct. 28, 2024).  The Authority's petition for a writ of certiorari remains pending at the Supreme Court.  *Horseracing Integrity & Safety Authority, Inc. v. National Horsemen's Benevolent & Protective Ass'n*, No. 24-433 (U.S.).

**2.**  Pursuant to the Act, the FTC in 2023 approved the Authority's proposed Anti-Doping and Medication Control Rules and Regulations, which are known collectively as the ADMC Program.  *See* 88 Fed. Reg. 5,070-5,201 (Jan. 26, 2023) (FTC Notice of Horseracing Integrity and Safety Authority (HISA) Proposed Rule and Request for Comment); FTC, *Order Approving the Anti-Doping and Medication Control Rule Proposed by the Horseracing Integrity and Safety Authority* (Mar. 27, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/P222100CommissionOr derAntiDopingMedication.pdf; 88 Fed. Reg. 27,894 (May 3, 2023) (FTC Notice of Final Rule, effective May 22, 2023).  HISA Rule 3010(e)(1) established that the Horseracing Integrity & Welfare Unit (HIWU) would enforce the ADMC Program under FTC oversight.  Under Rule 7020,

HIWU charges are initially adjudicated by a neutral arbitrator, subject to the FTC-review process described above.

The ADMC Program includes a list of "Banned Substances"—the most dangerous category of regulated substances that are generally prohibited at all times. Under the relevant rule, a "Responsible Person" has a "duty . . . to ensure that no Banned Substance is present in the body of his or her Covered Horse(s)." HISA Rule 3212(a). A "Responsible Person" includes a licensed "Trainer of the Covered Horse." HISA Rule 1020. Accordingly, the trainer of a horse covered by the Act is "strictly liable for any Banned Substance or its Metabolites or Markers found to be present in a Sample collected from his or her Covered Horse(s)." HISA Rule 3212(a).

Previously, HIWU provisionally suspended any "Responsible Person" charged with violating Rule 3212. *See* HISA Rule 3247. But in November 2024, the Authority "determined that further analysis and review on the issue of Provisional Suspensions is necessary to determine whether any modifications to the current rules are appropriate." Horseracing Integrity & Safety Authority, *HISA Announcement Regarding Provisional Suspensions* (Nov. 4, 2024), https://hisaus.org/news/hisa-announcement-regarding-provisional-suspensions. "While this review takes place," the Authority has lifted all provisional suspensions (including Plaintiff's) outside a narrow category of circumstances inapplicable here. *Id.*

**3.** Plaintiff is a horse trainer in southern Florida. ECF No. 1 (Compl.) ¶ 4. On August 10, 2024, one of the horses Plaintiff trains, Fast Kimmie, won a race at Saratoga Race Course in Upstate New York. *Id.* ¶¶ 64-65. After the race, "[s]amples of Fast Kimmie's blood and urine were collected" pursuant to the FTC-approved rules. *Id.* ¶ 66. Two different tests conducted at two different ADMC Program laboratories detected Clenbuterol in the urine samples. *Id.* ¶¶ 68, 76; *see also* ECF No. 1-1, at 1-2 (HIWU Charge Letter); Frank Angst, *What's Going On Here: No*

*More Room for Clenbuterol*, BLOODHORSE DAILY (Nov. 1, 2021) ("The problem is that when regularly administered to horses, clenbuterol delivers a significant anabolic (muscle-building) effect.  For years it's been a go-to drug for cheat trainers."), https://www.bloodhorse.com/horse-racing/articles/254577/whats-going-on-here-no-more-room-for-clenbuterol.

On October 10, 2024, HIWU charged Plaintiff with violating Rule 3212 and imposed a (now lifted) provisional suspension.  ECF No. 1-1, at 1; ECF No. 24, at 6.  In its charging letter, HIWU outlined various "proposed consequences" for the violation and Plaintiff's response options.  Compl. ¶¶ 76-79; ECF No. 1-1, at 2-3.  Specifically, HIWU explained that Plaintiff could "(1) admit the ADMC Program violation and accept, dispute, or seek to mitigate HIWU's proposed consequences or (2) deny the ADMC Program violation and dispute HIWU's proposed consequences" in a hearing before a neutral arbitrator pursuant to the process Congress contemplated and the FTC approved.  Compl. ¶ 78; ECF No. 1-1, at 4-6.

