UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:24-cv-61939-LEIBOWITZ

**PHILIP SERPE,**
    *Plaintiff*,

v.

**FEDERAL TRADE COMMISSION, et al.,**
    *Defendants.*
_____/

## ORDER DENYING APPLICATION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff's Motion for a Preliminary Injunction [ECF No. 10] (the "Motion"). The Motion is fully briefed and ripe for resolution. [*See* ECF Nos. 26, 27, 29]. In this lawsuit, Plaintiff challenges the constitutionality of the Horseracing Integrity and Safety Act of 2020 ("HISA" or "the Act") as amended, 15 U.S.C. §§ 3051–60, and its implementing regulations. [Compl., ECF No. 1]. Plaintiff alleges that HISA and its Rules violate both the private nondelegation doctrine [ECF No. 10-1 at 14–18] and the Seventh Amendment's guarantee of the right to trial by jury [*id.* at 18–25]. Plaintiff thus asks the Court to enjoin Defendants from enforcing HISA against him. Upon due consideration of the Motion, the parties' papers, relevant portions of the record, and the governing law, the Motion is DENIED for the reasons given below.

### I.    PROCEDURAL BACKGROUND

Plaintiff Philip Serpe's challenge to HISA's constitutionality is not the only one making its way through the federal courts. Plaintiffs residing in horseracing country have lodged challenges to both HISA's delegation of rulemaking authority to private-entity Defendant Horseracing Integrity and Safety Authority (the "Authority"), as well as to HISA's enforcement scheme. *See, e.g., Louisiana v. Horseracing Integrity & Safety Auth. Inc.,* 617 F. Supp. 3d 478, 486 (W.D. La. 2022); *Nat'l Horsemen's Benevolvent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2023 WL 2753978 (N.D. Tex. Mar. 31, 2023); *Offolter v. Horseracing Integrity & Safety Auth.,* No. CIV-24-749-D, 2024 WL 3732056 (W.D. Okla.

1

Aug. 8, 2024). Plaintiffs' private nondelegation challenge is presently pending before the United States Supreme Court. *See Horseracing Integrity & Safety Auth., Inc. v. Nat'l Horsemen's Benevolent & Protective Ass'n*, 145 S. Ct. 8 (2024) (granting stay of *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,* 107 F.4th 415 (5th Cir. 2024) (holding the Authority's enforcement powers under HISA violated the private nondelegation doctrine)); *see also Walmsley v. Fed. Trade Comm'n*, 117 F.4th 1032 (8th Cir. 2024) (holding plaintiffs failed to establish a fair chance of success on merits of claim that HISA's enforcement provisions were unconstitutional on their face); *Oklahoma v. United States,* 62 F.4th 221 (6th Cir. 2023) (holding plaintiffs' facial constitutional challenge to HISA failed). Plaintiffs' Seventh Amendment challenge to HISA has been asserted (albeit tangentially) at the district court level, but no district court or court of appeals has squarely addressed the Seventh Amendment challenge to date.

Because the United States Supreme Court has yet to decide the private nondelegation question, this Court stayed that issue in the instant case and directed the parties to brief only Plaintiff's Seventh Amendment challenge. [*See* ECF No. 25]. The Court held a hearing on Plaintiff's Seventh Amendment challenge on April 10, 2025. [*See PAPERLESS MINUTE ENTRY*, ECF No. 39]. After argument, the Court directed the parties to supplement the record in various respects. [*See* ECF No. 40]. The parties have now done so. [ECF Nos. 45, 46, 48].

As explained more fully herein, the Court denies Plaintiff's application for preliminary injunctive relief for two reasons. As for a preliminary injunction *against the Authority*, Plaintiff fails to show irreparable harm. Plaintiff may sue the Authority to recover damages for any injuries caused by the alleged unconstitutional arbitration Plaintiff seeks to enjoin. As for a preliminary injunction *against the Federal Trade Commission* ("FTC"), Plaintiff's Seventh Amendment challenge is not yet ripe; the FTC does not become involved or take any action until after arbitration is completed. Plaintiff's arbitration is scheduled for June 2025. So, until the FTC's administrative law judge is called upon to review the Authority's sanction decision, if any, Plaintiff's claim as to the FTC is not ripe. While the merits of

Mr. Serpe's Seventh Amendment claim may ultimately win the race, this Court will not grant extraordinary relief before the starter's gate has even opened.

