## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

| | | |
|---|---|---|
| PHILIP SERPE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 0:24-CV-61939-DSL |
| v. | : | |
| | : | HON. JUDGE LEIBOWITZ |
| FEDERAL TRADE COMMISSION, et al., | : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| Defendants. | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF
## <u>PLAINTIFF'S EXPEDITED MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................iii

INTRODUCTION .......................................................................................................................... 1

FACTS........................................................................................................................................... 2

    I.    HISA ................................................................................................................................ 2

        A.    Registration of Persons Covered by HISA ................................................................ 2

        B.    Anti-Doping and Medication Control Program ........................................................ 3

    II.    Case History........................................................................................................................ 4

        A.    HIWU Investigates and Charges Serpe with ADMC Program Violation ................. 4

        B.    Serpe's Federal Lawsuit........................................................................................... 5

        C.    HIWU Arbitration ................................................................................................... 6

        D.    Serpe's FTC Appeal ................................................................................................ 8

        E.    Renewed Motion for Preliminary Injunction........................................................... 9

    III.    Serpe's Injury ..................................................................................................................... 9

LEGAL STANDARD.................................................................................................................... 10

ARGUMENT................................................................................................................................. 10

    I.    The Court Has Jurisdiction to Hear This Structural Constitutional Challenge to Serpe's Adjudication................................................................................................................ 10

    II.    The Authority's and HIWU's Arbitration Violated the Private Non-Delegation Doctrine.........................................................................................................................11

        A.    Private Entities Like the Authority May Assist Government in Advisory Roles Only.....................................................................................................................11

        B.    The Authority's and HIWU's Unilateral Enforcement Actions Against Serpe Are Unconstitutional ................................................................................................ 12

            1.    HIWU Collects Blood and Urine Samples from Fast Kimie....................... 14

            2.    HIWU Charges Serpe with a Banned Substance Violation and Imposes Provisional Suspension .................................................................................. 14

            3.    HIWU Arbitrates the Banned Substances Claim, and Its Arbitrator Imposes Sanctions........................................................................................ 15

    III.    Serpe's Adjudication Violates the Seventh Amendment.................................................... 16

        A.    The Banned Substance Claim Is a Common Law Claim Covered by the Seventh Amendment........................................................................................................... 17

            1.    The Banned Substance Claim Is Legal in Nature ....................................... 17

                 a.    Fines Are Quintessential Common Law Remedies ........................... 17

b.     The Banned Substance Claim Is Common Law in Nature ................. 18

    i.    Action in Debt ................................................................. 18

    ii.   Fraud................................................................................. 19

    iii.  Negligence....................................................................... 20

    iv.  Breach of Contract.......................................................... 21

    v.   Tortious Interference ...................................................... 22

    vi.  Strict Liability................................................................. 22

2.    The Public Rights Exception Does Not Apply ........................................... 23

    a.  The Banned Substance Claim Is a Common Law Claim Not Subject to the Public Rights Exception................................................................... 23

    b.  The History and Background Legal Principles Associated with the Banned Substance Claim Do Not Support Application of the Public Rights Exception.............................................................................. 24

    c.  Because the Banned Substance Claim Is Not Unknown to the Common Law, *Atlas Roofing* Does Not Apply......................................................... 25

B.   HISA Adjudications Are Subject to the Seventh Amendment ................................ 28

1.    The Seventh Amendment Applies to the Commission's *De Novo* Review of the ALJ Decision ......................................................................... 28

2.    The HIWU Arbitration Was State Action ..................................................... 29

C.   Serpe Did Not Waive His Seventh Amendment Jury Trial Right by Registering with the Authority ...................................................................................... 31

1.    Waiver of Serpe's Seventh Amendment Jury Trial Right Was an Unconstitutional Condition on His Right to Pursue His Livelihood ........... 31

2.    Serpe's Registration Was Not a Knowing and Voluntary Waiver of His Seventh Amendment Right ........................................................................ 33

IV.  Serpe's Adjudication Should Be Permanently Enjoined.................................................. 35

CONCLUSION ................................................................................................................. 38

CERTIFICATE OF SERVICE............................................................................................ 40

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Charters, Inc. v. Bronson*,
  591 F. Supp. 2d 1272 (S.D. Fla. 2008) ...................................................................36

*Addit, LLC v. Hengesbach*,
  341 So.3d 362 (Fla. Dist. Ct. App. 2022) ...............................................................35

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
  700 F. Supp. 3d 1136 (N.D. Ga. 2023) ...................................................................38

*Alpine Sec. Corp. v. FINRA*,
  121 F.4th 1314 (D.C. Cir. 2024) ........................................................................15–16

*AT&T, Inc. v. FCC*,
  149 F.4th 491 (5th Cir. 2025) ...........................................................................21, 27

*Atlas Roofing Co., Inc. v. OSHRC*,
  430 U.S. 442 (1977)...........................................................................................25–27

*Axalta Coating Sys. LLC v. FAA*,
  144 F.4th 467 (3d Cir. 2025) ...................................................................................27

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023)........................................................................................ *passim*

*Bakrac, Inc. v. Villager Franchise Sys., Inc.*,
  164 F. App'x 820 (11th Cir. 2006) ..........................................................................33

*BBX Cap. v. FDIC*,
  956 F.3d 1304 (11th Cir. 2020) ...............................................................................10

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972)..................................................................................................31

*Berman v. Riverside Casino Corp.*,
  323 F.2d 977 (9th Cir. 1963) ...................................................................................20

*BFP v. Resol. Tr. Corp.*,
  511 U.S. 531 (1994)..................................................................................................20

*Boise Artesian Hot & Cold Water Co. v. Boise City*,
  213 U.S. 276 (1909)..................................................................................................37

*Bourgeois v. Peters*,
  387 F.3d 1303 (11th Cir. 2004) ...............................................................................31

*Caley v. Gulfstream Aerospace Corp.*,
428 F.3d 1359 (11th Cir. 2005) ...................................................................34–35

*Carter v. Carter Coal Co.*,
298 U.S. 238 (1936).................................................................................11, 37

*Catts v. Phalen*,
43 U.S. 376 (1844).........................................................................................20

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999).......................................................................................18

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*,
637 F.3d 408 (D.C. Cir. 2011) ......................................................................11

*Curtis v. Loether*,
415 U.S. 189 (1974)................................................................................18, 28

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. Unit B 1981)..............................................................37

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)................................................................................35–36

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025)................................................................................ *passim*

*Floss v. Ryan's Fam. Steak Houses, Inc.*,
211 F.3d 306 (6th Cir. 2000) .........................................................................35

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
344 F.3d 1263 (11th Cir. 2003) .....................................................................30

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010)........................................................................................14

*Frost v. R.R. Comm'n*,
271 U.S. 583 (1926)........................................................................................32

*Garret v. Taylor* (1621),
79 Eng. Rep. 485; Cro. Jac. 567 ....................................................................22

*Gonzalez v. Governor of Ga.*,
978 F.3d 1266 (11th Cir. 2020) .....................................................................37

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)..........................................................................................26

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ............................................................................................24

*Harris v. Bowden* (1563),
  78 Eng. Rep. 348, 348; Cro. Eliz. 90, 90 .....................................................20

*HIWU v. Puype*,
  JAMS CASE No. 1501000973 (Dec. 12, 2024) ...........................................21

*Home Bldg. & Loan Ass'n v. Blaisdell*,
  290 U.S. 398 (1934) ............................................................................................21

*Husky Int'l Elecs., Inc. v. Ritz*,
  578 U.S. 355 (2016) ............................................................................................20

*Johnston v. Tampa Sports Auth.*,
  530 F.3d 1320 (11th Cir. 2008) .......................................................................33

*KH Outdoor, LLC v. City of Trussville*,
  458 F.3d 1261 (11th Cir. 2006) .......................................................................38

*Koveleskie v. SBC Capital Markets, Inc.*,
  167 F.3d 361 (7th Cir. 1999) ......................................................................32–33

*LaMarca v. Turner*,
  995 F.2d 1526 (11th Cir. 1993) ..................................................................32–33

*Lebron v. Secretary, Florida Department of Children and Families*,
  710 F.3d 1202 (11th Cir. 2013) ..................................................................31–32

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982) .......................................................................................29–30

*Manhattan Cmty. Access Corp. v. Halleck*,
  587 U.S. 802 (2019) ............................................................................................30

*State ex rel. Morris v. W. Va. Racing Comm'n*,
  55 S.E.2d 263 (W. Va. 1949) ...........................................................................19

*Morrison v. Olson*,
  487 U.S. 654 (1988) ............................................................................................15

*Nat'l Equip. Rental, Ltd. v. Hendrix*,
  565 F.2d 255 (2d Cir. 1977) .............................................................................34

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
  107 F.4th 415 (5th Cir. 2024) ..........................................................................13

*NFLPA v. NFL*,
  598 F. Supp. 2d 971 (D. Minn. 2008)................................................................36

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) ........................................................................38

*Oklahoma v. United States*,
  163 F.4th 294 (6th Cir. 2025) ...........................................................................13

*Oklahoma v. United States*,
  62 F.4th 221 (6th Cir. 2023) .............................................................................13

*Omega v. Deutsche Bank Tr. Co. Americas*,
  920 F.Supp.2d 1298 (S.D. Fla. 2013) ...............................................................33

*Parsons v. Bedford, Breedlove & Robeson*,
  28 U.S. 433 (1830)............................................................................................23

*Pendergast v. Sprint Nextel Corp.*,
  592 F.3d 1119 (11th Cir. 2010) ........................................................................34

*Prentiss v. Nat'l Airlines*,
  112 F. Supp. 306 (D.N.J. 1953)........................................................................22

*Princeton Homes, Inc. v. Virone*,
  612 F.3d 1324 (11th Cir. 2010) ........................................................................35

*Resnick v. KrunchCash, LLC*,
  34 F.4th 1028 (11th Cir. 2022) .........................................................................30

*S. Pac. Co. v. Denton*,
  146 U.S. 202 (1892)..........................................................................................31

*SEC v. Jarkesy*,
  603 U.S. 109 (2024)................................................................................... *passim*

*Seila L. LLC v. CFPB*,
  591 U.S. 197 (2020).................................................................................13, 15–16

*Sheetz v. Cnty. of El Dorado*,
  601 U.S. 267 (2024)..........................................................................................31

*Stern v. Marshall*,
  564 U.S. 462 (2011)..........................................................................................37

*Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*,
  148 F.4th 121 (3d Cir. 2025) .....................................................................21, 27

*Sunshine Anthracite Coal Co. v. Adkins*,
310 U.S. 381 (1940)..................................................................................................................12

*Tarleton v. M'Gawley* (1793),
170 Eng. Rep. 153; Peake 270 ...................................................................................................22

*Terral v. Burke Construction Company*,
257 U.S. 529 (1922)............................................................................................................31–33

*Thomas v. Union Carbide Agricultural Products Co.*,
473 U.S. 568 (1985)..................................................................................................................32

*Truax v. Raich*,
239 U.S. 33 (1915)....................................................................................................................32

