**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No. 0:24-cv-61939-LEIBOWITZ

PHILIP SERPE,

Plaintiff,

v.

FEDERAL TRADE COMMISSION; AND HORSERACING INTEGRITY AND SAFETY AUTHORITY, INC.,

Defendants.

---

# DEFENDANT HORSERACING INTEGRITY AND SAFETY AUTHORITY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 1

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

I. THE COURT SHOULD DENY PLAINTIFF'S BELATED ATTEMPT TO ADD A FORFEITED ARTICLE III CLAIM .......... 4

A. Permitting Plaintiff's Proposed Amendment Would Sanction Undue Delay And Gamesmanship .......... 4

B. Defendants Would Be Prejudiced By Plaintiff's Belated Amendment .......... 6

C. Plaintiff's Proposed Addition Of A New Article III Claim Would Be Futile .......... 9

*1. Plaintiff forfeited his Article III claim before the FTC.* .......... 9

*2. Plaintiff's proposed Article III claim fails on the merits.* .......... 13

II. TO THE EXTENT ANY OF PLAINTIFF'S CLAIMS HAVE MERIT, VACATUR WOULD BE THE APPROPRIATE REMEDY .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**CASES:**

*AFL-CIO v. Chao*,
496 F. Supp. 2d 76 (D.D.C. 2007) ........ 15

*American Secs. Ass'n, Citadel Secs. LLC v. SEC*,
147 F.4th 1264 (11th Cir. 2025) ........ 15

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ........ 12

*Axon Enters., Inc. v. FTC*,
598 U.S. 175 (2023) ........ 4

*Black Warrior Riverkeeper, Inc. v. United States Army Corps of Eng'rs*,
781 F.3d 1271 (11th Cir. 2015) ........ 15

*Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) ........ 3

*Carr v. Saul*,
593 U.S. 83 (2021) ........ 11, 12

*Cockrell v. Sparks*,
510 F.3d 1307 (11th Cir. 2007) ........ 9

*Cresswell v. Sullivan & Cromwell*,
922 F.2d 60 (2d Cir. 1990) ........ 4

*Danneborg Rederi AS v. M/Y True Dream*,
146 F. Supp. 2d 1307 (S.D. Fla. 2001) ........ 7

*Feldman v. Allegheny Int'l, Inc.*,
850 F.2d 1217 (7th Cir. 1988) ........ 6

*Fort Howard Paper Co. v. Standard Havens, Inc.*,
901 F.2d 1373 (7th Cir. 1990) ........ 6

*Granfinaciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ........ 14

*Hester v. International Union of Operating Eng'rs*,
941 F.2d 1574 (11th Cir. 1991) ........ 4

*In re Engle Cases*,
767 F.3d 1082 (11th Cir. 2014) ........ 3, 4

*In re Luis Jorge Perez*,
No. 9420, 2024 WL 3824065 (F.T.C. Aug. 8, 2024)....................10, 12

*In re Piper Aircraft Corp.*,
244 F.3d 1289 (11th Cir. 2001) ....................8

*Intuit, Inc. v. FTC*,
170 F.4th 411 (5th Cir. 2026) ....................9, 13, 14

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221 (11th Cir. 2021) ....................7

*Kiakombua v. Wolf*,
498 F. Supp. 3d 1 (D.D.C. 2020)....................15

*Klayman v. Porter*,
No. 22-13025, 2023 WL 2261814 (11th Cir. Feb. 28, 2023) ....................7, 8

*Layfield v. Bill Heard Chevrolet Co.*,
607 F.2d 1097 (5th Cir. 1979) ....................6

*Mahon v. United States Dep't of Agric.*,
485 F.3d 1247 (11th Cir. 2007) ....................10, 11

*National Parks Conservation Ass'n v. Norton*,
324 F.3d 1229 (11th Cir. 2003) ....................12

*National Serv. Indus., Inc. v. Vafla Corp.*,
694 F.2d 246 (11th Cir. 1982) ....................5

*NLRB v. Starbucks Corp.*,
159 F.4th 455 (6th Cir. 2025) ....................13

*Reese v. Herbert*,
527 F.3d 1253 (11th Cir. 2008) ....................6

*Scott v. Horseracing Integrity & Safety Auth.*,
No. 2:25-cv-632, 2025 WL 2987598 (D.N.M. Oct. 22, 2025) ....................13