Plaintiff chose to forgo both options, and instead filed this lawsuit on October 17, 2024. *See* ECF No. 1 (Compl.).  Days later, Plaintiff moved to preliminarily enjoin the Authority and the FTC "from taking any action against him to enforce [HISA] or the rules promulgated under HISA." ECF No. 10-1 (PI Mot.) at 1.  In support, Plaintiff argues that he is likely to prevail in showing that (i) HISA's enforcement provisions violate the private nondelegation doctrine, and (ii) the Authority's enforcement procedures violate the Seventh Amendment, both facially and as applied. His claims of irreparable harm all revolve around the (then applicable) provisional suspension. *Id.* at 20-21.

After directing the parties to "inform the Court as to the impact on this matter" of the Supreme Court's stay in *Horseracing Integrity & Safety Authority*, No. 24A287, *see* ECF No. 21,

6

at 1, the Court ordered briefing on Plaintiff's preliminary injunction motion limited to his Seventh Amendment challenge, *see* ECF No. 25.

<u>**ARGUMENT**</u>

"[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion" on four distinct "prerequisites." *GeorgiaCarry.org, Inc. v. United States Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (alteration in original). The movant must prove that (1) "the preliminary injunction is necessary to prevent irreparable injury," (2) there is "a substantial likelihood of success on the merits," (3) "the threatened injury outweighs the harm the preliminary injunction would cause the other litigant," and (4) "the preliminary injunction would not be averse to the public interest." *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). Plaintiff here comes nowhere close to establishing any of those required elements—let alone all four.

## I.   <u>PLAINTIFF FAILS TO SHOW IRREPARABLE HARM</u>

"[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Great Am. Ins. Co. v. Fountain Eng'g, Inc.*, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *3 (S.D. Fla. Oct. 22, 2015) (quoting *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 445 F. Supp. 875, 877 (S.D. Fla. 1978)); *see, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000) (en banc) ("proof of irreparable injury is an indispensable prerequisite to a preliminary injunction"). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176 (internal quotation marks and citation omitted). "Past harm . . . cannot serve as a basis for granting

a preliminary injunction." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005).

The irreparable harm arguments Plaintiff makes in his motion—in a section that spans less than two pages—all depend explicitly on his provisional suspension.  Plaintiff contends that (i) "[f]irst," "*[a]s a result of the provisional suspension*, [he] is being denied once-in-a-lifetime racing opportunities"; (ii) "[s]econd, [*the*] *provisional suspension required* [him] to transfer 19 horses out of his care"; and (iii) "[t]hird, *the provisional suspension is causing* [him] reputational harm."  PI Mot. at 20-21 (emphases added).  As Plaintiff has acknowledged, though, the Authority lifted his provisional suspension on November 4, 2024.  *See* ECF No. 24, at 6 ("Plaintiff is not provisionally suspended.").  So that suspension does not constitute any ongoing or future harm.  *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury" rather than harms "in the past." (citations omitted)).

Plaintiff is free to participate fully in horseracing activities under the Act and the implementing rules the FTC has approved.  Because the basis for all the allegations of irreparable harm that Plaintiff raised in his preliminary injunction motion no longer applies, his motion should be denied.  The Court can stop here.

Recognizing that the lifting of his provisional suspension removed the sole ground for his claims of irreparable harm, Plaintiff raised for the first time in the parties' joint scheduling report that he "faces a significant threat of being subjected to an unconstitutional arbitration."  ECF No. 24, at 6.  To the extent Plaintiff seeks to press that argument in his reply in support of his preliminary injunction motion, he forfeited it "[b]y not advancing [it] in [the] Motion."  *MY. P.I.I.*

8

*LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1344 n.17 (S.D. Fla. 2021) (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)); *see also Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 695 n.3 (D.C. Cir. 2015) (refusing to consider irreparable harm arguments "first raised in a reply brief").