## II.   FACTUAL BACKGROUND

The parties agree that no factual dispute exists among them. [Hearing Tr. (rough) Apr. 10, 2025, at 5:4–8; 23:20–22; 47:13–14]. The facts relevant to the instant Motion are, therefore, as follows: Plaintiff Philip Serpe ("Serpe") is a Southeast Florida horse trainer who trained a thoroughbred racehorse named Fast Kimmie. [Compl., ECF No. 1 ¶ 64]. Defendants FTC and the Authority are authorized by the HISA to develop and enforce uniform national drug and safety standards for horseracing. [*Id.* ¶¶ 5, 6, 10]. On August 10, 2024, Fast Kimmie finished first in a horserace held at the Saratoga Racetrack. [*Id.* ¶ 65]. As a result of the win, samples of Fast Kimmie's blood and urine were collected for testing as required by the HISA. [*Id.* ¶ 66]. Two separate samples of Fast Kimmie's blood and urine—A Sample and B Sample—were taken. [*Id.*]. On September 4, 2024, the Horseracing Integrity and Welfare Unit ("HIWU") notified Serpe that Fast Kimmie's A Sample urine tested positive for the banned substance, Clenbuterol. [*Id.* ¶ 68]. Serpe responded to the HIWU in writing that he was "innocen[t]," requesting that Fast Kimmie's B Sample be tested and analyzed. [*Id.* ¶ 71]. The HIWU reported that, although Clenbuterol had not been detected in Fast Kimmie's A Sample blood, Clenbuterol was also detected in Fast Kimmie's B Sample urine. [*Id.* ¶¶ 73, 76]. Serpe had also requested that hair testing and DNA analysis be performed, but HIWU denied the request. [*Id.* ¶¶ 72, 73].

On October 10, 2024, HIWU issued a Charge Letter [ECF No. 1-1], advising Serpe that he had until October 17, 2024, to either (1) admit the doping violation and accept, dispute, or seek to mitigate HIWU's proposed consequences; or (2) deny the doping violation and dispute HIWU's proposed consequences at a hearing to be conducted in accordance with Anti-Doping and Medical Control ("ADMC") Program Rule 3261 and Arbitration Procedures. [Compl., ECF No. 1 ¶¶ 76, 78].

3

HIWU's proposed consequences for Serpe's alleged HISA violation included the following: (1) disqualification of Fast Kimmie's race result, including forfeiture of all purses and compensation; (2) Fast Kimmie's 14-month period of ineligibility; (3) Serpe's two years of ineligibility, with credit for time served under the imposition of the Provisional Suspension; (4) a fine of $25,000 or 25% of the total race purse (whichever is greater); (5) payment of some or all of HIWU's adjudication and legal costs; (6) public disclosure; and (7) all other consequences which may be required by HISA Rules. [*Id.* ¶ 79; ECF No. 1-1 at 2–3].

Serpe's Provisional Suspension became effective on October 10, 2024. [ECF No. 1-1 at 3]. The provisional suspension barred Serpe's "Covered Horses"[1] from participating in any timed and reported workout or any "Covered Horseraces." [*Id.*]. In addition, Serpe was prohibited from (1) displaying personal signage at the racetrack; (2) claiming or bringing any Covered Horses into his barn; and (3) being "employed in any capacity involving Covered Horses." [*Id.*]. And, as a trainer, Serpe's Covered Horses were not allowed to participate in any timed and reported workout or Covered Horseraces until the horses were transferred to "another Responsible Person." [*Id.*]. And, finally, Serpe's access to the HISA Portal was restricted. [*Id.*].

On November 4, 2024, the Authority announced that it had lifted all provisional suspensions (which included Serpe's). [ECF No. 26 at 13 (citing Horseracing Integrity & Safety Authority, *HISA Announcement Regarding Provisional Suspensions* (Nov. 4, 2024), at https://hisaus.org/news/his-announcement-regarding-provisional-suspensions (webpage no longer exists))].