*Tuckish v. Pompano Motor Co.*,
337 F. Supp. 2d 1313 (S.D. Fla. 2004) ..............................................................................19–20

*Tull v. United States*,
481 U.S. 412 (1987)............................................................................................................18, 28

*United States v. Cordoba-Hincapie*,
825 F. Supp. 485 (E.D.N.Y. 1993) ...........................................................................................22

*United States v. ERR, LLC*,
35 F.4th 405 (5th Cir. 2022) .....................................................................................................37

*United States v. Martin*,
411 F. Supp. 2d 370 (S.D.N.Y. 2006)........................................................................................19

*Waldrop v. S. Co. Servs.*,
24 F.3d 152 (11th Cir. 1994) ...............................................................................................18, 21

*Walmsley v. FTC*,
117 F.4th 1032 (8th Cir. 2024) .................................................................................................13

**Constitutional Provisions**

U.S. Const. art. I, § 1...............................................................................................................11

U.S. Const. art. II, § 1 .............................................................................................................11

U.S. Const. art. III, § 2, cl. 1 ...................................................................................................23

U.S. Const. amend. VII.............................................................................................................16

**Statutes**

5 U.S.C. § 702..........................................................................................................................37

5 U.S.C. § 704................................................................................................................11

15 U.S.C. § 3051–3060......................................................................................................2

15 U.S.C. § 3051(4)............................................................................................................2

15 U.S.C. § 3051(5)......................................................................................................3, 24

15 U.S.C. § 3051(6)............................................................................................................3

15 U.S.C. § 3052(a)......................................................................................................2, 33

15 U.S.C. § 3053(c)(2).......................................................................................................2

15 U.S.C. § 3053(d)..........................................................................................................30

15 U.S.C. § 3054(d)..................................................................................................3, 32–34

15 U.S.C. § 3054(e)......................................................................................................2, 12

15 U.S.C. § 3054(e)(1).......................................................................................................4

15 U.S.C. § 3054(e)(1)(E)......................................................................................11, 14, 30

15 U.S.C. § 3054(e)(1)(E)(ii)...........................................................................................17

15 U.S.C. § 3054(e)(1)(E)(iii).........................................................................................15

15 U.S.C. § 3054(h)..............................................................................................2, 11–12, 14

15 U.S.C. § 3054(i)...........................................................................................................17

15 U.S.C. § 3054(j)......................................................................................................2, 38

15 U.S.C. § 3054(j)(1)......................................................................................................35

15 U.S.C. § 3055(b)(1)......................................................................................................27

15 U.S.C. § 3055(b)(7)..............................................................................................19, 25–26

15 U.S.C. § 3055(c)..........................................................................................................30

15 U.S.C. § 3055(c)(1)(B)..............................................................................................3, 26

15 U.S.C. § 3055(c)(4)(B)................................................................................2, 4, 12–15, 33

15 U.S.C. § 3055(c)(4)(C)................................................................................................14

15 U.S.C. § 3057...............................................................................................................12

15 U.S.C. § 3057(a)(2)(A) ..................................................................................................19

15 U.S.C. § 3057(c) ............................................................................................................35

15 U.S.C. § 3057(d) ...........................................................................................................30

15 U.S.C. § 3057(d)(2) .......................................................................................................17

15 U.S.C. § 3057(d)(2)(B) ..................................................................................................19

15 U.S.C. § 3057(d)(3) .......................................................................................................17

15 U.S.C. § 3057(d)(3)(B) ..................................................................................................19

15 U.S.C. § 3057(e) ............................................................................................................35

15 U.S.C. § 3058 .......................................................................................................... *passim*

15 U.S.C. § 3058(a) .......................................................................................................2, 12

15 U.S.C. § 3058(c)(3) ........................................................................................................28

15 U.S.C. § 3058(d) ............................................................................................................13

28 U.S.C. § 1331 ...........................................................................................................10–11

29 U.S.C. § 651(b)(5) (1976 ed.) ........................................................................................26

29 U.S.C. § 654(a)(2) (1976 ed.) ........................................................................................26

**Rules**

Fed. R. Civ. P. 56(a) ..........................................................................................................10

HISA Rule 3000 Series ......................................................................................................3–4

HISA Rule 3010(e) .............................................................................................................12

HISA Rule 3010(e)(1).........................................................................................................4

HISA Rule 3111(a)(1).........................................................................................................5

HISA Rule 3121(a) .............................................................................................................4

HISA Rule 3132(a) .............................................................................................................14

HISA Rule 3132(c) .............................................................................................................14

HISA Rule 3212 ......................................................................................................... *passim*

HISA Rule 3212(a) ...........................................................................................................3, 19–22

HISA Rule 3223(b) ...............................................................................................................4, 17

HISA Rules 3224 ..........................................................................................................4, 19, 21, 22

HISA Rule 3225 ...........................................................................................................4, 19, 21, 22

HISA Rule 3225(a) ....................................................................................................................21

HISA Rule 3229 ........................................................................................................................36

HISA Rule 3247(a)(1).................................................................................................................15

HISA Rule 3261 ..................................................................................................................4, 16

HISA Rule 4114(b) .......................................................................................................................5

HISA Rule 7000 Series .............................................................................................................35

HISA Rule 7020(a) ......................................................................................................................4

HISA Rule 7030..........................................................................................................................16

HISA Rule 7260............................................................................................................................4

HISA Rule 7410(a) .......................................................................................................................4

HISA Rule 7450............................................................................................................................4

HISA Rule 8000 Series .........................................................................................................3, 34

HISA Rules 8011–8420 ...............................................................................................................3

## Other Authorities

Breen, T. H., *Horses and Gentlemen: The Cultural Significance of Gambling among the Gentry of Virginia*, 34 William & Mary Q. 239 (1977).................................22, 25

Smith, Jordan T., *Cheater's Justice: Judicial Recourse for Victims of Gaming Fraud*, 7 UNLV Gaming L.J. 61 (2017) ...............................................................................20

**INTRODUCTION**

Philip Serpe is a longtime, successful thoroughbred horse trainer with a clean record. But he has spent the last year and a half defending himself in a private and administrative adjudication process against a charge that one of his horses tested positive for a banned substance. This is a serious charge—already Serpe is serving a two-year suspension from his training career on the order of a private arbitrator. A Federal Trade Commission administrative law judge (ALJ) also added a $25,000 fine, and the Commissioners themselves are reviewing the matter. It is the kind of charge and sanctions that should be imposed after a fair trial with a jury before a federal judge.

Instead, thoroughbred trainers, along with everyone else in the thoroughbred industry, are forced by the Horseracing Integrity and Safety Act (HISA) to submit to the Horseracing Integrity and Safety Authority, Inc. (Authority). The Authority sets the rules and—with the help of its anti-doping enforcement agency, the Horseracing Integrity and Welfare Unit (HIWU)—enforces them as it pleases. The only oversight is a review of the rules and HIWU's sanctions by the Commission.

It is in this unfair regulatory structure that Serpe is now trapped. But his enforcement proceedings should never have taken place. They suffer from two fatal constitutional defects. First, the private non-delegation doctrine prohibits Congress from delegating government enforcement power to private entities like the Authority and HIWU. The doctrine ensures that the coercive authority of the government is exercised by a government agency that is meant to function in the public interest rather than a private entity that functions in its own interest. But here, Congress flouted this constitutional limitation and empowered the Authority and HIWU to investigate, charge, and sanction Serpe for violating federal law before the government was ever involved.

Second, the Seventh Amendment guarantees the right to a jury trial for common law claims. And that jury trial must take place in an Article III court, not in an administrative agency. Juries provide a vital check on the government's enforcement power. But here, Serpe was denied that

1

right as he defended himself against the common-law-like claim HIWU brought against him. Worse yet, HIWU and the Authority manipulated the process in an attempt to moot the Seventh Amendment claim Serpe raised here. This is exactly the kind of conduct that the Seventh Amendment jury trial right exists to defend against.

It is time for this unfair and unconstitutional process to end. Because there are no disputes of material fact, Serpe moves for summary judgment on both counts of his complaint: (1) the private non-delegation doctrine and (2) the Seventh Amendment. Serpe requests that the Court enter final judgment for him on both counts, declare the Authority and HIWU's enforcement action a violation of the private non-delegation doctrine, declare the overall adjudication in HIWU and the Commission a violation of the Seventh Amendment, and permanently enjoin the entire process and the enforcement of the sanctions imposed against him.

## FACTS

### I.   HISA

Congress enacted HISA to establish federal regulation of thoroughbred racing. 15 U.S.C. §§ 3051–3060. HISA created the Authority, a "private, independent, self-regulatory, nonprofit corporation" tasked with creating and implementing anti-doping programs for those involved in horseracing. *Id.* § 3052(a). The Authority was granted independent statutory power to enforce these rules, including the power to initiate investigations and enforcement actions, and impose sanctions. *Id.* §§ 3054(e), (h), (j); 3055(c)(4)(B), 3057, 3058(a). The Authority must generally submit its proposed rules to the Commission to review whether the proposed rule "is consistent with" HISA and previously approved Authority rules before they can take effect. *Id.* § 3053(c)(2).

### A.  Registration of Persons Covered by HISA

HISA applies to any "Thoroughbred horse" from "the date of the horse's first timed and reported workout" until its formal retirement—a "covered horse." *Id.* § 3051(4). A covered

2

horserace is "any horserace involving covered horses that has a substantial relation to interstate commerce," including through betting. *Id.* § 3051(5). Any "trainers, owners, breeders, jockeys, racetracks, veterinarians" or any other person "engaged in the care, training, or racing of covered horses" is considered a "covered person." *Id.* § 3051(6). HISA compels all covered persons who wish to participate in thoroughbred racing to "register with the Authority" and agree "to be subject to and comply with [its] rules, standards, and procedures." *Id.* § 3054(d).

Registration occurs through a portal on the Authority's website. Joint Statement of Uncontested Material Fact (JSUMF) ¶ 3. Registration as a covered person includes the "Covered Persons Agreement." JSUMF ¶ 4. The agreement notes HISA's requirement of agreement to the Authority's rules and references them as existing in the "HISA Rule 8000 Series" and links to the same. JSUMF ¶ 5. The Rule 8000 Series contains some of the Authority's enforcement and adjudication rules. HISA Rules 8011–8420. The agreement further states that the covered person "agree[s] to be subject to and comply with the rules, standards, and procedures developed by HISA and approved by the Federal Trade Commission." JSUMF ¶ 6. A prospective registrant may click "I Don't Accept," but a pop-up informs the prospective registrant that he may not participate in covered horseraces until he has registered. JSUMF ¶ 7.

### B. Anti-Doping and Medication Control Program

The Authority's rules on "permitted and prohibited medications, substances, and methods" form the Anti-Doping and Medication Control (ADMC) Program in the HISA Rule 3000 Series. 15 U.S.C. § 3055(c)(1)(B). HISA Rule 3212 makes it the "personal and non-delegable duty of the Responsible Person [a horse's trainer] to ensure that no Banned Substance is present in the body of his or her Covered Horse(s)." Responsible Persons are thus "strictly liable for any Banned Substance" found in a covered horse. HISA Rule 3212(a). A Responsible Person found in violation of Rule 3212 is subject to a two-year period of ineligibility (i.e., a suspension from participating

3

in any covered horseracing activities) and a "[f]ine of up to $25,000 or 25% of the total purse (whichever is greater)." HISA Rule 3223(b). But the Responsible Person can eliminate the sanctions against himself (not the Covered Horse) if he establishes "exceptional circumstances" demonstrating no fault, or he may reduce his suspension if he establishes he was not at significant fault. HISA Rules 3224–25.