*Sea Island Comprehensive Healthcare Corp. v. United States Dep't of Health & Hum. Servs.*,
79 F. App'x 563 (4th Cir. 2003) ....................12

*SEC v. Jarkesy*,
603 U.S. 109 (2024)....................2, 9, 13

*Sidak v. United States Int'l Trade Comm'n*,
174 F.4th 151 (D.C. Cir. 2026)....................12

*Sims v. Apfel*,
530 U.S. 103 (2000) ........................................................................................................13

*Stern v. Marshall*,
564 U.S. 462 (2011) ........................................................................................................13

*Tolston v. City of Atlanta*,
723 F. Supp. 3d 1263 (N.D. Ga. 2024) ..........................................................................5

*Vanover v. NCO Fin. Servs., Inc.*,
857 F.3d 833 (11th Cir. 2017) ........................................................................................8

**OTHER AUTHORITIES:**

16 C.F.R.
§ 1.146(a)(1) ..................................................................................................................10
§ 1.146(d)(4) ..................................................................................................................10
§ 1.147(b)(1) ..................................................................................................................10

FED. R. CIV. P. 15(a) .........................................................................................................1

*In re Michael Hewitt*,
ALJ Decision, FTC Dkt. No. 9438 (Dec. 17, 2024) ......................................................10

Letter from D. John Sauer to Speaker Mike Johnson, Re: *Intuit, Inc. v. Federal Trade Commission*, No. 24-60040 (5th Cir.) (Jun. 9, 2026) ...........................................14

## INTRODUCTION

This is not how the case should have been litigated. As the Authority warned from the outset, Plaintiff has forced the parties and the Court to waste considerable resources litigating premature claims that, as he now acknowledges, have been "overtaken" by the agency proceedings that Congress set forth to review sanctions under the Horseracing Integrity and Safety Act. Nevertheless, in the interest of minimizing the expenditure of further resources, and given the extensive briefing that has already occurred on Plaintiff's Seventh Amendment and private-nondelegation claims, the Authority is willing to acquiesce to an amendment that converts those claims into challenges to the Federal Trade Commission's June 30 Final Order.

But this Court should draw the line at Plaintiff's bold attempt—almost two years into this litigation, after multiple preliminary injunction rulings and after summary judgment had been fully briefed and argued—to introduce a wholly new standalone Article III claim that, on Plaintiff's own theory, he could have brought all along but chose not to raise. Nothing in Federal Rule of Civil Procedure 15(a) warrants allowing a party to sit on a claim, wait to see how other allegations and parallel agency proceedings pan out, and then revamp its case by adding the brand-new claim after two years of active litigation. Because allowing Plaintiff to inject an Article III claim now would sanction undue delay and gamesmanship, would prejudice Defendants, and would be futile anyway, this Court should deny the motion for leave to amend insofar as it seeks to add proposed Count Three.

## BACKGROUND

The Authority presumes the Court's familiarity with the extensive factual and procedural background of this case and so provides only a summary of recent developments.

On June 2, 2026, this Court held oral argument on the parties' fully briefed cross-motions for summary judgment and indicated its intent to delay any decision until the Federal Trade

Commission ("FTC" or "Commission") issued its Final Order in Plaintiff's parallel agency proceeding. The same day, the Court ordered the parties to submit supplemental briefing on (i) whether Plaintiff had preserved a standalone Article III claim, (ii) whether Plaintiff seeks to amend his complaint, and (iii) the precise remedy sought for each of Plaintiff's claims. ECF No. 105. On June 25, 2026, Plaintiff submitted a supplemental brief in which he conceded that he "did not squarely raise a stand-alone Article III claim in his original complaint." ECF No. 111, at 2.

The Commission issued its Final Order on June 30, 2026, in which it reversed the ALJ's imposition of a fine but affirmed all other sanctions. *See* ECF No. 113-1 ("Final Order"). The Commission rejected each of Plaintiff's arguments. For example, the Commission explained that, because HIWU and the Authority are not state actors, the Seventh Amendment was not implicated by the HIWU arbitration. *See id.* at 9-11. And because neither the Administrative Law Judge ("ALJ") nor the Commission was "authorized to impose" a fine in the first instance, Plaintiff "never faced the prospect of having a monetary penalty imposed by a government actor, which would have triggered his Seventh Amendment right to a jury trial." *Id.* at 12.