In any event, simply being subject to an allegedly unconstitutional HISA arbitration—before any sanction is imposed—does not constitute irreparable harm. *See Offolter v. Horseracing Integrity & Safety Auth.*, No. CIV-24-749-D, 2024 WL 3732056, at *3 (W.D. Okla. Aug. 8, 2024) (rejecting plaintiffs' argument that "being subjected to an unconstitutional exercise of the Authority's enforcement power [] constitutes irreparable harm") (citing *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748 (10th Cir. 2024)).  With rare exceptions inapplicable here, a constitutional violation "by itself" is not "sufficient to show irreparable injury." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see also Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024) ("Except in First Amendment cases, we do not presume constitutional harms irreparable[.]" (emphasis omitted)), *cert. denied sub nom. Gray v. Jennings*, No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025).  That is why the en banc Eleventh Circuit in *Siegel* refused to "presume[]" that an allegedly unconstitutional ballot recount would irreparably injure plaintiffs.  234 F.3d at 1178.

The Supreme Court's recent decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), does not change the analysis.  Although the Court there described an alleged Appointments Clause violation as "a here-and-now injury" that "is impossible to remedy once the [administrative] proceeding is over," *id.* at 191, the Court was answering a "statutory jurisdictional question," *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1335 (D.C. Cir. 2024).  *Axon* "did not speak to what

constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction." *Id.* at 1336. Circuit courts have thus consistently rejected reliance on *Axon* in that context. *See id.* at 1334-1336 (holding in parallel FINRA context that "being investigated by, or participating in a proceeding before, an unconstitutionally appointed officer is not, without more, an injury that necessitates preliminary injunctive relief"); *see also Leachco*, 103 F.4th at 758 ("*Axon* does not help Leachco establish irreparable harm because *Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief.").

The initial HISA arbitration proceeding that Plaintiff apparently seeks to avoid, moreover, does not even implicate the Seventh Amendment right he claims to be violated. As explained below, whether there will be any subsequent government proceeding to which the Seventh Amendment theoretically attaches, and whether Plaintiff would be constitutionally entitled to a jury trial for that proceeding, remains to be seen. *See* pp. 12-14, *infra*; *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (mere "possibility" of harm is not enough to warrant injunctive relief); *see also Blankenship v. FINRA*, No. CV 24-3003, 2024 WL 4043442, at *2 (E.D. Pa. Sept. 4, 2024) (plaintiff alleging Seventh Amendment claim did not have any "here-and-now" injuries because his injuries "d[id] not arise merely from his appearance in FINRA's proceedings" as "FINRA w[ould] have to take certain allegedly unconstitutional steps to injure him" (footnote omitted)).[1]

---

[1] In the scheduling report, Plaintiff also contended that the mere "public reporting of the charge against [him] is causing [him] irreparable harm," ECF No. 24, at 6—seemingly referring to the same "reputational harm" that he previously alleged "the provisional suspension is causing," PI Mot. 21. But public awareness of an alleged rule violation is "incidental to every [administrative] proceeding brought lawfully and in good faith," and thus does not amount to "irreparable injury." *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965). Besides, Plaintiff has presented no evidence to substantiate his claim of reputational harm. *See Klein v. Oved*, No. 9:22-

In short, Plaintiff has not shown any "need for speedy and urgent action."  *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).  The Court should deny his motion for that reason alone.  *See Siegel*, 234 F.3d at 1176 (failing to establish "a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").

## II.   **PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS**

If the Court nevertheless reaches the merits of Plaintiff's Seventh Amendment claim, it should hold that Plaintiff has not shown that he is "substantially likely" to prevail.  *Florida v. Department of Health & Hum. Servs.*, 19 F.4th 1271, 1286 (11th Cir. 2021) ("It is not enough that the chance of success on the merits be better than negligible." (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009))).

### A.   **Plaintiff's Seventh Amendment Claim Is Not Ripe**

As an initial matter, the timing of Plaintiff's lawsuit creates a justiciability problem.  Unlike in *Jarkesy* (Plaintiff's lead case), Plaintiff did not file his suit after a federal government agency had imposed a monetary penalty, or even after an agency proceeding seeking a monetary penalty was underway.  Plaintiff filed this suit within a week of HIWU's charging letter.  The initial arbitration proceeding between him and HIWU has just begun, with any arbitration hearing still

---

CV-80160-KAM, 2023 WL 7129942, at *2 (S.D. Fla. June 22, 2023) (requiring "record evidence" of "either a loss or imminent loss of customers or goodwill").  And such injury would be "neither imminent nor irreparable at law and [therefore] not the appropriate subject matter for [the] injunctive relief" Plaintiff seeks:  public notice of his alleged rule violation "already occurred" months ago and would not be remedied by pausing the follow-on enforcement proceedings. *Alabama*, 424 F.3d at 1134.

months away (at the earliest) and any potential FTC proceeding not occurring until after that (assuming the arbitration results in any sanction).[2]  Ripeness issues thus abound.