---

[1] The HISA defines "Covered Horse" as "any Thoroughbred, Standardbred, or Quarter Horse" during the period starting with "the date of the horse's first timed and reported workout at a racetrack that participates in covered horseraces or at a training facility," and "ending on the earlier of (i) the date on which the horse is permanently ineligible to be entered in a covered horserace; or (ii) the date of the death of the horse." HISA, Section 2, Definitions, subsection (4). "Covered Horserace" is defined as "any horserace involving covered horses that has a substantial relation to interstate commerce, including any horserace that is the subject of off-track wagers or advance deposit wagers." HISA, Section 2, Definitions, subsection (5).

### A. Review under the HISA

The HISA provides a three-tiered review process for any civil sanction imposed by the arbitrator. *See* 15 U.S.C. § 3058. First, if the Authority imposes a final civil sanction after arbitration, the aggrieved party has thirty (30) days to appeal the sanction to an administrative law judge ("ALJ"), who must review the sanction *de novo*. 15 U.S.C. § 3058(b)(1). The ALJ is charged with determining (1) whether the person has engaged in acts or omissions in violation of HISA as determined by the Authority; (2) whether such acts or omissions violated the HISA or the ADMC racetrack safety rules; or (3) whether the sanction imposed by the Authority was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 15 U.S.C. § 3058(b)(2)(A).

Second, an aggrieved party "may petition" the FTC Commission for review of the ALJ's "final decision" within thirty (30) days of decision. 15 U.S.C. § 3058(c)(2)(A). Whether to grant an application for review by the Commission is discretionary with the Commission. 15 U.S.C. § 3058(c)(2)(C)(i). If the Commission grants the application for review, "the Commission shall consider whether the application makes a reasonable showing that—(I) a prejudicial error was committed in the conduct of the proceedings; or (II) the decision involved—(aa) an erroneous application of the anti-doping and medication control or racetrack safety rules approved by the Commission; or (bb) an exercise of discretion or a decision of law or policy that warrants review by the Commission." 15 U.S.C. § 3058(c)(2)(C)(ii). The Commission conducts a *de novo* review of the ALJ's factual findings and conclusions of law. 15 U.S.C. § 3058(c)(3)(B).[2]

Third, although not expressly stated in the Act, an aggrieved party may challenge an unfavorable final decision by the ALJ or the Commission to the district court. *See* 28 U.S.C. § 1331;

---

[2] "Review by the [ALJ] or the Commission shall not operate as a stay of a final civil sanction of the Authority unless the [ALJ] or Commission orders such a stay." 15 U.S.C. § 3058(d).

5 U.S.C. § 706; *see e.g., Louisiana v. Horseracing Integrity & Safety Auth. Inc. et al.,* 617 F. Supp. 3d 478 (W.D. La. 2022) (enjoining HISA Rules enforcement for deficient notice-and-comment procedures).[3]

### B.    Plaintiff's Seventh Amendment challenge

Serpe contends that Defendants' ability to impose a civil monetary penalty against him in the absence of a jury violates his Seventh Amendment rights. [ECF No. 10-1]. In support of this argument, Serpe relies on *SEC v. Jarkesy*, 603 U.S. 109 (2024), which held the SEC's imposition of a civil monetary penalty against Jarkesy violated his Seventh Amendment right to a jury trial. [*See* ECF No. 10-1 at 18–24]. Serpe likens the HISA's enforcement scheme to that of the SEC's in *Jarkesy* as follows: (1) HISA's enforcement scheme is "legal in nature;" (2) HISA's monetary fines and penalties are "legal remedies;" (3) HISA's fines and penalties are "designed to punish and deter" rather than to "maintain the status quo;"—making them legal not equitable actions; and (4) HISA's anti-doping regulations "bear a close relationship with common-law fraud," because HISA's enforcement scheme aims to ensure "full disclosure," "fairness," and "transparency" in the horserace betting market. [*Id.*]. Because HISA's enforcement scheme empowers the HIWU arbitrator, the FTC-ALJ, and the FTC Commission to impose monetary sanctions against Serpe without trial by jury, Serpe argues that his Seventh Amendment rights are violated.