To enforce the ADMC Program, HISA required the Authority to engage an "independent" "anti-doping and medication control enforcement agency." 15 U.S.C. § 3054(e)(1). For this, the Authority selected HIWU, another private entity. HISA Rule 3010(e)(1). HIWU conducts "independent investigations, charging and adjudication of potential medication control rule violations, and the enforcement of any civil sanctions." 15 U.S.C. § 3055(c)(4)(B).

When HIWU alleges a violation, it proceeds through arbitration, which "is intended to be the exclusive remedy in all cases arising under the Rule 3000 Series." HISA Rule 7410(a); *see also* HISA Rule 3261. These arbitrations are handled by a purportedly "independent arbitral body." HISA Rule 7020(a). But the arbitrators are selected through "mutual agreement of the Authority and [HIWU]," and the Arbitral Body assigns the arbitrator to a case; there is no role for the accused. *Id.* HISA's Rules are incorporated into the (compulsory) agreement to arbitrate purportedly formed by the registration. HISA Rule 7450. HIWU has the burden to establish a violation to the "comfortable satisfaction" of the arbitrator. HISA Rule 3121(a). The accused is allowed only limited document discovery at the arbitrator's sole discretion, while subpoenas for depositions and formal written discovery are precluded. HISA Rule 7260. A final decision of the arbitrator is subject to review by the Commission in accordance with 15 U.S.C. § 3058.

## II. Case History

### A. HIWU Investigates and Charges Serpe with ADMC Program Violation

Serpe is a "Covered Person" and a "Responsible Person" under HISA. JSUMF ¶ 2. On

August 10, 2024, Fast Kimmie, a horse Serpe trained, finished first in a race run at Saratoga Racetrack with a total purse of $50,000. JSUMF ¶ 10. After the race, "Sample Collection Personnel" from HIWU collected blood and urine samples from Fast Kimmie. JSUMF ¶ 11. HIWU submitted the samples to the Kenneth L. Maddy Equine Analytical Chemistry Laboratory in Davis, California (UC Davis Lab), which analyzed the "A Samples." JSUMF ¶ 12. Nearly a month later, HIWU informed Serpe that the UC Davis Lab detected Clenbuterol in Fast Kimmie's urine. JSUMF ¶¶ 13, 17. The "estimated" concentration of Clenbuterol in the urine sample was 27 pg/mL. JSUMF ¶ 13. The term "pg" refers to a picogram, which is equal to one-trillionth of a gram. Clenbuterol was not detected in Fast Kimmie's post-race blood sample. JSUMF ¶ 14. Clenbuterol is a "Banned Substance" under HISA Rule 3111(a)(1) and therefore "prohibited at all times" *except* when prescribed by a veterinarian. HISA Rule 4114(b).

On September 4, 2024, HIWU sent Serpe an Equine Anti-Doping Notice letter. JSUMF ¶ 17. In response, Serpe exercised the option to have the B urine Sample tested. JSUMF ¶ 18. The Ohio Department of Agriculture Analytical Toxicology Laboratory found the presence of Clenbuterol in that urine sample. JSUMF ¶ 20. Serpe also requested segmented hair analysis and DNA testing. JSUMF ¶ 19.

On October 10, 2024, HIWU issued Serpe a charge letter. JSUMF ¶ 21. This letter charged Serpe with a first-time violation of HISA Rule 3212, the presence of a banned substance (Banned Substance Claim), advised Serpe that it would seek penalties including a fine, and—effective immediately—provisionally suspended Serpe from racing. JSUMF ¶¶ 21–24.

**B.  Serpe's Federal Lawsuit**

On October 17, 2024, Serpe commenced this action challenging the constitutionality of HIWU's enforcement action and his provisional suspension. ECF No. 1. Serpe alleges that HIWU's actions violate (1) the private non-delegation doctrine and (2) the Seventh Amendment.

*Id.* ¶¶ 97–149. Serpe moved for a preliminary injunction, ECF No. 10, which the Court limited to the Seventh Amendment claim, ECF No. 25.

Serpe's provisional suspension was lifted on November 4, 2024, after the Authority limited the criteria under which HIWU could impose provisional suspensions. JSUMF ¶ 25.

On April 10, 2025, the Court held a hearing on Serpe's preliminary injunction motion. JSUMF ¶ 27. During this hearing, the Court asked Serpe's counsel, if HIWU took a fine "off the table" "there couldn't possibly be a Seventh Amendment violation; right?" JSUMF ¶ 27. After the hearing, the Authority directed HIWU not to pursue a fine against Serpe. JSUMF ¶ 28. And on April 23, 2025, HIWU notified Serpe that, in fact, it was no longer seeking a fine. JSUMF ¶ 29. The reason for HIWU's decision was confirmed in a May 6, 2025, email (in a separate case) from HIWU's Senior Litigation Counsel, Allison Farrell, who explained that HIWU was not seeking a penalty against Serpe to avoid "the continued expenditure of money litigating the issue." Plaintiff's Statement of Material Fact (PSMF) ¶ 14. On May 29, 2025, the Court denied Serpe's preliminary injunction motion on the grounds that Serpe failed to show irreparable harm caused by the Authority and that Serpe's Seventh Amendment claim against the Commission was not ripe. ECF No. at 49.

### C. HIWU Arbitration

Meanwhile, HIWU's enforcement action continued. In December 2024, HIWU finally tested samples of mane hair and blood (again) from Fast Kimmie, as Serpe previously requested. PSMF ¶ 10. Both tested negative for Clenbuterol. PSMF ¶ 11. Nonetheless, later that month, HIWU issued a letter initiating Serpe's arbitration. JSUMF ¶ 26.

HIWU's arbitration was conducted on June 5, 2025 (HIWU Arbitration). JSUMF ¶ 30. Serpe presented evidence that he was not the source of the clenbuterol, including expert testimony that the minute amount of Clenbuterol detected in the post-race urine sample (paired with the non-

detection in the post-race blood sample) was "below therapeutic levels," did not have a "significant pharmacological effect" at the time of the race at Saratoga, and was inconsistent with intentional or prolonged use given that Clenbuterol was not detected in the hair or the blood. PSMF ¶¶ 27–33. This last point is crucial because a positive test in the hair, where Clenbuterol appears for a year after administration, would have revealed a therapeutic regimen. PSMF ¶ 32.

HIWU offered expert testimony from Dr. Daniel Eichner in an attempt to discount the possibility of an alternate source of the Clenbuterol. PSMF ¶ 15–16. In his expert report, Eichner averred that he was "independent of the parties" and unaware "of any conflict of interest or other matter that would compromise [his] independence." PSMF ¶ 17. But Eichner did not disclose that in his position as president of a nonprofit testing organization, his bonuses are determined by a board that includes HIWU General Counsel, Michelle Pujals. PSMF ¶¶ 18–21, 26. Nor did he disclose that he is affiliated with a testing laboratory that was in the process of seeking accreditation to become a major testing provider for HIWU. PSMF ¶¶ 18, 22–26.

The Arbitrator issued his Corrected Final Decision on July 9, 2025. JSUMF ¶ 33. The Arbitrator found that Serpe violated the Authority's ADMC Program and, because Serpe could not identify the source of the Clenbuterol, that Serpe failed to mitigate his responsibility. JSUMF ¶ 34–35. The Arbitrator ordered a two-year suspension, disgorgement of the purse, disqualification of the results, public disclosure of liability, but—as the Authority and HIWU wished—no fine. JSUMF ¶ 38. The Arbitrator also noted that he decided only that Serpe "was unable to meet his burden and standard of proof under the applicable rules" and that "no one should read [his] decision as a determining that [] Serpe is a cheater." JSUMF ¶ 36. Serpe's two-year suspension went into effect on July 15, 2025, and remains in effect. JSUMF ¶ 39. He immediately appealed to the Commission. JSUMF ¶ 40.

### D. Serpe's FTC Appeal

On appeal, an ALJ employed by the Commission reviewed the Arbitrator's decision *de novo*, affirmed the Arbitrator's liability finding and sanctions, and added a $25,000 fine (ALJ Review). JSUMF ¶¶ 41–44. The ALJ criticized the Authority for directing HIWU not to seek a fine to evade Serpe's Seventh Amendment claim, describing it as "interference with HIWU's independent prosecutorial authority" and "inconsistent with [the Authority's] statutory responsibility" to provide "adequate due process." PSMF ¶ 39. The ALJ held that the Arbitrator's failure to impose a fine was an error because the facts indicated a fine greater than $0 was appropriate (even though the Arbitrator had the discretion to impose no fine), and the arbitrator had provided no explanation for not imposing a fine. JSUMF ¶ 43. Because the ALJ concluded that Serpe had not shown any basis for mitigating his sanctions, the maximum fine of $25,000 was appropriate. JSUMF ¶ 44. The ALJ rejected Serpe's argument that his Seventh Amendment right to a jury trial was violated. JSUMF ¶ 46.

The Commission granted sua sponte review of the ALJ's Decision and stayed enforcement of the fine (Commission Review). JSUMF ¶ 47. Upon a motion by Serpe to clarify the issues on appeal, the Commission ordered the parties to brief (1) whether the ALJ was authorized to impose an unrequested fine; (2) whether the fine was appropriate; and (3) whether Serpe's Seventh Amendment right had been violated. JSUMF ¶¶ 48–49. In December 2025, Serpe moved to expand the issues on appeal and sought a stay of his suspension. JSUMF ¶¶ 50–51. In January 2026, Serpe moved the Commission to consider new evidence regarding Dr. Eichner's potential conflicts of interest and a potential alternate source of the Clenbuterol, as well as to reopen his liability and sanctions and stay his suspension. JSUMF ¶ 55. The Commission denied as moot Serpe's first motion to consider additional issues because Serpe had included them in his brief and then denied his motion to consider new evidence and reopen consideration of his liability and suspension.

8

JSUMF ¶¶ 54, 58. The Commission has yet to rule on either of Serpe's stay motions. JSUMF ¶¶ 54, 58. Merits briefing before the Commission is anticipated to conclude in March. JSUMF ¶ 57.

### E.  Renewed Motion for Preliminary Injunction

During the ALJ Review, Serpe filed a renewed motion for a preliminary injunction on July 15, 2025, based on his Seventh Amendment claim. ECF No. 50. This Court again denied the motion because, the Court concluded, (1) Serpe's suspension did not satisfy the irreparable harm requirement for a Seventh Amendment claim and (2) Serpe was not likely to succeed on the merits. ECF No. 65. The Court clarified that Serpe's Seventh Amendment claim was not "doomed" on the merits, only that Serpe had failed to demonstrate a substantial likelihood of success for the purpose of a preliminary injunction. *Id.* at 29.