The Commission also concluded that Plaintiff had forfeited (by failing to raise before the ALJ or to the Commission in a timely manner) claims that his adjudication violated (i) Article III, (ii) the private-nondelegation doctrine, and (iii) the Due Process Clause. *See* Final Order 6, 9, 11 & nn.92-93. The Commission further indicated that, even if each argument were not forfeited, Plaintiff would have been unlikely to prevail on any of them. As to Plaintiff's Article III claim, the Commission expressed "skeptic[ism]" that "*Jarkesy*'s reasoning [extends] beyond the Seventh Amendment to claims involving purely equitable relief." *Id.* at 9. Moreover, the Commission emphasized, "none of [Plaintiff]'s claimed common-law analogues are actually analogous." *Id.* at 9 n. 78; *see also id.* at 8 n.69 (rejecting analogies to action in debt, fraud, breach of contract, and

tortious interference). The Commission next explained that the Act "satisfies the private non-delegation doctrine," noting the "iron[y]" of Plaintiff's argument in this case given that "the Commission *sua sponte* granted review, demonstrating the active role [it] has taken in overseeing the Authority." *Id.* at 11 n.92. Finally, the Commission rejected the idea that the Authority violated Plaintiff's due process rights, both because the Authority is not a state actor and because "[t]he only 'consequence' [Plaintiff] faced as a result" of the conduct to which he objected "was a guarantee that the process would *not* violate his constitutional rights." *Id.* at 11 n.93.

On July 17, 2026, following a joint motion by the parties regarding Plaintiff's intent to seek to amend his complaint, the Court denied the parties' cross-motions for summary judgment without prejudice and issued a new briefing schedule. ECF No. 116. Pursuant to the Court's schedule, Plaintiff submitted a motion for leave to amend his complaint on July 31, 2026. *See* ECF No. 117. Plaintiff's request is twofold. First, he seeks to "updat[e] his existing claims to address the Final Order," *id.* at 1, and accordingly to "drop his arguments that *pre*-Final Order decisions violated the APA," ECF No. 118 ("Mot.") at 4. Second, Plaintiff asks to "add[] an Article III claim, pursuant to both the APA and the Supreme Court-recognized implied equitable cause of action for constitutional claims." ECF No. 117, at 1. The Authority opposes only the second aspect of Plaintiff's motion, which seeks leave to add proposed Count Three.

## **LEGAL STANDARD**

A motion for leave to amend is "appropriately *** denied '(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.'" *In re Engle Cases*, 767 F.3d 1082, 1108-1109 (11th Cir. 2014) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)). "Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a

complaint, *undue* delay may clearly support such a denial." *Id.* at 1109 (quoting *Hester v. International Union of Operating Eng'rs*, 941 F.2d 1574, 1578-1579 (11th Cir. 1991)). "The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." *Id.* at 1119 n.37 (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)).

## ARGUMENT

### I. THE COURT SHOULD DENY PLAINTIFF'S BELATED ATTEMPT TO ADD A FORFEITED ARTICLE III CLAIM

#### A. Permitting Plaintiff's Proposed Amendment Would Sanction Undue Delay And Gamesmanship

On Plaintiff's own account, he could have brought an Article III challenge from the very start of this litigation. *See* Mot. 13 ("Serpe's Article III claim *** challenges the power of HIWU and the Commission to adjudicate the Banned Substance Claim *at all*.") (citing *Axon Enters., Inc. v. FTC*, 598 U.S. 175, 192-193 (2023)). Under that theory, Plaintiff could have raised an Article III claim as early as October 17, 2024, when he filed his initial complaint in this Court. *See* ECF No. 1; *see also* ECF No. 1-2, at 2, Plaintiff's Letter to HIWU (Oct. 14, 2024) ("demand[ing] that HIWU *** commence this HISA enforcement action against [Plaintiff] in the United States District Court for the Southern District of Florida"). Whereas Plaintiff's private-nondelegation and Seventh Amendment claims depended on how the HIWU and FTC proceedings played out such that, as Plaintiff now concedes (and as Defendants warned from the beginning), those claims have been "overtaken by the Final Order," Mot. 1, Plaintiff argues that his proposed Article III claim is of a "structural constitutional nature" wholly collateral to the agency proceedings, *id*. at 11.