**1.**  To start, it is unclear whether there will ever be a proceeding against Plaintiff to which the Seventh Amendment could attach.  "[M]ost rights secured by the Constitution are protected only against infringement by *governments*."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (emphasis added).  The "conduct of private parties" is generally "beyond the Constitution's scope."  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).  As Plaintiff acknowledges, the Authority and HIWU are "nongovernmental," "private entit[ies]."  Compl. ¶¶ 10, 12, 29.  Their "private enforcement" arbitration proceeding that Plaintiff faces is thus not one to which the Seventh Amendment applies.  *Id.* at 6; *see Euristhe v. Beckmann*, No. 4:23-CV-00653-O-BP, 2024 WL 2019769, at *3 (N.D. Tex. Apr. 22, 2024) ("the Fourth, Fifth, and Seventh Amendments to the Constitution do not apply to private actions"), *report and recommendation adopted*, No. 4:23-CV-00653-O-BP, 2024 WL 2141966 (N.D. Tex. May 13, 2024).

The arbitrator could decide that Plaintiff did *not* violate HISA's rules, thereby obviating the basis for any follow-on FTC proceeding.  *See* 15 U.S.C. § 3058(a)-(c).  Or if the arbitrator decides that Plaintiff *did* violate HISA's rules, Plaintiff could choose to forgo an FTC proceeding.  *See id.* § 3058(b).  Either way, there would be no government infringement of any constitutional right—there would be no government proceeding at all.

---

[2] The arbitrator held an initial scheduling conference on January 6, 2025.  On January 21, Plaintiff moved to stay the arbitration proceeding until either the Supreme Court issues a decision in *Horseracing Integrity & Safety Authority*, No. 24-433, or this Court decides his preliminary injunction motion.  Briefing on Plaintiff's stay motion will not be complete until February.  If the arbitrator denies the motion, the next step would be a case management conference to set a schedule for briefing on the merits.  Accordingly, any arbitration hearing on the merits is at least months away.

**2.**  The uncertainty does not end there.  Even when the Constitution applies, "specific factual context is required before a court can decide whether a right to a jury trial exists."  *Board of Trade of City of Chicago v. Commodity Futures Trading Comm'n*, 704 F.2d 929, 933 (7th Cir. 1983).  In particular, courts must consider the "remedy" sought.  *Jarkesy*, 603 U.S. at 123 ("the remedy [i]s the 'more important' consideration" (quoting *Tull v. United States*, 481 U.S. 412, 421 (1987)).  The Seventh Amendment "preserve[s]" the jury trial right only for "[s]uits at common law," U.S. CONST. amend. VII—not suits in "equity," *Jarkesy*, 603 U.S. at 122.  Although "money damages are the prototypical common law remedy," injunctive and other "remedial" relief are not similarly classified.  *Id.* at 123.  The Seventh Amendment thus "does not apply" to "suits seeking only [that latter type of] relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999).

Even assuming HIWU's charge against Plaintiff leads ultimately to an FTC proceeding (followed by Article III review), there is still a question as to what specific remedy would be at issue there.  Under HISA, the arbitrator's sanction will be the only "remedy" under consideration.  *See* 15 U.S.C. §§ 3055(c)(4)(B), 3058(b)(1).  Currently, before any arbitral proceeding has even occurred, no one knows whether there will be any sanction at all, much less what it will be.  "[M]onetary fines and penalties" are an option, but so is a sanction that undisputedly would fall outside of the category of common law remedies—*e.g.*, a suspension from racing, "disgorgement of [the] purse[]" awarded, or a "change[] to the order of finish in covered races."  *Id.* § 3057(d)(3)(A).  Indeed, the (since lifted) provisional suspension that Plaintiff alleged as causing his irreparable harm would not trigger the Seventh Amendment.