The Authority responds that there is no violation here because HISA's enforcement scheme falls "plainly under the 'public rights' exception," to the Seventh Amendment. [ECF No. 26 at 24 (citing *Jarkesy,* 603 U.S. at 127–28, recognizing that "public rights" can be determined by "an agency without a jury, consistent with the Seventh Amendment")]. The Authority's "public rights" argument can be summarized as follows: For the first one-hundred years of American horseracing, horseracing was "unregulated." [ECF No. 26 at 24 (citing Robert L. Heleringer, EQUINE REGULATORY LAW, 43–

---

[3]    No party has argued that HISA in any way deprives or strips the district court of jurisdiction to review the sanctions, acts, or omissions of the Authority, the FTC ALJ, or the Commission.

6

44 (2012))]. By the late-nineteenth century, a private organization known as the Jockey's Club "wrote the rules of racing" and "enforced… and interpreted them as a court of last appeal." [*Id.*]. Attempts at private enforcement, however, "proved lacking," so the States created their own horseracing commissions to "enforc[e] horseracing regulations (subject to monetary penalties) through administrative processes that provided no right to a jury trial." [*Id.* at 24–25 (citations omitted)]. According to the Authority, because the regulation of horseracing does not bear a close relationship to common-law fraud but rather falls within the "public rights" arena traditionally regulated by the Executive and Legislative branches, Serpe cannot show a likelihood of success on the merits sufficient to support a preliminary injunction. [*Id*].

The FTC takes a slightly different tack in its "public rights exception" argument, relying in part on *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Comm'n,* 430 U.S. 442, 444 (1977), which held, "consistent with the Seventh Amendment, Congress may create a new cause of action in Government for civil penalties enforceable in an administrative agency where there is no jury trial." [*See* ECF No. 27 at 2 n.1]. The FTC thus contends that the HISA is a "self-consciously novel" scheme for the horseracing industry by which Congress created "new statutory 'public rights'" that may be adjudicated by an administrative agency without violating the Seventh Amendment. [*Id.* at 2].

Regardless of the merits of Serpe's constitutional challenge, Serpe's request today is that the Court enjoin upcoming arbitration proceedings to be conducted under the HISA Rules in the absence of a jury. For the Court to grant that request, Serpe must show irreparable harm.

### III.   LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion" on four distinct "prerequisites." *GeorgiaCarry.org, Inc. v. United States Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). To obtain a preliminary injunction, the

7

moving party must establish four prerequisites: (1) a substantial likelihood of success on the merits; (2) a showing that the movant will suffer irreparable injury if an injunction does not issue; (3) proof that the threatened injury to the movant outweighs any harm that might result to the non-moving party; and (4) a showing that the public interest will not be disserved by the granting of a preliminary injunction. *See id.* (citing *Burk v. Augusta-Richmond Cnty,* 365 F.3d 1247, 1262–63 (11th Cir. 2004)). The "[f]ailure to show any of the four factors is fatal" to a motion for a preliminary injunction. *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citations omitted).

At all times, the movant bears the burden of persuasion as to each of these requirements. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir. 1990) (citations omitted). Notably, a movant's failure to establish any one of the essential elements will warrant denial of the request for preliminary injunctive relief and obviate the need to discuss the remaining elements. *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) and *Cuban Am. Bar Ass'n, Inc. v. Christopher,* 43 F.3d 1412, 1424 (11th Cir. 1995)).

"[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Great Am. Ins. Co. v. Fountain Eng'g, Inc.*, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *3 (S.D. Fla. Oct. 22, 2015) (quoting *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 445 F. Supp. 875, 877 (S.D. Fla. 1978), *aff'd,* 626 F.2d 1171 (5th Cir. 1980) (internal quotation marks omitted)); *see, e.g., Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000) (en banc) ("proof of irreparable injury is an indispensable prerequisite to a preliminary injunction"). Moreover, "the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176–77 (internal quotation marks and citation omitted). "Past harm . . . cannot

serve as a basis for granting a preliminary injunction." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). An applicant's failure to show "a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel,* 234 F.3d at 1176.