The Court ordered the parties to confer on a joint scheduling order for summary-judgment briefing on both counts of Serpe's complaint. *Id.* at 29–30. The parties agreed on a four-brief schedule that was entered and then modified by the Court. ECF Nos. 67, 81.

## III.  Serpe's Injury

Serpe is currently suffering two distinct injuries that require permanently enjoining the entirety of the HIWU (JAMS Case No. 15010001008) and Commission (No. D 9441) adjudication processes (collectively, the HISA Adjudication) and the enforcement of his sanctions: (1) his ongoing suspension and the resulting shuttering of his training business, and (2) his subjection to an unconstitutionally structured adjudication process. First, Serpe is almost seven months into his two-year suspension. JSUMF ¶¶ 38–39. This suspension has prohibited Serpe from working in his sole occupation and closed his business, denied him his share of purses, damaged his reputation, and prevented him from once-in-a-lifetime racing opportunities. PSMF ¶¶ 35–38. Serpe would not be suspended but for the unconstitutional HISA Adjudication. *See infra* Parts II–III. Second, Serpe is suffering an ongoing and irreparable "here-and-now injury" by being subjected to the

unconstitutionally structured HISA Adjudication. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192 (2023). If the HISA Adjudication is allowed to continue, Serpe will "lose [his] right[] not to undergo" this unconstitutional proceeding, an injury that "cannot be undone." *Id.* at 191–92. These injuries require a permanent injunction of the HISA Adjudication and of the sanctions already imposed on Serpe.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also BBX Cap. v. FDIC*, 956 F.3d 1304, 1314 (11th Cir. 2020).

## ARGUMENT

Serpe's HISA Adjudication violates both the private non-delegation doctrine and the Seventh Amendment. The Authority and HIWU—private entities—are unconstitutionally empowered to enforce the Authority's rules without government oversight. And Congress unconstitutionally assigned the adjudication of rules violations to HIWU and the Commission rather than to an Article III court with a jury. Because the investigation, charging, and sanctioning of Serpe all occurred through an unconstitutionally structured process, the HISA Adjudication and the enforcement of the sanctions imposed on Serpe must be permanently enjoined.[1]

**I.   The Court Has Jurisdiction to Hear This Structural Constitutional Challenge to Serpe's Adjudication**

The Court has jurisdiction under 28 U.S.C. § 1331. Federal district courts "may ordinarily

---

[1] Serpe raised facial and as-applied challenges under both of his claims. *See, e.g.*, ECF No. 1 ¶ 1. Serpe maintains his facial challenge to HISA to the extent that (1) HISA unconstitutionally delegated government enforcement power to the Authority for the categories of enforcement actions taken against him and (2) HISA unconstitutionally assigned adjudication of banned-substance claims (HISA Rule 3212) to a juryless forum outside an Article III court. Serpe's as-applied challenges under each count relate to the specific enforcement action against him—the HISA Adjudication—on the same grounds.

hear" "challenges to federal agency action" under § 1331. *Axon*, 598 U.S. at 185. And HISA has no special statutory review scheme that displaces the Court's federal question jurisdiction. *See* 15 U.S.C. § 3058.[2]

## II. The Authority's and HIWU's Arbitration Violated the Private Non-Delegation Doctrine

HIWU's actions—investigating, charging, and sanctioning Serpe—violated the private non-delegation doctrine. This doctrine precludes private entities from participating in government regulatory schemes other than in an "advisory role." *FCC v. Consumers' Rsch.*, 606 U.S. 656, 693 (2025). Here, however, Congress gave decision-making power over these enforcement actions exclusively to private entities—the Authority and HIWU. *See, e.g.*, 15 U.S.C. § 3054(e)(1)(E), (h).

### A. Private Entities Like the Authority May Assist Government in Advisory Roles Only

The Constitution vests "[a]ll legislative Powers" in Congress and "[t]he executive Power" in the President. U.S. Const. art. I, § 1; *id.* art. II, § 1. "Accompanying that assignment of power to Congress is a bar on its further delegation[.]" *Consumers' Rsch.*, 606 U.S. at 672. Transferring government power to a private entity is "delegation in its most obnoxious form." *Id.* at 692 (cleaned up). This delegation is obnoxious because it is made not to a "presumptively disinterested" "official or an official body" "but to private persons whose interests may be and often are adverse to the interests of others in the same business." *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936).

---

[2] The sanctions imposed on Serpe—including the ongoing two-year suspension—also constitute "final agency action" such that this Court also has jurisdiction under the Administrative Procedure Act (5 U.S.C. § 704) and 28 U.S.C. § 1331. Final agency action can include a circumstance in which (1) an "agency ha[s] taken a definitive legal position concerning its statutory authority;" (2) "the case present[s] a purely legal question of statutory interpretation;" and (3) the agency action "imposed an immediate and significant practical burden." *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011) (cleaned up). That is the case here, where a significant practical burden (a suspension and fine) was already imposed on Serpe through an unconstitutionally structured adjudication process. PSMF ¶¶ 35–38.

11

Accordingly, private entities may participate in regulatory schemes only if they "function[] subordinately to" a government agency and remain subject to the agency's "authority and surveillance." *Consumers' Rsch.*, 606 U.S. at 692 (cleaned up). Put differently, private actors cannot exercise any government authority while being accountable to no one. *Id.* A government agency must "retain[] decision-making power" over a private entity, which may be "enlist[ed]" only "to give" the government agency "recommendations" in an "advisory role." *Id.* at 692–93.

An appropriate example is found in S*unshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 388 (1940), where the Court approved of a private board that "propose[d] minimum coal prices to a Government agency for approval, disapproval, or modification." *Consumers' Rsch.*, 606 U.S. at 692 (cleaned up). *Consumers' Research*, similarly, approved of a scheme through which the FCC established contribution rates for a telecommunications-services fund based on a private entity's predictions of the fund's revenues and expenses. *Id.* at 693–94. This structure was constitutional, the Court said, because the private entity could do nothing more than "make[] recommendations" based on the FCC's rules. *Id.* at 694.

## B. The Authority's and HIWU's Unilateral Enforcement Actions Against Serpe Are Unconstitutional

The Authority and HIWU (the Authority's anti-doping enforcer) do not function in a merely advisory role when enforcing Authority rules. Here, the Authority and HIWU enforced HISA and the banned-substance rule against Serpe without the involvement of the Commission, pursuant to an unconstitutional delegation of government enforcement power. Congress authorized the Authority, through HIWU (HISA Rule 3010(e)), to launch investigations, bring charges, adjudicate those charges, and impose sanctions that go into effect before Commission review. 15 U.S.C. §§ 3054(e), (h), 3055(c)(4)(B), 3057, 3058(a). HIWU, specifically, was empowered to "conduct and oversee" "independent investigations, charging and adjudication of potential medication

12

control rule violations, and the enforcement of any civil sanctions for such violations." *Id.* § 3055(c)(4)(B).

These powers "are all quintessentially executive functions." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 428 (5th Cir. 2024) (*Black II*), *cert. granted, judgment vacated sub nom. Texas v. Black*, 145 S. Ct. 2835 (2025). Indeed, the Supreme Court recognizes that "significant governmental power" includes the power to "oversee adjudications, set enforcement priorities, initiate prosecutions, and determine what penalties to impose on private parties." *Seila L. LLC v. CFPB*, 591 U.S. 197, 224–25 (2020).

That the Authority and HIWU's enforcement powers are exclusive is further confirmed by the limited role the Commission was given—after-the-fact *de novo* review of the *sanctions* imposed. 15 U.S.C. § 3058. As noted above, HIWU's sanctions go into effect immediately and are not subject to an automatic stay even while the Commission considers any appeal. *Id.* § 3058(d). Thus, the Commission "lacks adequate oversight and control" over the Authority's and HIWU's enforcement actions. *Black II*, 107 F.4th at 435.[3]

In Serpe's case, four enforcement actions by HIWU violated the private non-delegation doctrine: (1) HIWU conducted an investigation by collecting blood and urine from Fast Kimmie after the August 2024 race at Saratoga Racetrack. JSUMF ¶¶ 11–14. (2) HIWU charged Serpe with an anti-doping rule violation and provisionally suspended him. JSUMF ¶¶ 21–24. (3) HIWU arbitrated the charge against Serpe. JSUMF ¶¶ 26, 30–31. (4) The HIWU arbitrator imposed a two-

---

[3] The Supreme Court vacated and remanded *Black II* along with two decisions upholding the constitutionality of the Authority's enforcement power—*Oklahoma v. United States*, 62 F.4th 221 (6th Cir. 2023) and *Walmsley v. FTC*, 117 F.4th 1032 (8th Cir. 2024)—for reconsideration in light of *Consumers' Research*. On remand, the Sixth Circuit concluded that *Consumers' Research* did not change its analysis and again upheld the constitutionality of the Authority's enforcement power. *Oklahoma v. United States*, 163 F.4th 294, 301 (6th Cir. 2025). The Fifth and Eighth Circuits have not yet issued decisions on remand.

13

year suspension on Serpe that went into effect *before* review by the Commission. JSUMF ¶¶ 38–41. Each of these actions was taken pursuant to statutory power granted through the Authority to HIWU, and no part of that process was overseen by the Commission. PSMF ¶¶ 4, 8–9, 13, 34.

### 1.  HIWU Collects Blood and Urine Samples from Fast Kimie

HIWU's unconstitutional enforcement actions began with the collection and testing of urine and blood samples from Fast Kimmie in August 2024. JSUMF ¶¶ 11–14. Congress granted the Authority "investigatory authority with respect to civil violations." 15 U.S.C. § 3054(h). Congress also specifically authorized HIWU (the "anti-doping enforcement agency") to "perform and manage ... in competition and out-of-competition testing." *Id.* § 3055(c)(4)(C); *see also id.* § 3054(e)(1)(E). The Authority's rules authorized HIWU to test covered horses "at any time and any place where they are located" and made explicit that "[o]nly" HIWU or those authorized by HIWU "may initiate and direct Testing on Covered Horses." HISA Rule 3132(a), (c). None of the statutes or rules involve the Commission, even though the "power to start ... [an] investigation[]" is an "executive activit[y] typically carried out by officials within the Executive Branch." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 504 (2010).

A constitutionally structured scheme would have HIWU recommend investigation, sample collection, and testing to the Commission. *Consumers' Rsch.*, 606 U.S. at 692–93. Instead, HIWU unilaterally made these decisions pursuant to its statutory authority (15 U.S.C. § 3055(c)(4)(B)), without which Serpe would never have been charged and sanctioned.

### 2.  HIWU Charges Serpe with a Banned Substance Violation and Imposes Provisional Suspension

Congress empowered HIWU to "charg[e] ... potential medication control rule violations." 15 U.S.C. § 3055(c)(4)(B); *see also id.* § 3054(e)(1)(E). Accordingly, after detecting a negligible amount of Clenbuterol in the urine sample, HIWU charged Serpe with violating HISA Rule 3212,

provisionally suspended him, and sought sanctions. JSUMF ¶¶ 21–24. These prosecutorial functions (i.e., charging decisions) are "'executive' in the sense that they are law enforcement functions that typically have been undertaken by officials within the Executive Branch." *Morrison v. Olson*, 487 U.S. 654, 691 (1988). Indeed, "the power to seek daunting monetary penalties against private parties" is "a quintessentially executive power." *Seila L.*, 591 U.S. at 219.