But Plaintiff did not include an Article III claim in his complaint. Now, as Plaintiff acknowledges, "[t]his case has gone on for nearly two years, and summary judgment is fully briefed" at great expense to Defendants (and to the Court's resources). ECF No. 111, at 4. At no

point during that time did Plaintiff seek to add his proposed Article III claim. On the contrary, Plaintiff deliberately chose not to do so: In late 2025, after this Court had ruled on two preliminary injunction motions and directed the parties to "submit a joint proposed schedule for this case," ECF No. 65, at 30, the parties conferred on next steps. Plaintiff floated the possibility of amending his complaint to add an Article III claim but decided against doing so. Instead, he sought (belatedly) to raise the issue before the FTC alone in December 2025 (months after the FTC had set forth the scope of its review), *see* ECF No. 84-9, at 3-4, while pushing for summary judgment in this Court on his private-nondelegation and Seventh Amendment claims only, *see* ECF No. 66 (Parties' Joint Proposed Schedule).

As that procedural history makes plain, Plaintiff—who "has been ably represented by counsel throughout these proceedings," ECF No. 84-18, at 3, FTC Order Denying in Part Appellant's Combined Motion (Feb. 4, 2026)—made the intentional choice to forgo an Article III claim here, seek a preliminary injunction (twice) on other grounds, and push for an "expedited" final summary judgment ruling concerning different claims. ECF No. 82. Only now, after Plaintiffs' two preliminary injunction requests were denied, summary judgment on his two claims was fully briefed and argued, and the FTC rejected his untimely attempt to inject the new constitutional claim into his agency proceedings, does Plaintiff request leave to add an Article III claim to this suit. That request comes far too late given that, according to Plaintiff's own theory of the claim, all "the facts supporting the proposed amendment were known at the time of the original pleading." *Tolston v. City of Atlanta*, 723 F. Supp. 3d 1263, 1289 (N.D. Ga. 2024) (alterations omitted) (quoting *National Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir. 1982)); *id.* at 1289-1290 (finding plaintiff's "undue delay in seeking amendment is an independent basis for denying the motion" where "he waited until 16 months into the litigation

before" seeking to amend); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) ("In *Layfield v. Bill Heard Chevrolet Co.*[, 607 F.2d 1097, 1099 (5th Cir. 1979) (per curiam)], we affirmed the denial of leave to amend where the plaintiff sought to raise an issue for the first time after the defendant had moved for summary judgment, noting that 'all of the facts relevant to the proposed amendment were known to the appellant at the time she filed her original complaint.'").

Plaintiff's request also asks this Court to turn a blind eye to the flip-flopping in his own litigation conduct. The parties have spent almost two years litigating whether a fine could be imposed, would be imposed, and was properly imposed, based on Plaintiff's own insistence that the availability of a fine was the crux of his primary claim. *See, e.g.,* ECF No. 65, at 18-19; ECF No. 83, at 28-29. Now that it is crystal clear Plaintiff "never faced the prospect of having a monetary penalty imposed by a government actor," Final Order at 12, he is attempting to pivot to a wholly new theory that the Banned Substance Claim "must be heard in an Article III court *irrespective of the availability of a fine*." Mot. 4 (emphasis added). That self-serving and whiplash-inducing pivot is reason enough to deny Plaintiff's motion as to his proposed Count Three. *See Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379 (7th Cir. 1990) ("[Rule] 15(a) 'is not a license for carelessness or gamesmanship.'") (quoting *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988)).

**B. Defendants Would Be Prejudiced By Plaintiff's Belated Amendment**

The Authority has expended significant resources litigating the only two constitutional claims Plaintiff has ever raised in this litigation, while litigating the same issues in parallel proceedings before the FTC. This suit has now proceeded through two rounds of preliminary injunction proceedings (plus argument) and full summary judgment briefing (plus argument). Had Plaintiff waited for the agency to take final action in the first place—as Defendants urged all

along—Defendants would not have had to expend those resources and would not now have to spend additional resources filing new summary judgment briefs to address the FTC's Final Order.