Plaintiff initially argues that HISA rules *require* a monetary fine for a Rule 3212 banned substances violation.  PI Mot. at 5 (citing Rule 3223(b)).  But as Plaintiff later recognizes, "whether

13

a fine is issued" is actually "determined according to [the violator's] degree of culpability." *Id.* at 15 (citing Rules 3224(a), 3325(b)). The arbitrator could determine that a fine is inappropriate and instead suspend the horse in question and disqualify the race results, *see* Rule 3224(c)—both of which would constitute equitable relief. *See, e.g.*, *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015) ("[T]he word[] . . . 'suspend' [is a] term[] of art in equity."). The mere potential that a monetary penalty could be at issue in a later government proceeding is not enough to implicate the Seventh Amendment at this early stage. *See Curtis v. Loether*, 415 U.S. 189, 198 (1974) (concluding that "damages actions" under Title VIII require a jury trial, but Title VIII "actions seeking only equitable relief will be unaffected").

**3.** What's more, even if the arbitrator's sanction (and remedy sought in a subsequent FTC proceeding) included a fine, Plaintiff still would not be entitled to a jury trial if "the pertinent facts are obvious and indisputable from the record." *Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1190 (11th Cir. 2004). "No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined." *Ex Parte Peterson*, 253 U.S. 300, 310 (1920); *see also Itel Cap. Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1261 (11th Cir. 1983) ("[W]here no issue of fact remains, summary judgment decides only questions of law and does not deprive the losing party of its jury trial right."); *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006) ("The Seventh Amendment does not entitle parties to a jury trial when there are no factual issues for a jury to resolve."). As of today, there is no way to know what specific facts will be before the FTC, much less whether any will be in dispute.

*      *      *

In short, Plaintiff's Seventh Amendment claim is premature. It "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Harris v. Mexican*

14

*Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).   Reviewing the claim now would require the Court to "engag[e] in speculation" about whether the charge will ever end up in an FTC proceeding, what remedy will be sought there if it does, and the extent to which any disputed issues of fact will exist.  *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).  The "inquiry is [thus] better postponed until" further into (or even after) the administrative process, when "the issues [can be] presented in . . . more concrete circumstances[.]"  *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995); *see Blankenship*, 2024 WL 4043442, at *3 (Seventh Amendment claim was not "wholly collateral" to the SEC's review of a FINRA decision or outside the agency's expertise because the claim "depend[ed] on [the agency]'s proceeding and the interpretation of its rules").  Plaintiff's Seventh Amendment claim is thus not an appropriate basis for a preliminary injunction.  *See Flowers Indus. v. FTC*, 849 F.2d 551, 553 (11th Cir. 1988) (vacating issuance of preliminary injunction in part because "the parties ha[d] yet to complete the administrative process," making "th[e] case not ripe for judicial review"); *see also Doe #1-#14 v. Austin*, 572 F. Supp. 3d 1224, 1241 n.18 (N.D. Fla. 2021) ("[I]f the plaintiffs could not establish a likelihood that their claims are ripe, they could not show a likelihood of success on the merits."). [3]

---

[3] The fact that these HISA proceedings may not even implicate the Seventh Amendment not only demonstrates that Plaintiff's as-applied Seventh Amendment claim is unripe, but also dooms Plaintiff's facial Seventh Amendment claim.  A facial constitutional challenge can succeed only when the "law is unconstitutional in *all* of its applications."  *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (emphasis added).

**B.  The Seventh Amendment Does Not Apply To HISA Enforcement Actions**

At any rate—even if this Court assumes that there will be an FTC proceeding, that a fine will be imposed, and that there will be facts in dispute—Plaintiff's Seventh Amendment claim would still fail because HISA enforcement actions fall plainly under the "public rights" exception.

Although cases "concerning private rights may not be removed from Article III courts," the Supreme Court in *Jarkesy* confirmed that cases "concerning what [courts have] called 'public rights'" can be determined by "an agency without a jury, consistent with the Seventh Amendment." *Jarkesy*, 603 U.S. at 127-128.  Whether a particular case qualifies depends on "historical practice." *Id.* at 129.  Matters concerning "public rights" are those that have historically been adjudicated outside the judiciary.  *Id.* at 128-130; *see also id.* at 152 (Gorsuch, J., concurring) ("public rights are a narrow class defined and limited by history").