## IV.     DISCUSSION

### A. <u>HIWU's declaration does not moot Plaintiff's Seventh Amendment claim</u>.

After the April 10, 2025, hearing, Defendants supplemented the record with an affidavit in which HIWU attests that it will not seek monetary penalties against Serpe in arbitration. [*See* Declaration of Ben Mosier, ECF No. 45 at 10 ¶ 5]. Relying on that affidavit, the Authority contends HIWU's decision not to seek monetary penalties against Serpe "should moot" his Seventh Amendment claim. [ECF No. 45 at 6]. Serpe responds that (1) HIWU failed to disclose the authority by which it may unilaterally forgo a civil penalty, and (2) Defendants have not shown that the arbitrator would adhere to HIWU's decision not to seek a monetary fine against him. [ECF No. 48 at 5 (citing *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1267 (11th Cir. 2010) and *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents, Univ. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011) (analyzing mootness of government's challenged conduct))]. Consequently, Serpe maintains that the fact that the arbitrator may still impose a monetary penalty against him (notwithstanding the HIWU's attestation) keeps his Seventh Amendment challenge alive. [ECF No. 48 at 5]. After due consideration, the Court agrees with Serpe that HIWU's decision not to seek civil penalties against him in arbitration does not moot his Seventh Amendment claim.

"Generally, the 'party asserting mootness' bears the 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" *Nat'l Ass'n of Boards of Pharmacy,* 633 F.3d at 1310 (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)). "[G]overnment actor[s] … [enjoy] a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano v. Supervisor of Elections, Palm Beach Cnty, Fla.,* 382 F.3d 1276, 1283 (11th

9

Cir. 2004) (emphasis in original); *see also Harrell,* 608 F.3d at 1266 ("[W]e have applied a 'rebuttable presumption' in favor of governmental actors[.]"); *Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173, 1183 (11th Cir. 2007) ("[G]overnment actors receive the benefit of a rebuttable presumption that the offending behavior will not recur.")). Hence, "the Supreme Court has held almost uniformly that voluntary cessation [by a government defendant] moots the claim." *Beta Upsilon Chi Upsilon Chapter v. Machen,* 586 F.3d 908, 917 (11th Cir.2009) (collecting cases). The Eleventh Circuit "ha[s] consistently held that a challenge to [government conduct] that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the [government conduct] will [resume] if the suit is terminated." *Troiano,* 382 F.3d at 1285.

Three factors are relevant in conducting this mootness inquiry. First, the court considers whether the termination of the offending conduct was "unambiguous." *Compare Harrell,* 608 F.3d at 1266–67 ("[I]f a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior was unambiguous.") *with Troiano,* 382 F.3d at 1285–86 (noting that government behavior provided "ample evidence" of changed conduct). Second, the court looks to whether the change in government policy or conduct appears to be the result of substantial deliberation or is simply an attempt to manipulate jurisdiction. *Compare Christian Coal. of Ala. v. Cole,* 355 F.3d 1288, 1292–93 (11th Cir. 2004) (holding that a challenge to the application of state judicial canons was rendered moot where voluntary cessation was based on consideration of new Supreme Court precedent and "not made so as to merely avoid a ruling by the federal court") *with Harrell,* 608 F.3d at 1267 (holding that voluntary cessation did not render a claim moot where the government "acted in secrecy, meeting behind closed doors and, notably, failing to disclose any basis for its decision," so that the "the circumstances here raise a substantial possibility that the defendant has changed course simply to deprive the court of jurisdiction" (internal quotation and citation omitted)). Third, the court asks whether the government has "consistently applied" a

10

new policy or adhered to a new course of conduct. *Jews for Jesus, v. Hillsborough Cnty. Aviation Auth.,* 162 F.3d 627, 629 (11th Cir. 1998) (considering the fact that the defendant had "consistently applied" a new policy "for three years" after voluntary cessation)).