As with the investigation decision, HIWU's prosecutorial actions would have been constitutional had they been limited to making "recommendations" to the Commission. *Consumers' Rsch.*, 606 U.S. at 692. Instead, all decision-making authority was left to HIWU without the approval of the Commission. 15 U.S.C. § 3055(c)(4)(B); PSMF ¶¶ 8–9.

Exacerbating the unconstitutional delegation at this stage was HIWU's decision to impose an immediately effective provisional suspension on Serpe. JSUMF ¶¶ 23–24. The Commission had no role in its imposition; Authority rules provide that HIWU "shall impose a Provisional Suspension" for alleged violations of the banned-substances rule. HISA Rule 3247(a)(1); PSMF ¶ 9. Here, Serpe's provisional suspension was lifted within several weeks. JSUMF ¶ 25. Nevertheless, HIWU's imposition of the sanction without any adjudication of his liability was yet another exercise of unconstitutionally delegated enforcement power. *Consumers' Rsch.*, 606 U.S. at 692; *see also Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1328 (D.C. Cir. 2024).

### 3. HIWU Arbitrates the Banned Substances Claim, and Its Arbitrator Imposes Sanctions

The last unconstitutional step in HIWU's private enforcement process was the private arbitration of its own charge against Serpe and the imposition of sanctions—all before Commission review. JSUMF ¶ 26, 30, 38; PSMF ¶ 13, 34. Congress authorized HIWU to "adjudicat[e]" "potential medication control rule violations." 15 U.S.C. §§ 3055(c)(4)(B), 3054(e)(1)(E)(iii). The arbitration took place before an arbitrator from HIWU's own Arbitral Body, comprised of

15

arbitrators "appointed by mutual agreement of the Authority and [HIWU]." HISA Rules 3261, 7030; JSUMF ¶¶ 30–31. The adjudication of alleged violations of the law involving the imposition of serious penalties on private parties is a "significant governmental power." *Seila L.*, 591 U.S. at 224–25. But here, as with all the other actions HIWU took, the Commission had no role in the decision. PSMF ¶¶ 13, 34.

Serpe's arbitration also resulted in, among other sanctions, a two-year suspension that went into effect without Commission review. JSUMF ¶¶ 38–41. This suspension, again, was not a decision made by the Commission upon HIWU's recommendation, but the result of HIWU's unconstitutional exercise of decision-making authority. *Consumers' Rsch.*, 606 U.S. at 692–93. The D.C. Circuit faced a similar situation and held that FINRA's expedited expulsion of one of its members without SEC review violated the private non-delegation doctrine. *Alpine*, 121 F.4th at 1326–28. Not even the ability of the SEC to stay the expulsion during its review saved the constitutionality of FINRA's order. *Id.* at 1326. As in *Alpine*, "[t]he result of [the Authority's] regulatory scheme is that [HIWU] can, without any [Commission] review of its decision on the merits, effectively decide who can" train thoroughbred horses "under federal law." *Id.* at 1328.

### III.    Serpe's Adjudication Violates the Seventh Amendment

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Banned Substance Claim is common law in nature and therefore must be tried to a jury in an Article III court. *See SEC v. Jarkesy*, 603 U.S. 109, 140 (2024).

The Authority and the Commission cannot escape the Seventh Amendment's reach. The HISA Adjudication is state action throughout—the Commission is a federal agency with which the Authority and HIWU act jointly—and therefore subject to the Seventh Amendment. And Serpe's compulsory registration with the Authority did not waive his Seventh Amendment right because

16

submitting to the Authority's arbitration process was an unconstitutional condition on his right to pursue his thoroughbred training career.

### A. The Banned Substance Claim Is a Common Law Claim Covered by the Seventh Amendment

The Seventh Amendment "embraces all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Jarkesy*, 603 U.S. at 122 (cleaned up). The jury trial "right is not limited to the common-law forms of action recognized when the Seventh Amendment was ratified." *Id.* (cleaned up). Nor does it matter where Congress originally "assigned" a claim to be heard. *Id.* at 134. The Seventh Amendment extends to statutory claims under two conditions: (1) the claim must be "legal in nature," taking into account "the cause of action and the remedy it provides;" and (2) the claim must not fall within the "public rights exception to Article III jurisdiction." *Id.* at 120, 122–23 (cleaned up).

### 1. The Banned Substance Claim Is Legal in Nature

#### a. Fines Are Quintessential Common Law Remedies

Civil money penalties were traditionally imposed by courts of law. *Jarkesy*, 603 at 123. Here, HISA authorizes the Authority to develop civil penalties. 15 U.S.C. § 3054(i). Those penalties "may include ... monetary fines and penalties." *Id.* § 3057(d)(3). Pursuant to HISA, the Authority established a "[f]ine of up to $25,000 or 25% of the total purse (whichever is greater)" as a remedy for the Banned Substance Claim. HISA Rule 3223(b). Additionally, as in *Jarkesy*, HISA's penalties are "designed to punish or deter the wrongdoer." 603 U.S. at 123. The statute requires that the Authority's civil sanctions rules must "be designed to ensure fair and transparent horseraces" and "deter safety, performance, and anti-doping and medication control rule violations." 15 U.S.C. § 3057(d)(2); *see also id.* § 3054(e)(1)(E)(ii) (HIWU "shall … ensure that covered horses and covered persons are deterred from using or administering medications,

17

substances, and methods in violation of the rules."). Given these statutory factors for the imposition of the fine are designed to address deterrence, rather than restoration of the status quo, they are punitive in nature and therefore legal. *Jarkesy*, 603 U.S. at 123–24.

### b.   The Banned Substance Claim Is Common Law in Nature

The Banned Substance Claim against Serpe has several common law analogs, particularly given its obvious common law remedy, demonstrating that the claim is legal in nature. A suit at common law includes any "suit[] in which legal rights [a]re to be ascertained and determined." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708 (1999) (cleaned up). Establishing the legal nature of a statutory cause of action does not require "an abstruse historical search" for a "precise[]" analog—"characterizing the relief sought is more important." *Tull v. United States*, 481 U.S. 412, 421 (1987) (cleaned up). For example, statutory housing-discrimination claims, which did not exist at common law, are legal in nature and require a jury because they are broadly analogous to various torts, including defamation, intentional infliction of emotional distress, and dignitary torts. *Curtis v. Loether*, 415 U.S. 189, 195 & n.10 (1974). In *Jarkesy*, statutory securities fraud was "narrower" and "broader" than common law fraud—e.g., statutory securities fraud does not always require a showing of harm. 603 U.S. at 126. Moreover, the common law cause of action need not "persuasively militate for a jury trial" where the remedy is definitively legal. *Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994).

### i.   Action in Debt

First, a claim for punitive civil money penalties is itself a common law cause of action. *Jarkesy*, 603 U.S. at 122. "Actions by the Government to recover civil penalties under statutory provisions [] historically have been viewed as one type of action in debt requiring trial by jury." *Tull*, 481 U.S. at 418–19. Therefore, the Banned-Substance Claim seeking civil penalties is a common law action in debt. *See id.* at 420.

### ii.    Fraud

Second, the Banned Substance Claim bears a "close relationship" with a claim for common-law fraud. *Jarkesy*, 603 U.S. at 125. The Banned Substance Claim was created pursuant to HISA's authorization for the Authority to establish as a "strict liability" offense "the presence of a prohibited substance [] in a sample" with "an opportunity to reduce the applicable civil sanctions." 15 U.S.C. § 3057(a)(2)(A), (d)(3)(B). And sanctions had to "be designed to ensure fair and transparent horseraces[.]" *Id.* § 3057(d)(2)(B). Pursuant to HISA, the Authority established the presence of a banned substance as an ADMC Program violation, HISA Rule 3212(a), and allowed sanctions to be mitigated by demonstrating a reduced level of fault, HISA Rules 3224–25.

In general, HISA established the ADMC Program to prevent, among other harms, fraud on the betting market (15 U.S.C. § 3055(b)(7))—a principle long recognized as a cornerstone of horseracing regulations. *See, e.g.*, *United States v. Martin*, 411 F. Supp. 2d 370, 373 (S.D.N.Y. 2006); *State ex rel. Morris v. W. Va. Racing Comm'n*, 55 S.E.2d 263, 274–75 (W. Va. 1949). The ADMC Program seeks to do this by ensuring that the "betting public" is provided with access to information concerning "the administration of medications and treatments to covered horses." 15 U.S.C. § 3055(b)(7). Moreover, in requiring that the ADMC Program ensure "full disclosure," "fair[ness]," and "transparen[cy]," *id.* §§ 3055(b)(7), 3057(d)(2)(B), Congress drew upon common law fraud principles, *see Jarkesy*, 603 U.S. at 125.

Thus, the Banned Substance Claim "target[s] the same basic conduct" as common law fraud: "misrepresenting or concealing material facts." *Id.* at 125. A banned substance claim shares many of the same features of a traditional common law fraud claim: the material fitness of a horse to race was misrepresented through some fault of the Responsible Person; the other competitors, the racetrack, and the betting public relied on that misrepresentation; resulting in damage to all concerned through the undermining of the race's integrity. *See Tuckish v. Pompano Motor Co.*, 337

19

F. Supp. 2d 1313, 1320–21 (S.D. Fla. 2004). This is particularly true given that the presence of the Clenbuterol was identified through post-race testing. JSUMF ¶¶ 11–13.

Even if a banned substance claim is evaluated as a strict liability claim, it is still analogous to a particular species of common law fraud—fraudulent conveyance. In a fraudulent-conveyance claim, fraud is not committed through a false representation but "in the acts of concealment and hindrance." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 362 (2016). Fraudulent conveyance "typically involve[s]" a transfer of assets by a debtor in circumstances that indicate the transfer was to hide the assets from a creditor (i.e., inadequate consideration). *Id.* at 361. The existence of fraudulent-conveyance claims establishes that there are iterations of common law fraud proven through circumstances (such as the presence of a banned substance in a horse), not through proof of knowing misrepresentations. *See BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 540–41 (1994).

Finally, cheating allegations in games have long been litigated through common law claims. As early as 1563, common law courts were hearing claims for money damages arising from cheating during gambling games. *See Harris v. Bowden* (1563), 78 Eng. Rep. 348, 348; Cro. Eliz. 90, 90 ("An action on the case will lie for playing with false dice."). Such fraud suits carried over into American law. *See, e.g.*, *Catts v. Phalen*, 43 U.S. 376, 381 (1844); *Berman v. Riverside Casino Corp.*, 323 F.2d 977, 979 (9th Cir. 1963); Jordan T. Smith, *Cheater's Justice: Judicial Recourse for Victims of Gaming Fraud*, 7 UNLV Gaming L.J. 61, 70–75 & n.117 (2017) (collecting cases).