Allowing Plaintiff to add to that burden by forcing Defendants to litigate a wholly new constitutional claim that was available to him from the get-go and that he failed to exhaust before the FTC, *see infra* pp. 9-12, would undoubtedly prejudice Defendants. *See Danneborg Rederi AS v. M/Y True Dream*, 146 F. Supp. 2d 1307, 1316 (S.D. Fla. 2001) ("[D]efendants would be prejudiced by the change in theory because they had already exerted significant resources and expenses successfully challenging [an initial theory], and it would be unfair to go back and permit the plaintiff to proceed as if another theory had been asserted all along."). That prejudice is particularly acute given that Plaintiff's new Article III claim is a blatant attempt to circumvent the monetary fine issue that has been central to the parties' two-year dispute—*i.e.*, Plaintiff effectively asks for a re-do under a brand-new theory that "would squander all the resources the Court and the parties have spent litigating the constitutional questions" already in the case. ECF No. 111, at 5. Blessing that strategic move would not only harm Defendants but would also prejudice the Court, which "has already invested two years' worth of judicial resources in this case." Mot. 6

Plaintiff's only response is that Defendants would not be prejudiced because (1) he could bring his Article III claim in a separate suit and (2) his new Article III claim overlaps so substantially with his Seventh Amendment claim that allowing "it would have only a limited impact on this litigation." Mot. 5-8. Neither premise is correct.

*First*, Plaintiff cannot bring his proposed Article III claim in a new suit. "[T]he claim-splitting doctrine 'requires a plaintiff to assert all of his or her causes of action arising from a common set of facts in one lawsuit.'" *Klayman v. Porter*, No. 22-13025, 2023 WL 2261814, *3 (11th Cir. Feb. 28, 2023) (alterations omitted) (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d

1221, 1236 (11th Cir. 2021)). "To determine whether a plaintiff has improperly split his claims among lawsuits, [the Court must] examine '(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions.'" *Id.* (quoting *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841-842 (11th Cir. 2017)). Both criteria are plainly met here: Any subsequent suit would "involve the exact same parties," and there is no question that any new claims would "arise from the same nucleus of operative facts." *Id.*

Plaintiff himself seems to recognize the problem, since he asks in the alternative that this Court artificially dice his claims so that he might "cleanly challenge the Final Order in a separate lawsuit and avoid any argument by Defendants that Serpe cannot divide his APA claims between two separate cases." Mot. 4 n.1. But that proposal is no solution: Plaintiff himself urged that he brought his original claims under the APA. *See* ECF No. 96, at 7 n.9 (arguing "Serpe also raised each claim under the APA" because "[h]is ongoing suspension affirmed by an ALJ qualifies as final agency action") (citing ECF No. 1 ¶¶ 97-149). He cannot walk away from that choice now that his original APA claims have finally "bec[o]me ripe." Mot. 5. Moreover, the claim-splitting doctrine (like res judicata) bars raising in a successive suit not only claims actually raised in the first action, but also any claim that "*could have been* raised in that action." *Klayman*, 2023 WL 2261814, at *4 (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)). There is no dispute that Plaintiff can now raise his private-nondelegation and Seventh Amendment challenges to the Final Order in this case (even if those claims will fail for various reasons).

*Second*, Plaintiff is wrong to suggest that the "only new issue [raised by his proposed Article III claim] is whether the Banned Substance Claim is an equitable claim under Article III." Mot. 6. That question would be the start, not the end, of the necessary additional analysis. Even

if the Banned Substance Claim is equitable, the question would still remain whether Plaintiff is entitled to an Article III forum. While Defendants' public-rights arguments would carry over, the Commission correctly recognized that whether *Jarkesy*'s reasoning (on which Plaintiff's Article III claim relies) "extend[s] *** beyond the Seventh Amendment to claims involving purely equitable relief" is a matter of significant debate among federal courts. Final Order 9.