The history here shows that horseracing regulation falls within that narrow class of public rights lacking a common-law analog.  For the first 100 years of this country's existence, horseracing was functionally "unregulated."  ROBERT L. HELERINGER, EQUINE REGULATORY LAW 43-44 (2012).  There was no consistent enforcement of any rules, and there is no evidence of any enforcement in common-law courts.  *Id.*  By the latter part of the nineteenth century, a private organization known as the Jockey Club "wrote the rules of racing" and "enforced . . . and interpreted them as a court of last appeal." *Id.* at 44.  But its efforts quickly proved lacking, so states started to create their own racing commissions to regulate the sport.  *E.g.*, *id.* at 48, 76.  Those commissions, in turn, enforced horseracing regulations (subject to monetary penalties) through administrative processes that provided no right to a jury trial.  *See, e.g.*, FLA. STAT. § 550.0251(10) (2024) (Florida Gaming Control Commission may impose fines and suspensions for horseracing violations); FLA. ADMIN. CODE R.75-3.001(2) (horseracing violations adjudicated

16

by board of stewards and Division of Pari-Mutuel Wagering judge, not a jury); LA. STAT. ANN. §§ 4:224, 49:955, 49:964(F) (2022) ("commission's hearings, practice and procedure, and rule making procedure are as provided in the [Louisiana] Administrative Procedure Act," which does not guarantee jury trial); W. VA. CODE §§ 19-23-14(b), 19-23-16(f) ("civil penalties" are "imposed by the [commission's] stewards, or the commission," and hearings are "conducted by a quorum of the Racing Commission or by a hearing examiner appointed by the Racing Commission").

Plaintiff does not offer a different historical account. Instead, he first argues that an "enforcement action for an ADMC Program violation implicates private [not public] rights" because the purpose of the Program is, "in part," similar to the purpose of common-law fraud. PI Mot. at 18. But the relevant question is whether the specific claim at issue "target[s] the same basic conduct" as those traditionally adjudicated in a court of law. *Jarkesy*, 603 U.S. at 134. And though common-law fraud is a "traditional legal claim[]," it targets "misrepresenting or concealing material facts." *Id.* at 135, 125. HISA's equine anti-doping rules, under which Plaintiff has been charged, targets the use of a Banned Substance—whether that use is concealed or not. *See* Rule 3212; *see also* Compl. ¶¶ 20-23 (complaining that the relevant rule imposes "[s]trict liability" whereby it is "not necessary for the Authority to demonstrate intent, fault, negligence, or knowing use" of the banned substance (internal alterations omitted)). The two claims are not analogous. *In re Abbott*, 117 F.4th 729, 735 (5th Cir. 2024) ("a cause of action is sufficiently analogous to [a] common-law [claim] . . . when the two serve[] the same essential function") (third alteration in original) (internal quotation marks omitted).

Plaintiff next insists that an enforcement proceeding cannot fall under the public rights exception if, like here, monetary relief is available. *See* PI Mot. at 18-19. But the Supreme Court has never announced such a rule. In fact, the Court has recognized the applicability of the public

17

rights exception when monetary relief was not just available, but affirmatively sought.  *See Jarkesy*, 603 U.S. at 129 (noting that the public rights exception "extends" to "enforce[ment]" of customs law with "a monetary penalty" (citing *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320 (1909))).

Finally, Plaintiff contends that HIWU's enforcement action cannot fall under the public rights exception because the Act does not vest the FTC with "exclusive[]" authority to adjudicate these matters, but also provides for a potential civil action in federal district court.  PI Mot. at 19.  As an initial matter, the cited statutory provision (which has never been invoked) authorizes the Authority to file a court action to enjoin violations of HISA or to enforce sanctions *already* imposed through the administrative process, not to seek such sanctions (including any common-law remedies) in the first place.  15 U.S.C. § 3054(j).  The Act's newly created civil action, moreover, lacks any common law roots.  In any event, the Court in *Jarkesy* explained that a case can involve "public rights" even when it is "presented in such form that the judicial power [i]s capable of acting on [it]."  *Jarkesy*, 603 U.S. at 128.  The exception covers HISA violations, meaning no jury-trial right attaches.

## III.   THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST INJUNCTIVE RELIEF

If all the above were not enough, both the balance of the harms and the public interest—which "'merge' when, as here, the [g]overnment is [an] opposing party"—weigh against allowing Plaintiff to escape the enforcement proceedings Congress mandated.  *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020) (first alteration in original).