Consideration of all three factors here leads to the conclusion that Defendants have not established mootness. First, while HIWU's decision not to seek civil penalties against Serpe appears clear, Defendants cite no authority or process by which HIWU came to the decision. *See Harrell,* 608 F.3d at 1266–67. At the very least, HIWU has not made it clear how they can stand down *ab initio* for Serpe and (as a private party) take certain sanctions "off the table," while still complying with their statutory and regulatory mandate. That lack of clarity somewhat clouds the first factor. Second, HIWU's decision does not appear to be the result of substantial deliberation; rather, it appears to be an attempt to manipulate jurisdiction. *Id.* [*See* ECF No. 45 at 2 (discussing how HIWU's decision not to seek a civil penalty tracked the path suggested by the Court at the April 10, 2025, hearing)]. Given the fact that HIWU's declaration was submitted only after this Court pressed the parties at the April 10 hearing on what action could potentially moot the claim, the circumstances surrounding the recent attestation certainly "raise a substantial possibility," that Defendants "changed course simply to deprive the court of jurisdiction." *Harrell,* 608 F.3d at 1267. In other words, both the timing of HIWU's decision and its substance (or lack of it) weigh against a finding of mootness. *Compare Troiano,* 382 F.3d at 1285 (a defendant's cessation before receiving notice of a legal challenge weighs in favor of mootness) *with Burns v. Pa Dep't of Corr,* 544 F.3d 279, 284 (3d Cir. 2008) (cessation that occurs "late in the game" will make a court "more skeptical of voluntary changes that have been made… after litigation has commenced") (citation omitted). Courts look for a well-reasoned justification for the cessation as evidence that the ceasing party intends to hold steady in its revised course. *See Troiano,* 382 F.3d at 1285 (finding challenge moot where governmental defendant ceased challenged behavior on a "well reasoned" basis); *Christian Coal. of Ala. v. Cole,* 355 F.3d 1288, 1292 (11th Cir. 2004) (holding

11

that challenge to application of state judicial canons to certain conduct was moot where governmental defendant represented to court that it would not file charges against the plaintiffs based on recent Supreme Court precedent). Defendants in this case have supplied no clear reason or process justifying their change of course, let alone a well-reasoned one.

Third, unlike the Authority's lifting of provisional suspensions (which applied to all those previously suspended across the board), there is no evidence that HIWU's decision has been "consistently applied" to anyone, even to Serpe. Instead, the recent decision not to seek monetary penalties here appears to be a "one-off" specifically designed to moot Serpe's Seventh Amendment challenge. Accordingly, the Court concludes that Defendants did not meet their burden to show that HIWU's decision not to seek monetary penalties against Serpe in arbitration moots his Seventh Amendment claim.

Therefore, the Court now turns to the question of irreparable harm. Because each Defendant stands in a different posture as to Serpe's requested relief, the Court analyzes them separately, beginning with the Authority.

### B. **Plaintiff fails to show irreparable harm as to the Authority.**

In general, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Arthur J. Gallagher Serv. Co. v. Egan*, 514 F. App'x 839, 843 (11th Cir. 2013) (per curiam) (quoting *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (quoting *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)) (internal quotation marks omitted). Moreover, "[f]or an injury to be irreparable, it must be 'neither remote nor speculative, but actual and imminent.'" *TransUnion Risk & Alternative Data Sols., Inc. v. Challa*, 676 F. App'x 822, 825 (11th Cir. 2017) (quoting *City of Jacksonville*, 896 F.2d at 1285).

Serpe points to several types of harm that he says are "irreparable" such that a preliminary injunction is warranted. [ECF No. 10-1 at 25–26]. First, Serpe points to his provisional suspension

from horseracing. [*See id.*]. However, since Serpe filed the instant Motion, "the Authority has lifted all provisional suspensions (including Plaintiff's) outside a narrow category of circumstances inapplicable here." [ECF No. 26 at 13]. Nevertheless, Serpe argues the Authority's lifting of provisional suspensions was without lawful effect because the Authority lacks authority to lift suspensions and its pronouncement doing so violated its own rules governing rulemaking. [ECF No. 29 at 14–18 (citing HISA Rule 3247(a))]. As a result, Serpe says his horseracing status remains uncertain and his harm is, therefore, irreparable. [*Id.*]. The Court disagrees with Serpe on this point. Serpe continues to be allowed to train horses to compete in races. Consequently, his reliance on the now-lifted provisional suspension does not show "irreparable harm."