### iii. Negligence

The Banned Substance Claim is also analogous to common law negligence. It places a "personal and non-delegable duty" on the Responsible Person "to ensure that no Banned Substance is present in the body of his or her Covered Horse(s)." HISA Rule 3212(a). There is also an explicit negligence standard for reducing suspensions—a covered person can "establish[] that he or she bears No Significant Fault or Negligence for the Anti-Doping Rule Violation in question" and

reduce the ineligibility period to "between 3 months and 2 years, depending on the … degree of Fault." HISA Rule 3225(a). And HIWU arbitrators have applied this logic to setting fines. *HIWU v. Puype*, JAMS CASE No. 1501000973, at 31 (Dec. 12, 2024).

The Fifth Circuit recently concluded that the Seventh Amendment applied to a regulatory scheme that similarly invoked a negligence standard. *AT&T, Inc. v. FCC*, 149 F.4th 491, 499 (5th Cir. 2025), *cert. granted* No. 25-406, 2026 WL 73092 (U.S. Jan. 9, 2026). There, a "technical" section of the Telecommunications Act imposed upon carriers a duty of reasonable care (without using that exact language) to protect certain confidential customer information. *Id.* at 494, 498–99. The court rejected the FCC's argument that the statute did not use common-law terms like "negligence" or "reasonable care." *Id.* at 499. "The key inquiry" was "whether the statute targets the same basic conduct as the common law claim." *Id.* (cleaned up). Here, the Authority, as in *AT&T*, established a statutory duty and adopted a standard of reasonable care for the mitigation or elimination of sanctions. HISA Rules 3212(a), 3224–25. In fact, the Arbitrator evaluated Serpe's conduct in terms of his compliance with "the duty of care." PSMF ¶ 40.

### iv. Breach of Contract

The Banned-Substance Claim is also analogous to a breach of contract claim. *See Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*, 148 F.4th 121, 128–29 (3d Cir. 2025). Participation in thoroughbred racing involves an implicit contract: a manifestation of an agreement by the trainer to follow the Authority's rules in exchange for the ability to participate (notwithstanding whether the agreement is constitutionally sound, *see infra* Part III.C). Restatement (Second) of Contracts § 17 (1981). And like all contracts, it incorporates "'the laws which subsist[ed] at the time and place of'" its execution. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429–30 (1934).

The Eleventh Circuit previously analogized a statutory discrimination claim to a breach of employment contract claim. *Waldrop*, 24 F.3d at 156. The same logic applies here to the prohibition

21

on the presence of banned substances. Moreover, there is a long history of regulating horse-race fairness through contracts. T. H. Breen, *Horses and Gentlemen: The Cultural Significance of Gambling among the Gentry of Virginia*, 34 William & Mary Q. 239, 253–56 (1977). In colonial Virginia, for example, betting took place between the race contestants and was memorialized through an agreement, which usually "included a promise to ride a fair race." *Id.* at 253–54. These agreements were enforced in county court through jury trials. *Id.* at 255–56.

### v.   Tortious Interference

Additionally, the Banned Substance Claim parallels tortious interference, a tort involving improper intentional disruption of a reasonable economic expectancy. *See* Restatement (Second) of Torts § 766B (1979). Serpe is accused of conduct that would have undermined the race's integrity and disrupted competitors' reasonable economic expectations of fair competition. *See id.* § 912, cmt. f, illus. 16. This type of interference claim has deep common-law roots. *See, e.g.*, *Garret v. Taylor* (1621), 79 Eng. Rep. 485, 485; Cro. Jac. 567, 567; *Tarleton v. M'Gawley*, (1793), 170 Eng. Rep. 153, 153; Peake 270, 270.

### vi.   Strict Liability

Finally, HISA's imposition of strict liability has a clear common-law—indeed, ancient—lineage. *See United States v. Cordoba-Hincapie*, 825 F. Supp. 485, 490, 496–500 (E.D.N.Y. 1993); *see also Prentiss v. Nat'l Airlines*, 112 F. Supp. 306, 310 (D.N.J. 1953) (dating common law strict liability claims to "the times of Aethelbert and Alfred the Great"). The claim against Serpe (HISA Rule 3212(a)) also closely mirrors a "public welfare" offense, a relatively modern concept drawn from common-law precepts of strict liability. *See Cordoba-Hincapie*, 825 F. Supp. at 496–97. These offenses impose liability without regard to fault. To be sure, trainers like Serpe may present evidence to establish mere negligence or no fault, HISA Rules 3224–25, but that simply underscores the common-law analogs that form the bases for Banned Substance Claims.

## 2. The Public Rights Exception Does Not Apply

Because the Banned Substance Claim is common law in nature, it does not fall within the public rights exception. *See supra* Part III.A.1. The Article III judicial power "extend[s] to all Cases, in Law and Equity, arising under ... the Laws of the United States." U.S. Const. art. III, § 2, cl. 1. The cases at "Law" covered by Article III are coextensive with cases at "common law" covered by the Seventh Amendment. *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 447 (1830). As such, "[t]he Constitution prohibits Congress from withdrawing from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Jarkesy*, 603 U.S. at 127 (cleaned up).

Therefore, the public rights exception is truly an exception: it is limited to "matters [that] 'historically could have been determined exclusively by [the executive and legislative] branches.'" *Id.* at 128 (citation omitted). This exception is entirely atextual and in each case "must [] derive [] from background legal principles" and history. *Id.* at 131. Even "matters that arguably fall within the scope of the public rights doctrine" still enjoy a "presumption [] in favor of Article III courts." *Id.* at 132 (cleaned up).

Only six categories of public rights have been historically recognized: revenue collection, immigration, tariffs, public lands, Indian-tribal relations, and public benefits. *Jarkesy*, 603 U.S. at 128–30. But these recognized categories do not fit the Banned Substance Claim, nor does a review of the history and background legal principles lead to the conclusion that it should become a seventh category.

### a. The Banned Substance Claim Is a Common Law Claim Not Subject to the Public Rights Exception

As already addressed, the Banned Substance Claim is common law in nature. *See supra* Part III.A.1. "[T]he Seventh Amendment *does* apply to novel statutory regimes," like HISA, "so

23

long as the claims are akin to common law claims." *Jarkesy*, 603 U.S. at 139 (emphasis added). Here, the Banned Substance Claim is akin to multiple common law claims and thus Congress cannot "withdraw [it] from judicial cognizance." *Id.* at 140 (cleaned up).

> **b. The History and Background Legal Principles Associated with the Banned Substance Claim Do Not Support Application of the Public Rights Exception**

The history of horseracing regulations and the associated background legal principles do not demonstrate that it was a matter "determined exclusively" by the political branches. First, there is no connection between the Banned Substance Claim and the six categories of public rights claims recognized in *Jarkesy*. 603 U.S. at 128–32.

Second, the background legal principles associated with HISA do not support excluding the Banned Substance Claim from Article III jurisdiction. The justifications for the recognized public rights exceptions demonstrate the sort of background legal principles that are necessary. The exception for revenue-collection matters was justified with "centuries-old rules" on the subject that the court "took pains" to explain. *Id.* at 131. The immigration exception was grounded in Congress's "plenary power over immigration." *Id.* at 129. The tariff exception exists because "the political branches had traditionally held exclusive power over this field." *Id.* at 130. Indian tribes are in a unique "trust relationship" with the United States that "informs the exercise of legislative power." *Haaland v. Brackeen*, 599 U.S. 255, 274 (2023) (cleaned up). Public lands and public benefits concern property and money that belong to the government. *See Jarkesy*, 603 U.S. at 130.

To enact HISA, Congress relied on its interstate-commerce power—no other enumerated power could authorize the regulation of horseracing. *See* 15 U.S.C. § 3051(5) (defining "covered horserace" to include "any horserace" "that has a substantial relation to interstate commerce"). But given that *Jarkesy* concluded that Article III courts had jurisdiction over a statutory securities fraud claim, an exercise of the interstate-commerce power *cannot* be a justification to invoke the public

rights exception. *Jarkesy*, 603 U.S. at 129 n.1.

Third, the history of horseracing regulation—and gaming regulation generally—does not support its removal from Article III jurisdiction. To recap, the rules for fair play in horseracing have a long tradition of enforcement through common law contract claims. Breen, *supra*, at 253–56. The history of common law adjudication of claims related to gaming is also particularly relevant given that the ADMC Program was created, in part, to shore up the "confidence of the betting public" in the "integrity" of the races. 15 U.S.C. § 3055(b)(7). Common law courts have considered claims regarding of the integrity of gaming since at least 16th century England, and this tradition has continued in the United States. *See supra* Part III.A.1.b.ii

### c. Because the Banned Substance Claim Is Not Unknown to the Common Law, *Atlas Roofing* Does Not Apply

The only other potential basis to invoke the public rights exception is *Atlas Roofing Co., Inc. v. OSHRC*, 430 U.S. 442 (1977). But it is a narrow and aberrant case. *Atlas Roofing* held that the Seventh Amendment permitted the Occupational Safety and Health Review Commission (an Executive Branch agency) to adjudicate civil money penalty claims for violations of workplace safety regulations established under the Occupational Safety and Health Act (OSH Act). *Id.* at 445–47. The OSH Act established a unique scheme in which the Occupational Safety and Health Administration (OSHA) was authorized to develop a detailed workplace safety code by regulation. *Jarkesy*, 603 U.S. at 136–37. Those administratively created standards were backed by civil money penalties for violations. *Id.* The Seventh Amendment did not apply to such claims because they were "unknown to the common law." *Atlas Roofing*, 430 U.S. at 461.

But *Atlas Roofing* does not stand for the proposition that Congress can assign any new statutory cause of action with civil money penalties it creates to administrative adjudication without violating the Seventh Amendment. After *Jarkesy*, *Atlas Roofing* applies only to the highly

technical regulatory claims it considered under the OSH Act. *Jarkesy*, 603 U.S. at 136–37. The OSH Act did not lay out safety standards in the statute; it simply commanded that "[e]ach employer ... shall comply with occupational safety and health standards promulgated under this chapter." *Id.* (quoting 29 U.S.C. § 654(a)(2) (1976 ed.)). The establishment of the substantive standards was left to OSHA. It resulted in standards that "resembled a detailed building code" rather than any common law claim. *Id.* at 137. This scheme was "self-consciously novel" and required the agency to "develop[] innovating methods, techniques, and approaches." *Id.* (quoting 29 U.S.C. § 651(b)(5) (1976 ed.)). This is the only reading of *Atlas Roofing* consistent with the Supreme Court's presumption in favor of Article III adjudication, even for claims that arguably implicate public rights.[4] *Jarkesy*, 603 U.S. at 132.