Indeed, although the Commission found properly that Plaintiff had waived the Article III claim by failing to timely raise it before the FTC, the Commission expressed "skeptic[ism] of [the] merits" of Plaintiff's Article III argument, noting that the only federal court of appeals to accept the premise of that argument did so in a "narrowly cabined" decision that has "[n]othing" to say about Plaintiff's claim. Final Order 9 (discussing *Intuit, Inc. v. FTC*, 170 F.4th 411, 420 (5th Cir. 2026)). Plaintiff's ask, then, is essentially that Defendants (and this Court) start from scratch litigating a complex issue on which there is very little, if any, guiding post-*Jarkesy* precedent. That reality belies Plaintiff's assurance that "the addition of a stand-alone Article III claim would require only brief discussions from the parties." ECF No. 111, at 5.

### C. <u>Plaintiff's Proposed Addition Of A New Article III Claim Would Be Futile</u>

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). That is the case here, twice over.

#### *1. Plaintiff forfeited his Article III claim before the FTC.*

Plaintiff tellingly "anticipates" a threshold fatal flaw, Mot. 11: Any Article III claim—whether raised in this lawsuit or a separate one—would fail because Plaintiff did not properly raise it before the FTC. "Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency."

*Mahon v. United States Dep't of Agric.*, 485 F.3d 1247, 1254 (11th Cir. 2007). FTC rules require an aggrieved person to (i) raise any objection to an Authority sanction in the arbitration, *see, e.g.*, 16 C.F.R. § 1.146(a)(1) (aggrieved party may not raise before the ALJ "any question of fact or law not presented to the Authority" through arbitration, "[e]xcept for good cause shown"); (ii) present it to the ALJ, *see id.* (application for ALJ review "must state *** the reasons for challenging the sanction," and "[e]ach issue must be plainly and concisely stated"); and (iii) include it in a timely application for Commission review, *id.* §§ 1.146(d)(4), 1.147(b)(1) ("person aggrieved" by ALJ decision may petition for review "within 30 days of the issuance" of the ALJ decision, and "[a]ny objection to any ruling by the [ALJ] or to any finding, conclusion, or a provision of the order in the decision of the [ALJ] that is not made a part of an appeal to the Commission will be deemed to have been waived").[1]

Plaintiff did *none* of those things, thus forfeiting the claim he now seeks to raise not just once but several times over. Conceding that he never raised his Article III objection to the Arbitrator or the ALJ, Plaintiff instead argues that the "structural constitutional nature" of the claim provides "good-cause" for his failure. Mot. 11 (quoting 16 C.F.R. § 1.146(a)(1)). But even if that good-cause exception were applicable, it would have excused Plaintiff's decision not to raise his Article III claim *to the arbitrator* only. Yet he also failed to raise that claim *to the ALJ*. *See* Final Order 9 & n.72. Plaintiff nowhere addresses that fact. So all of Plaintiff's arguments about

---

[1] The Commission consistently follows these rules, declining to review arguments not properly raised. *See, e.g.*, Decision of the Commission, *In re Luis Jorge Perez*, No. 9420, 2024 WL 3824065, at *4 (F.T.C. Aug. 8, 2024) (review of constitutional argument "not warranted" where appellant did not "present that argument to the ALJ or in his application for [Commission] review"); ALJ Decision 23, *In re Michael Hewitt*, FTC Dkt. No. 9438 (Dec. 17, 2024) ("[S]ince Hewitt did not present this argument in the IAP proceeding, it is presumptively nonreviewable." (citing 16 C.F.R. § 1.146(a)(1))).

whether "[t]he private HIWU arbitrator is not competent to resolve" the claim and about the supposedly "limited" nature of the private arbitrations are irrelevant. Mot. 11-13. They don't address his manifest (and dispositive) failure to raise the claim *to the ALJ*, for which he has no excuse at all.

In fact, Plaintiff eventually tried to raise his Article III claim to the Commission itself but did so in an obviously untimely manner. Plaintiff never filed an application for Commission review of the ALJ's decision. And when the Commission *sua sponte* granted review, he requested clarification as to the issues under review, noting that he had not "identified any error for appeal." Motion for Clarification and Extension of Time, ECF No. 62-1, at 1. After the Commission identified the issues on appeal—excluding any Article III claim—Plaintiff "waited months before raising [his Article III objection] to the Commission." Final Order 9. Because Plaintiff "forfeited" his Article III argument during the agency proceedings, *id.* at 9 & n.72, he cannot resurrect it now.