As explained (pp. 7-11, *supra*), allowing the enforcement action against Plaintiff to proceed will not cause him any irreparable harm.  Meanwhile, "[t]he public has an interest in enforcing federal law."  *Majano Garcia v. Martin*, 379 F. Supp. 3d 1301, 1308 (S.D. Fla. 2018).  Indeed,

"there is inherent harm" in "preventing [an agency] from enforcing regulations that Congress found it in the public interest to direct an agency to develop and enforce." *Florida Growers Ass'n v. Su*, No. 8:23-CV-889-CEH-CPT, 2024 WL 670464, at \*35 (M.D. Fla. Jan. 5, 2024), *report and recommendation adopted*, No. 8:23-CV-889-CEH-CPT, 2024 WL 1343021 (M.D. Fla. Mar. 29, 2024). That is especially true here, where the regulations in question concern health and safety. "Whether it's the risk of pushing horses past their limits or the risks associated with unsafe tracks and doping, or other health and safety issues facing horses and jockeys, no one doubts the imperative for [the] oversight" that HISA brings. *Oklahoma*, 62 F.4th at 226.

The injunction Plaintiff seeks would effectively immunize him from that oversight. It would prevent the Authority and the FTC from enforcing HISA's anti-doping rules and other FTC-approved rules against Plaintiff, leaving him free to endanger horses and other horseracing participants—all because, someday, there might be a government proceeding that might (or might not) implicate a jury-trial right. That is not in the public's interest.

What's more, an injunction would "inevitably" spur "copy-cat [law]suits." *Kim v. FINRA*, 698 F. Supp. 3d 147, 170 (D.D.C. 2023) (denying motion to enjoin a FINRA enforcement proceeding). HISA's opponents have used a "deliberate strategy" of "shuffling . . . plaintiffs" and "leapfrogging from one case to another in different district and circuit courts in the wake of unfavorable rulings." *Louisiana v. Horseracing Integrity & Safety Auth. Inc.*, No. 6:22-cv-01934, 2023 WL 6063813, at \*6 & n.7 (W.D. La. Sept. 13, 2023) (report & recommendation). A *favorable* ruling for Plaintiff here would assuredly bring more of the same—threatening Defendants' ability to enforce HISA and its implementing rules across the country, and thus their ability to prevent the health-and-safety tragedies and doping and corruption scandals that gripped the sport for too many years.

19

Given all this, the equities "would outweigh even a successful showing on the other preliminary injunction factors"—"render[ing] preliminary relief inappropriate." *Kim*, 698 F. Supp. 3d at 173; *see also Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (affirming denial of preliminary injunction motion because, "[e]ven if we assume . . . that plaintiffs were likely to succeed on the merits of their claims, the balance of equities and the public interest tilted against their request for a preliminary injunction"). But because Plaintiff has not demonstrated any irreparable harm or a likelihood of success on the merits, the Court need not reach these remaining equitable factors.

## **CONCLUSION**

For the foregoing reasons, the Authority respectfully requests that the Court deny Plaintiff's motion for a preliminary injunction.

Dated: January 24, 2025

Respectfully submitted,

 s/ *Johnny P. ElHachem*

Pratik A. Shah
  *Admitted Pro Hac Vice*
Lide E. Paterno
  *Admitted Pro Hac Vice*
AKIN GUMP STRAUSS
  HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006
Phone: 202-887-4000 Fax: 202-887-4288

John C. Roach
  *Admitted Pro Hac Vice*
RANSDELL ROACH & ROYSE, PLLC
176 Pasadena Drive, Building One
Lexington, KY 40503
Phone:  859-854-3672 Fax:  859-276-4500

Johnny P. ElHachem
(FL Bar No.: 1015837)
HOLLAND & KNIGHT LLP
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
Phone: (305) 789-7583
Fax: (305) 789-7799
Email: johnny.elhachem@hklaw.com

*Counsel to Horseracing Integrity and Safety Authority, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 24, 2025, I caused the foregoing document to be electronically filed with the Court using the ECF system, which will send notification of such filing to all attorneys of record.

<u>*/s/ Johnny P. ElHachem*</u>
Johnny P. ElHachem