Apart from the now-lifted provisional suspension, Serpe says his lost business and consumer goodwill as well as his subjection to an alleged "unconstitutional proceeding" constitute irreparable harm. [ECF No. 29 at 18–24]. Although lost business and customer goodwill may constitute irreparable harm in certain circumstances, *see E.A. Renfroe & Co. v. Moran*, 249 F. App'x 88, 93 (11th Cir. 2007) (per curiam), subjection to an unconstitutional process in-and-of-itself does not, *see Offolter v. Horseracing Integrity & Safety Auth.*, No. CIV-24-749-D, 2024 WL 3732056, at *3 (W.D. Okla. Aug. 8, 2024) (rejecting plaintiffs' argument that "being subjected to an unconstitutional exercise of the Authority's enforcement power [] constitutes irreparable harm") (citing *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748 (10th Cir. 2024)). Indeed, in the Eleventh Circuit, "[t]he only area of constitutional jurisprudence where [the Court of Appeals] ha[s] said that an on-going violation constitutes irreparable injury is in the area of first amendment and right of privacy jurisprudence." *City of Jacksonville*, 896 F.2d at 1285.[4]

---

[4] Serpe relies on *dicta* in *Axon Enterprise, Inc. v. FTC,* 598 U.S. 175 (2023), where the Supreme Court found a "here-and-now" injury sufficient to confer *jurisdiction* on the district court to hear a constitutional challenge to an alleged unconstitutional statutory review scheme. However, as the Tenth Circuit Court of Appeals recognized in the context of a request for a preliminary injunction:

Serpe's claimed harms are not irreparable because he may pursue a remedy against the Authority for money damages in the event of a constitutional violation that causes harm. *See id.* ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (citations omitted). For purposes of a preliminary injunction, an injury is "irreparable" only if it cannot be undone through monetary remedies. "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90 (1974) (emphasis added) (citation and internal quotation marks

---

*Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief. The Court in *Axon* only addressed whether the petitioners, who were respondents in administrative enforcement actions before the SEC and FTC, could initially bring collateral challenges in federal district court to the constitutionality of those agencies' structure. *Axon*, 598 U.S. at 180, 143 S.Ct. 890. To answer that strictly jurisdictional question, the Court applied the jurisdictional factors from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) to determine whether the constitutional claims brought by the petitioners were of the type that Congress intended to allocate exclusively to the agency, or whether those claims could be initiated in federal district court: . . . The Court concluded that the answer to all three questions was "yes," and therefore the collateral constitutional claims could be heard by federal district courts. *Id.* at 195–96, 143 S.Ct. 890. The Court did not, however, address issues of relief.

*Leachco,* 103 F.4th at 758.

Here, Defendants do not challenge this Court's jurisdiction to hear Serpe's constitutional challenge to HISA. Instead, Defendants argue Serpe failed to meet his burden to show irreparable harm at this stage of the litigation. For the reasons given above, the Court agrees with Defendants that Serpe has not met his burden with respect to the Authority. Accordingly, the Court must deny the Motion as to the Authority. *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 909 F.2d 480, 486 (11th Cir. 1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of prevailing because plaintiff failed to meet burden of proving irreparable injury); *City of Jacksonville,* 896 F.2d at 1286 (reversing preliminary injunction based solely on plaintiff's failure to show irreparable injury); *Flowers Indus. v. FTC,* 849 F.2d 551, 553 (11th Cir. 1988) (same).

14

omitted). At the April 10 hearing, counsel for the Authority conceded the Authority is not immune from suit. [*See* Hearing Tr. at 30:24–25; 31:17–19]. Consequently, monetary damages flowing from Serpe's alleged injuries are recoverable from the Authority.

Moreover, the United States Supreme Court recognizes three situations where private entities can be liable under 42 U.S.C. § 1983 for constitutional deprivations: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test"). *Charles v. Johnson,* 18 F.4th 686, 694 (11th Cir. 2021) (citing *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988)) (cleaned up) and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

Arguably, the public function test and/or the nexus/joint action test are mechanisms by which Serpe could recover monetary damages from the Authority for any Seventh Amendment violation. Indeed, the Authority's own "public rights" arguments describe the traditional state actions assumed by the Authority, as well as the joint nature of the efforts by the FTC and the Authority in enforcing HISA. [*See* ECF No. 26 at 10–13, 24–26]. Because Serpe has a legal remedy against the Authority for his alleged Seventh Amendment violation, he has not shown irreparable harm as against the Authority. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1982), quoting *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152 (1970), "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough

that he is a willful participant in joint activity with the State or its agents.") (internal quotation marks omitted)).

To wrap up, absent a showing of irreparable harm as to the Authority, the Court finds that the other three factors need not be considered. Accordingly, Plaintiff's Motion as to the Authority is DENIED WITH PREJUDICE.