The Banned Substance Claim is not analogous to *Atlas Roofing*. A HISA fine for defrauding and violating the "confidence of the betting public" by secretly doping a racehorse, 15 U.S.C. § 3055(b)(7), is materially different than the OSHA regulations that "resembled a detailed building code," *Jarkesy*, 603 U.S. at 137. The Banned Substance Claim against Serpe comes directly from HISA—the statute directs the Authority to create "a list of permitted and prohibited medications, substances, and methods, including allowable limits of permitted medications, substances, and methods." 15 U.S.C. § 3055(c)(1)(B). This instruction was to effectuate Congress's policy that "[c]overed horses should compete only when they are free from the influence of medications, other foreign substances, and methods that affect their performance" and that "the integrity of the sport[] and the confidence of the betting public" would be maintained through transparency "regarding

---

[4] If the Court concludes that *Atlas Roofing* applies to the Banned Substance Claim, Serpe preserves the argument that *Atlas Roofing* should be overruled. *Jarkesy* cast serious doubt on *Atlas Roofing*'s continued viability, describing it as "a departure from [the Court's] legal traditions." *Jarkesy*, 603 U.S. at 138 n.4. And the author of *Atlas Roofing*, thought it may have already been overturned by *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 79 (1989) (White, J., dissenting).

the administration of medications and treatments to covered horses." *Id.* § 3055(b)(1), (7). This is simply the codification of the historical common law regulation of horseracing and gaming, and this Banned Substance Claim in particular is analogous to common law fraud, negligence, breach of contract, tortious interference, and strict liability. *See supra* Part III.A.1.b.

Even if the Court views the Banned Substances Claim as arising from regulation, as in *AT&T*, 149 F.4th at 500–02, the public rights exception is not invoked simply on that basis. The Third Circuit's analysis, distinguishing from *Atlas Roofing* a contract-like working-conditions regulation is instructive here. *Sun Valley*, 148 F.4th at 128 n.4. *Sun Valley* held that labor-enforcement claims based in a contract did *not* fall within the public rights exception because they were common law in nature. *Id.* at 128–29. The Department of Labor alleged that a farm had violated the working condition regulations for H-2A workers and allowed the farm to contest the resulting civil money penalties before a Department ALJ. *Id.* at 125–26. But this administrative adjudication violated Article III because the employer's work-condition guarantees were "formalized" in a "job order" that "function[ed] as a work contract." *Id.* at 128 (cleaned up). *Sun Valley*, 148 F.4th at 128 n.4, distinguished this common law claim from "'technical' hazardous materials regulations with no common law origins" that the Third Circuit had earlier concluded were analogous to *Atlas Roofing* in *Axalta Coating Sys. LLC v. FAA*, 144 F.4th 467 (3d Cir. 2025). Because the claim in *Sun Valley* "resemble[d] common law breach of contract"—notwithstanding that the claim also arose from regulations—*Atlas Roofing* did not apply. *Sun Valley*, 148 F.4th at 128 n.4.

The same distinction applies here, where the Banned Substance Claim resembles several common law claims. Thus, it does not fall within the public rights exception. *See id.*

27

### B. HISA Adjudications Are Subject to the Seventh Amendment

#### 1. The Seventh Amendment Applies to the Commission's *De Novo* Review of the ALJ Decision

The Seventh Amendment applies to the Commission's review of Serpe's adjudication. *See Jarkesy*, 603 U.S. at 139–40. Serpe continues to defend himself in the Commission Review after a Commission ALJ imposed a $25,000 fine. JSUMF ¶ 44, 47–58. Given that the Commission is part of the federal government, the Commission ALJ's decision to impose a fine of $25,000 "effectively decides that this suit implicates the Seventh Amendment right." *Jarkesy*, 603 U.S. at 125; *id.* at 134 ("[W]hat matters is the substance of the action, not where Congress has assigned it.").

Defendants cannot continue to evade Serpe's Seventh Amendment claim. It makes no difference for Seventh Amendment purposes that the Commission has yet to issue a final decision imposing a fine; it is enough that a fine is at issue. Challenges to jury demands are worked out in pre-trial proceedings *before* it is known whether a common law remedy *will* be imposed, *see, e.g.*, *Tull*, 481 U.S. at 415, just as criminal defendants raise their Sixth Amendment jury-trial right before sentencing. The question is whether a party has the right to proceed before a jury, not *post hoc* whether a jury was necessary. True, in civil litigation, the plaintiff's selection of remedies is relevant to that question, *Curtis*, 415 U.S. at 196. But the Commission's review of ALJ decisions imposing HISA civil sanctions does not work that way. The Commission's review is "de novo," and it is empowered to "affirm, reverse, modify, set aside, or remand ... in whole or in part" the ALJ's decision. 15 U.S.C. § 3058(c)(3). Therefore, it remains a live possibility that Serpe's fine will be affirmed by the Commission.

It is similarly irrelevant whether disputed facts are present in the Commission's review or whether Serpe preserved his Seventh Amendment claim in the HIWU arbitration (he did)—both

points Defendants are expected to make. Serpe filed his Seventh Amendment claim in *this* action immediately after HIWU charged him, and he has aggressively prosecuted it. JSUMF ¶ 21. He claims that the Seventh Amendment requires the HISA Adjudication to occur in an Article III court with a jury because the Banned Substance Claim is common law in nature. *See supra* Part III.A. The nature of the claim depends neither on the preservation rules nor on whether any disputed facts remain. *Id.* Regardless, the parties vigorously disputed fact questions during the HIWU Arbitration that should have been resolved by a jury. PSMF ¶ 15–16, 27–33. And the Commission ALJ concluded that Serpe preserved his Seventh Amendment claim. JSUMF ¶ 45.

This Court's review before the Commission's final-sanction decision is also consistent with the collateral nature of this suit. *Axon*, 598 U.S. at 189. *Axon* affirmed that district courts may hear collateral challenges to "the structure ... of an agency" *even* when (unlike here) there is a special statutory review scheme. *Id.* at 185, 189. Serpe's Seventh Amendment claim is just such a claim because it necessarily requires a determination of whether the underlying enforcement action could have been assigned to a non-Article III tribunal. *Jarkesy*, 603 U.S. at 127. If this claim is not considered now, Serpe's right "not to undergo" (what is left of) a juryless proceeding in a non-Article III tribunal will be "effectively lost." *Axon*, 598 U.S. at 192 (cleaned up).

### 2.   The HIWU Arbitration Was State Action

Defendants also cannot escape the Seventh Amendment on the ground that the Authority and HIWU are private entities because the HISA Adjudication was state action. An action of a private entity depriving someone of a federal right is "fairly attributable" to the government where, as here, two conditions are met: (1) "the deprivation [is] caused ... by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) the private party carrying out the deprivation "may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The second factor includes circumstances in which "the government acts jointly

with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). This joint action occurs when "the governmental body and private party" are "intertwined in a symbiotic relationship." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003) (cleaned up).

Here, the Authority and HIWU are sufficiently intertwined with the Commission and Congress in enforcing the Banned Substance Claim that the HIWU Arbitration was state action. *See Lugar*, 457 U.S. at 942. First, the rule of conduct in the Banned Substance Claim was imposed by a combination of the government (the Commission) and "a person for whom the [government] is responsible" (the Authority). *Id.* at 937. Congress required the Authority to develop a list of "prohibited medications" and "substances," and associated rules, as well as to establish civil sanctions for violations. 15 U.S.C. §§ 3055(c), 3057(d). The Authority's rules then had to be approved by the Commission. *Id.* § 3053(d). Second, the HIWU Arbitration (on behalf of the Authority, *see id.* § 3054(e)(1)(E)), is conducted "jointly" with the Commission in a multi-step process. *Halleck*, 587 U.S. at 809; 15 U.S.C. § 3058.

In *Lugar*, the Supreme Court held that a private party's use of a state-created ex parte attachment procedure was sufficient to conclude that the private party's actions constituted state action. 457 U.S. at 940–42; *see also Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1037 (11th Cir. 2022). Similarly, the Authority and HIWU are engaged in state action in their enforcement and adjudication of the Banned Substance Claim against Serpe. *See Lugar*, 457 U.S. at 942. The entire HISA Adjudication is a process of enforcing and adjudicating federal law attributable to the government that, like the securities fraud administrative process in *Jarkesy*, must comply with the Seventh Amendment.

30

**C. Serpe Did Not Waive His Seventh Amendment Jury Trial Right by Registering with the Authority**

**1. Waiver of Serpe's Seventh Amendment Jury Trial Right Was an Unconstitutional Condition on His Right to Pursue His Livelihood**

The government is prohibited from conditioning the "receipt of a benefit," a "privilege," or the exercise of a constitutional right on the "relinquishment of a constitutional right." *Bourgeois v. Peters*, 387 F.3d 1303, 1324 (11th Cir. 2004). The Supreme Court has applied this unconstitutional-condition doctrine to legislative conditions imposed on multiple constitutional rights, including the right of "access to federal courts." *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 279 (2024). In *Terral v. Burke Construction Company*, the Court held that states could not condition the "privilege" of doing business in states on a corporation's waiver of its "right to resort to the federal courts." 257 U.S. 529, 532 (1922); *see also S. Pac. Co. v. Denton*, 146 U.S. 202, 207 (1892).

*Lebron v. Secretary, Florida Department of Children and Families*, 710 F.3d 1202 (11th Cir. 2013)—a Fourth Amendment unconstitutional condition case—is also instructive. The State of Florida conditioned welfare benefits on applicants' consent—by executing obligatory consent forms—to drug testing. *Id.* at 1214–15. But the Court did not consider this consent effective because "where it has been shown that consent was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right," the consent is generally invalid. *Id.* (cleaned up).

Conditioning Serpe's right to earn a livelihood in his chosen profession on waiver of his Seventh Amendment jury trial right in the HISA Adjudication is directly analogous to these cases. *Terral*, 257 U.S. at 532; *S. Pac.*, 146 U.S. at 207. Serpe has a constitutional right to pursue a career in thoroughbred training, a lawful, long-standing profession in which he has excelled for years. *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972). Indeed, "the right to work for a living in the

31

common occupations of the community is of the very essence of the personal freedom and opportunity" secured by the 14th Amendment. *Truax v. Raich*, 239 U.S. 33, 41 (1915). Here, HISA entirely forbids Serpe from pursuing his thoroughbred training career (15 U.S.C. § 3054(d)), unless he surrenders his "vital and cherished" right to a civil jury trial. *LaMarca v. Turner*, 995 F.2d 1526, 1544 (11th Cir. 1993). Such a condition is not permitted. *See Terral*, 257 U.S. at 532. And Serpe's registration cannot reasonably be understood to signify a genuine intention to relinquish Seventh Amendment rights. *Lebron*, 710 F.3d at 1214–15. Indeed, "[i]t is inconceivable that guaranties embedded in the Constitution ... may thus be manipulated out of existence." *Frost v. R.R. Comm'n*, 271 U.S. 583, 594 (1926).

*Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 592 (1985), does not suggest otherwise. *Thomas* upheld against an Article III claim a pesticide-registration scheme that required manufacturers to provide their research data to the EPA and then submit to binding arbitration with follow-on registrants to determine the amount of compensation later registrants must pay to use the collected data. *Id.* at 571–75. The Court determined that Congress could require non-Article III arbitration of these data-use compensation claims because the claims involved public rights. *Id.* at 590. Thus, requiring the arbitration process could not be an unconstitutional condition because—unlike here (*see supra* Part III.A)—the parties did not have a right to an Article III court in the first place. *Id.*

This Court should also decline to follow the Seventh Circuit's decision in *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 368 (7th Cir. 1999), which held that a mandatory arbitration provision imposed when registering with individual securities exchanges was not an unconditional condition on the Seventh Amendment jury-trial right. The SEC did not require registration with a particular exchange that had mandatory arbitration agreements. *Id.* Here, in

32

contrast, Congress requires covered persons to register with the Authority and thereby submit to HIWU's adjudication of ADMC Program violations. 15 U.S.C. §§ 3052(a), 3054(d), 3055(c)(4)(B). This is plainly a government-mandated scheme to which the unconstitutional conditions doctrine applies.[5] *See Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1329 (11th Cir. 2008) (citing cases applying unconstitutional conditions doctrine to government-imposed conditions carried out by non-governmental parties).

### 2. Serpe's Registration Was Not a Knowing and Voluntary Waiver of His Seventh Amendment Right

Even if the unconstitutional-conditions doctrine does not apply, Serpe's registration with the Authority did not constitute a "knowing and voluntary" waiver of his Seventh Amendment jury trial right. *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006); *Omega v. Deutsche Bank Tr. Co. Americas*, 920 F.Supp.2d 1298, 1299 (S.D. Fla. 2013). Whether a waiver is "knowing and voluntary" depends on the "conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable." *Bakrac*, 164 F. App'x. at 823–24. "[W]aiver" of the jury trial "right must be meaningful." *LaMarca*, 995 F.2d at 1544. Because "the right of jury trial is fundamental," courts must "indulge every reasonable presumption against waiver." *Id.* (cleaned up). While the Eleventh Circuit has not decided which party bears the burden to show that a waiver was knowing and voluntary, most Circuits place the burden on the party seeking to enforce arbitration—here, the Authority and the Commission. *Bakrac, Inc.*, 164 F. App'x at 823 n.1.

---

[5] Additionally, to the extent the right to an Article III forum is waivable—as *Koveleskie*, 167 F.3d at 368, asserted and Serpe contests—Serpe did not waive that right by registering with the Authority for the same reason he did not waive his Seventh Amendment right: it is an unconstitutional condition. *See Terral*, 257 U.S. at 532.

Here, the factors point towards a conclusion that any jury-trial waiver—to the extent one took place—was neither knowing nor voluntary. Most importantly, registration with the Authority and agreement to its arbitration rules are compelled by Congress. 15 U.S.C. § 3054(d). Thus, Serpe had no bargaining power, nor were the terms of this agreement even negotiable given he otherwise would be forced to give up his entire thoroughbred training career. *See Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977); *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) ("central question" for procedural unconscionability under Florida law is "whether the consumer has an absence of meaningful choice in whether to accept the contract terms")

Further, to the extent the registration agreement contains a jury-trial waiver, it is inconspicuous. Registration occurs through the Authority's website. JSUMF ¶ 3. But the website refers and links only to HISA Rule 8000 series, JSUMF ¶ 5, which does not contain the rules for ADMC Program violations or even mention jury trials. *See generally* HISA Rule 8000 Series. And when waiver clauses are "set deeply and inconspicuously in [a] contract," the presumption against waiver is not overcome. *Hendrix*, 565 F.2d at 258. That is all the more true here, where Serpe—a thoroughbred lifer with no legal training—would have had to infer from the arbitration rules that he was unlikely to ever receive a jury trial in an enforcement action. Additionally, there was no separate arbitration agreement that Serpe had to sign to initiate his HIWU Arbitration. PSMF ¶ 12.

Defendants are expected to rely on *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1371 (11th Cir. 2005), which rejected the "knowing and voluntary" standard in the context of arbitration agreements. But *Caley* is inapposite because Serpe did not consent to private arbitration covered by the Federal Arbitration Act. HIWU arbitrations are the first step in a congressionally mandated administrative process for adjudicating violations of federal law. *See* 15 U.S.C. § 3058. Unlike in *Caley*, the Banned Substance Claim is not properly before an arbitral body such that the

34

Seventh Amendment does not apply. *See supra* Part III.A.

Even if *Caley* applies, Serpe's purported arbitration agreement is not enforceable under general contract principles because it is procedurally and substantively unconscionable, as well as illusory. *See Addit, LLC v. Hengesbach*, 341 So.3d 362, 366 (Fla. Dist. Ct. App. 2022); *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010). The Authority's mandatory arbitration of ADMC Program violations is procedurally unconscionable because there is "no opportunity for any meaningful negotiation" (it is statutorily mandated), and the applicable arbitration rules (Rule 7000 series) are not linked in the Covered Persons Agreement. *Addit*, 341 So.3d at 367; *see* JSUMF ¶ 5. It is also substantively unconscionable because the purported arbitration agreement is not mutually binding. *Addit*, 341 So.3d at 368. While Covered Persons are bound to arbitrate, the Authority can bring enforcement actions in federal court. 15 U.S.C. § 3054(j)(1). The Authority's civil litigation power paired with its unilateral ability to change the adjudication rules (15 U.S.C. § 3057(c), (e)) also makes the arbitration agreement illusory because it "impose[s] no obligation at all on" the Authority. *Princeton Homes*, 612 F.3d at 1331 (cleaned up); *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir. 2000) (agreement illusory where one party "reserved the right to" change the rules).

## IV. Serpe's Adjudication Should Be Permanently Enjoined

Because Serpe's entire HISA adjudication process was—and continues to be—unconstitutionally structured, this Court should permanently enjoin it from continuing, and enjoin the enforcement of Serpe's sanctions. To obtain a permanent injunction, "[a] plaintiff must demonstrate: (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved." *eBay Inc. v. MercExchange, LLC*, 547 U.S.

388, 391 (2006).

Serpe has satisfied all four permanent injunction factors. First, without an injunction, Serpe's ongoing subjection to the Commission Review and his sanctions would cause him irreparable injury. Serpe's suspension is denying him "significant economic and non-economic benefits" from horseracing wins and other honors, the loss of which are irreparable. *NFLPA v. NFL*, 598 F. Supp. 2d 971, 982 (D. Minn. 2008) (preliminarily enjoining suspension of NFL players for presence of banned substance); PSMF ¶ 35–38. The suspension also effectively ended his training business. HISA Rule 3229; PSMF ¶¶ 35–38. The forced closure of a business, or even the loss of a key component, constitutes an unquantifiable, irreparable injury. *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1307–09 (S.D. Fla. 2008).

He is also suffering an irreparable injury by being subjected "to an unconstitutionally structured decisionmaking process." *Axon*, 598 U.S. at 192. This injury will be "impossible to remedy once the proceeding is over." *Id.* at 191. This court previously concluded at the preliminary injunction stage that this was not an irreparable injury. ECF No. 65 at 25–27. But given that *Axon* recognized the ability to seek collateral relief for structural constitutional claims because the injury they cause "cannot be undone," an injunctive remedy must be available at summary judgment if he prevails on the merits. 598 U.S. at 191.

All of these injuries are also directly caused by the Authority's and the Commission's actions in violation of the private non-delegation doctrine and the Seventh Amendment. Because a private entity cannot exercise government decision-making power, the Authority's and HIWU's enforcement actions against Serpe were illegitimate, along with the sanctions that flowed from them. *See Consumers' Rsch.*, 606 U.S. at 692. And if the Seventh Amendment applies to the Banned Substance Claim, it is unlawful to adjudicate the entire claim, *including* the suspension

36

remedy, outside of an Article III court. *Jarkesy*, 603 U.S. at 140.

Second, given the irreparable nature of Serpe's injuries, there is no adequate legal remedy (i.e., money damages) that could satisfy them. *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981). Here, Serpe will "lose [his] rights not to undergo the complained-of agency proceeding[]," without an injunction, and that loss cannot be compensated with money. *Axon*, 598 U.S. at 192. Additionally, the non-economic benefits of horseracing wins and Serpe's effective loss of his business cannot be monetarily compensated. *See Deerfield Med. Ctr.*, 661 F.2d at 338; PSMF ¶¶ 35–38. Moreover, no damages are available from the Commission after-the-fact.[6] *See* 5 U.S.C. § 702.

The third and fourth factors—the balance of harms and the public interest—merge when the government is the opposing party. *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020). Because the Authority is a private entity, each factor is still addressed separately here.

The balance of harms weighs in Serpe's favor because he is being denied the individual protections afforded by "structural principles secured by the separation of powers." *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (cleaned up). Jury trials are the "surest barrier against arbitrary power." *United States v. ERR, LLC*, 35 F.4th 405, 409 (5th Cir. 2022) (cleaned up). Serpe was also denied the structural protection of a "presumptively disinterested" government agency making enforcement decisions about his case and instead was subject to a private entity "whose interests ... are adverse to [his] interests." *Carter Coal*, 298 U.S. at 311. The loss of these rights is on top of all the other irreparable harms Serpe is suffering. PSMF ¶¶ 35–38.

---

[6] Serpe has requested *twice* that the Commission stay his suspension (it unilaterally stayed the fine) based on additional issues and new evidence that merit Commission review. JSUMF ¶¶ 51, 55. But a stay would not be a remedy "as complete, practicable, and efficient" as a permanent injunction if Serpe prevails here. *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 281 (1909).

In contrast, an injunction here would simply require the Authority and the Commission to follow the law, given that the Court already would have decided Serpe's adjudication was unconstitutional. A requirement "merely to comply with federal law" favors the issuance of a permanent injunction. *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 700 F. Supp. 3d 1136, 1375 (N.D. Ga. 2023). Moreover, an injunction here could be limited to just Serpe's adjudication, and its implications would be bounded by the circumstances of Serpe's case. Regardless, the Authority will retain the authority to file civil actions to enforce its rules because that power is not at issue here. 15 U.S.C. § 3054(j).

Fourth, "the public has no interest in the enforcement of ... an unconstitutional statute." *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013); *see also KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

## CONCLUSION

For the foregoing reasons, Serpe respectfully requests that this Court enter final judgment for him on both of his claims, declare the HISA Adjudication a violation of the private non-delegation doctrine and the Seventh Amendment, and permanently enjoin HISA Adjudication and the enforcement of the sanctions imposed against him.

\* \* \*

38

DATED: February 6, 2026.

Respectfully submitted,

s/ *Oliver J. Dunford*
OLIVER J. DUNFORD
Pacific Legal Foundation
4400 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
(916) 503-9060
ODunford@pacificlegal.org

JOSHUA M. ROBBINS*
KERRY HUNT*
CHRISTOPHER CONDON*
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(202) 945-9524
JRobbins@pacificlegal.org
KerryHunt@pacificlegal.org
CCondon@pacificlegal.org

BRADFORD J. BEILLY
Bradford J. Beilly, P.A.
1144 S.E. 3rd Avenue
Ft. Lauderdale, FL 33316
Phone: (954) 763-7000
Fax: (954) 525-0404
Email: brad@beillylaw.com

*Counsel for Plaintiff Philip Serpe*
**admitted Pro Hac Vice*

39

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the Southern District of Florida using the CM/ECF system, which sent notifications of such filing to all registered CM/ECF users.

/s/ *Oliver J. Dunford*
OLIVER J. DUNFORD

40