Setting his own forfeiture to the side, Plaintiff next argues that the Eleventh Circuit's "policy reasons for applying issue exhaustion" do not apply. But that is not right, either. Plaintiff relies on *Carr v. Saul*, 593 U.S. 83 (2021), to argue that "agency adjudications are generally ill suited to address structural constitutional claims." Mot. 11-12. In the informal administrative proceedings in *Carr*, however, there was no adverse party "before the ALJ to oppose the claim," and the ALJ was tasked with "investigat[ing] the facts and develop[ing] the arguments both for and against granting benefits." 593 U.S. at 90-91. By contrast, where, as here, "the parties are expected to fully develop the issues during the course of an adversarial administrative proceeding, the rationale for requiring issue exhaustion is at its strongest." *Mahon*, 485 F.3d at 1255; *id.* (deeming process adversarial where party can present or controvert evidence and submit written and oral arguments). Given that the agency proceedings in this case look nothing like the informal

ALJ proceedings in *Carr*, the mere fact that Plaintiff's unexhausted claim is a "structural constitutional challenge" hardly "tip[s] the scales decidedly against imposing an issue-exhaustion requirement." Mot. 13 (alteration in original) (quoting *Carr*, 593 U.S. at 92); *see, e.g.*, *Sea Island Comprehensive Healthcare Corp. v. United States Dep't of Health & Hum. Servs.*, 79 F. App'x 563, 565 (4th Cir. 2003) (deeming due process argument waived because plaintiff "failed to raise it before the agency" and noting "the importance of exhausting administrative remedies even when the claim has a constitutional focus"). That is especially true here: The FTC has previously addressed constitutional questions, *see, e.g., In re Luis Jorge Perez*, 2024 WL 3824065, at *3 n.7 & *4 (addressing vagueness and due process arguments), and Plaintiff himself repeatedly asked the agency to do so in this case.

Plaintiff is also incorrect in urging that this Court can ignore his exhaustion problem under the APA because he can fall back on an equitable cause of action. *See* Mot. 11 n.2. Whatever the availability of an equitable cause of action in the *absence* of final agency action, *see National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003), there can be no question that the APA displaces any equitable cause of action once an agency has taken final action, *see Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."); *see also Sidak v. United States Int'l Trade Comm'n*, 174 F.4th 151, 160 (D.C. Cir. 2026) (suggesting that, where "judicial review after final agency action is an adequate remedy, [plaintiff] cannot maintain any implied claim in equity"). To conclude otherwise would allow litigants to circumvent the APA's requirements and limits in virtually every case. In any event, Plaintiff never explains why the same issue-exhaustion considerations described above

would not bear equally on any equitable claim. *See Sims v. Apfel*, 530 U.S. 103, 108 (2000) ("[W]e have imposed an issue-exhaustion requirement even in the absence of a statute or regulation.").

2. *Plaintiff's proposed Article III claim fails on the merits.*

The addition of Plaintiff's proposed Article III claim would be futile for the additional reason that it fails on the merits. Plaintiff pegs the "potential[] success[]" of his new claim on the Fifth Circuit's decision in *Intuit, Inc. v. FTC*, 170 F.4th 411 (5th Cir. 2026), which "extended *Jarkesy*'s reasoning beyond the Seventh Amendment to claims involving purely equitable relief," Final Order 9. But *Intuit* is both wrong and off point.

Contrary to Plaintiff's (and the Fifth Circuit's) view, "nothing in *Jarkesy* displaced an administrative agency's ability to impose equitable remedies, consistent with their statutory authority." *NLRB v. Starbucks Corp.*, 159 F.4th 455, 474 (6th Cir. 2025); *see also Scott v. Horseracing Integrity & Safety Auth.*, No. 2:25-cv-632, 2025 WL 2987598, at *9 (D.N.M. Oct. 22, 2025) ("Nothing in *Jarkesy* limited agencies' power to seek civil fines for suits without a common law mirror or to pursue equitable remedies."). That is because, as the Supreme Court explained in *Jarkesy*, the "hallmark *** in determining if a suit concerns private rights," such that it "may not be removed from Article III courts," is "whether it 'is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'" *SEC v. Jarkesy*, 603 U.S. 109, 127-128 (2024) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). Plaintiff's theory would render superfluous the nearly ten pages of analysis the Supreme Court spent on exactly that question, separate and apart from its antecedent threshold Seventh Amendment discussion. *See id.* at 132-140 (concluding that, because SEC's penalty action "target[s] the same basic conduct as common law fraud, employ[s] the same terms of art, and operate[s] pursuant to similar legal

principles," it "involves a 'matter[] of private rather than public right'") (fourth alteration in original) (quoting *Granfinaciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989)).