### B. Plaintiff's request for a preliminary injunction is not ripe as to the FTC.

The "irreparable harm" analysis changes a bit with respect to the FTC. The FTC confirmed in its supplemental papers that Congress has not waived its sovereign immunity for constitutional injuries suffered by persons subject to the FTC's enforcement of HISA. [ECF No. 46 at 3–7]. That means Serpe cannot ever recover monetary damages from the FTC for any alleged deprivation of his Seventh Amendment rights.

"In the context of preliminary injunctions, numerous courts have held that the inability to recover monetary damages because of sovereign immunity renders the harm suffered irreparable." *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.,* 715 F.3d 1268, 1289 (11th Cir. 2013) (citing *Chamber of Commerce v. Edmondson,* 594 F.3d 742, 770–71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."); *Iowa Utils. Bd. v. FCC,* 109 F.3d 418, 426 (8th Cir. 1996) ("The threat of unrecoverable economic loss … qualif[ies] as irreparable harm."); *ABC Charters, Inc. v. Bronson,* 591 F. Supp. 2d 1272, 1310 (S.D. Fla. 2008) ("In the case at bar, Plaintiffs face serious economic harm as a result of the Travel Act Amendments and cannot sue the state of Florida for damages. Therefore, this harm is irreparable as a matter of law.")).

Because Serpe can never recover money damages from the FTC for any alleged Seventh Amendment violation, ultimately he may be able to show irreparable harm as to the FTC. Nevertheless, at this stage Serpe's claim against the FTC is not yet ripe. Under HISA's three-tiered

16

review scheme explained earlier, the FTC will not act at all until HISA/HIWU completes an arbitration and decides whether and what sanctions are to be imposed against Serpe. *See* 15 U.S.C. § 3058(b)(1). That arbitration has not happened yet, and it cannot be known at this point whether any sanctions will be imposed (or whether any sanctions imposed run afoul of the Seventh Amendment). Serpe's claim against the FTC, therefore, "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted)). Reviewing Serpe's claim against the FTC now would, therefore, require the Court to "engag[e] in speculation" about whether the charge will ever end up in an FTC proceeding, what remedy will be sought there if it does, and the extent to which any disputed issues of fact will exist. *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). That "inquiry is better postponed until the issues are presented in more concrete circumstances of a challenge to the Act as applied." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995). At this stage of the proceedings, Serpe's Seventh Amendment claim is not an appropriate basis for a preliminary injunction against the FTC. *See Flowers,* 849 F.2d at 553–54 (vacating issuance of preliminary injunction in part because "the parties ha[d] yet to complete the administrative process," making "th[e] case not ripe for judicial review"); *see also Doe #1–#14 v. Austin*, 572 F. Supp. 3d 1224, 1241 n.18 (N.D. Fla. 2021) ("[I]f the plaintiffs could not establish a likelihood that their claims are ripe, they could not show a likelihood of success on the merits.") (citation omitted).

At bottom, the Court cannot know *today* what specific facts will be before the FTC, or whether a civil monetary fine or any other sanctions will be imposed against Serpe at all. Serpe's claim against the FTC is, therefore, premature. To obtain a preliminary injunction, the injury complained of must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989) (citations and internal quotation marks omitted). Serpe's Seventh

17

Amendment claim against the FTC is simply too speculative right now for the Court to grant the extraordinary relief of a preliminary injunction against the FTC at this time. Accordingly, Plaintiff's Motion as to the FTC is DENIED WITHOUT PREJUDICE.

## V.    CONCLUSION

In view of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunction [**ECF No. 10**] is **DENIED WITH PREJUDICE as to the Authority.**

2. Plaintiff's Motion for Preliminary Injunction [**ECF No. 10**] is **DENIED WITHOUT PREJUDICE as to the FTC**.

3. Plaintiff may renew the application after Arbitration, if appropriate.

4. Plaintiff may file a Motion for Summary Judgment on his Seventh Amendment challenge at any time before, during, or after the Arbitration, <u>with leave to supplement the record after the arbitration proceedings have concluded</u>.

**DONE AND ORDERED** in the Southern District of Florida on May 28, 2025.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:    counsel of record