Regardless, even assuming the private-right rule applies to actions in equity, for the reasons the Authority has previously explained, the Banned Substance Claim falls comfortably within the public-rights exception. *See* ECF No. 88, at 31-39. Plaintiff's newly raised analogies to "equitable action[s] in deceit[,] *** 'unfair competition,'" or "equitable fraud," Mot. 8-9, all fail for the same reason that his prior fraud-based analogies do:

> [Plaintiff] is not being punished for lying to the Authority, for breaking 'a promise to ride a fair race,' or for 'intentionally undermin[ing] the race's integrity.' He is being punished because of the amount of a drug found in his horse's blood. His promises, state of mind, and intentions are irrelevant to that claim.

Final Order 8 n.69 (alteration in original). As a result, "[n]othing" in *Intuit,* which focused "narrowly" on historical evidence concerning actions "policing unfair methods of competition," "would suggest that [Plaintiff] would have been able to prevail on [his Article III] argument had he raised it properly." *Id.* at 9; *cf.* Letter from D. John Sauer to Speaker Mike Johnson, Re: *Intuit, Inc. v. Federal Trade Commission,* No. 24-60040 (5th Cir.) (Jun. 9, 2026), *available at* https://www.justice.gov/oip/media/1445401/dl?inline (declining to seek certiorari in *Intuit* because "[t]he Fifth Circuit's decision *** is narrow in scope" and "does not address the FTC's authority to issue cease-and-desist orders prohibiting other types of unfair or deceptive acts or practices, or cease-and-desist orders prohibiting unfair methods of competition," and because "the broader significance of the distinction between penalties and equitable remedies *** ha[d] not been fully developed in th[at] litigation").

## II. TO THE EXTENT ANY OF PLAINTIFF'S CLAIMS HAVE MERIT, VACATUR WOULD BE THE APPROPRIATE REMEDY

For each of his claims, Plaintiff seeks declaratory relief, a permanent injunction, and vacatur of the Final Order. Mot. 13. For the reasons just explained, *see supra* pp.12-13, Plaintiff's

only path to review at this stage is the APA. So, to the extent this Court finds any of Plaintiff's claims meritorious, the proper remedy is vacatur, which would obviate the need for injunctive or declaratory relief. *See American Secs. Ass'n, Citadel Secs. LLC v. SEC*, 147 F.4th 1264, 1278 (11th Cir. 2025) ("[V]acatur *** is the ordinary APA remedy.") (alteration and ellipsis in original) (quoting *Black Warrior Riverkeeper, Inc. v. United States Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015)); *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 50 (D.D.C. 2020) ("In essence, a vacatur order takes the unlawful agency action 'off the books[.]'") (alteration in original) (quoting *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 92 (D.D.C. 2007)).

## CONCLUSION

For the foregoing reasons, the Authority respectfully requests that this Court deny in part Plaintiff's motion for leave to amend his complaint, insofar as Plaintiff seeks to add the Article III claim proposed as Count Three.

Respectfully submitted,

s/ *Johnny P. ElHachem*

Johnny P. ElHachem (FL Bar No.: 1015837)
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Phone: 305-789-7583
Fax: 305-789-7799
Email: johnny.elhachem@hklaw.com

Pratik A. Shah
*Admitted Pro Hac Vice*
Lide E. Paterno
*Admitted Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006
Phone: 202-887-4000
Fax: 202-887-4288

John C. Roach
*Admitted Pro Hac Vice*
RANSDELL ROACH & ROYSE, PLLC
176 Pasadena Drive, Building One
Lexington, KY 40503
Phone: 859-854-3672
Fax: 859-276-4500

*Counsel to Horseracing Integrity and Safety Authority, Inc.*

Dated: August 14, 2026