**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No. 0:24-cv-61939-LEIBOWITZ

PHILIP SERPE,

Plaintiff,

v.

FEDERAL TRADE COMMISSION; AND
HORSERACING INTEGRITY AND
SAFETY AUTHORITY, INC.,

Defendants.
_____________________________________/

**DEFENDANT FEDERAL TRADE COMMISSION'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. Plaintiff has unduly delayed amending his complaint. ........ 3

II. Plaintiff's belated amendment improperly attempts to avoid an adverse ruling and circumvent party-presentation principles ........ 5

III. Plaintiff's rationale for amendment relies on improper claim splitting ........ 6

IV. Amendment would substantially prejudice Defendants ........ 8

V. Amendment is futile ........ 9

VI. Defendants' partial consent does not support the addition of an Article III claim ........ 11

VII. Any relief should be tailored to redress Plaintiff's injury. ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Cases**

*Burger King Corp. v. Weaver*,
169 F.3d 1310 (11th Cir. 1999) .......... 5

*Carmen-Owens v. City of Jacksonville*,
No. 3:24-cv-1240, 2025 WL 4666292 (M.D. Fla. July 1, 2025) .......... 2, 5

*Carr v. Saul*,
593 U.S. 83 (2021) .......... 9

*Carruthers v. BSA Advertising, Inc.*,
357 F.3d 1213 (11th Cir. 2004) .......... 5

*Clark v. Sweeney*,
607 U.S. 7 (2025) .......... 6, 10

*Curtis v. Citibank N.A.*,
226 F.3d 133 (2d Cir. 2000) .......... 7

*Dannebrog Rederis AS v. M/Y True Dream*,
146 F. Supp. 2d 1307 (S.D. Fla. 2001) .......... 2, 4

*Faser v. Sears, Roebuck & Co.*,
674 F.2d 856 (11th Cir. 1982) .......... 2

*Gill v. Whitford*,
585 U.S. 48 (2018) .......... 12

*Hales v. Cook*,
No. 1:24-cv-00045, 2025 WL 3540025 (N.D. Fla. Jan. 17, 2025) .......... 2

*Ibarra v. Swacina*,
628 F.3d 1269 (11th Cir. 2010) .......... 9

*Intuit, Inc. v. FTC*,
170 F.4th 411 (2026) .......... 2, 12

*Jolley v. United States*,
549 F. Supp. 3d 1 (D.D.C. 2021) .......... 10

*Katz v. Gerardi*,
655 F.3d 1212 (10th Cir. 2011) .......... 6, 7

*Lowe's Home Ctrs., Inc. v. Olin Corp.*,
313 F.3d 1307 (11th Cir. 2002) .......... 5

*Mahon v. U.S. Dep't of Agric.*,
485 F.3d 1247 (11th Cir. 2007) ........ 10

*Margolin v. Nat'l Ass'n of Immigration Judges*,
146 S. Ct. 1285 (2026) ........ 6

*Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*,
342 F.3d 1281 (11th Cir. 2003) ........ 5

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ........ 12

*Poole v. Wichard S.A.S.*,
No. 2:19-cv-02057, 2022 WL 2903400 (11th Cir. July 22, 2022) ........ 5

*Reese v. Herbert*,
527 F.3d 1253 (11th Cir. 2008) ........ 2

*Rumbough v. Comenity Cap. Bank*,
748 Fed. Appx. 253 (11th Cir. 2018) ........ 7, 8

*United States v. L.A. Trucker Truck Lines, Inc.*,
344 U.S. 33 (1952) ........ 9

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ........ 6

*Vanover v. NCO Financial Services, Inc.*,
857 F.3d 833 (11th Cir. 2017) ........ 6, 7

**Statutes**

5 U.S.C. § 706(2) ........ 8

15 U.S.C. § 3051 ........ 1

15 U.S.C. § 3058 ........ 9

15 U.S.C. § 3058(c)(1) ........ 10

**Rules**

Fed. R. Civ. P. 1 ........ 9

Fed. R. Civ. P. 15(a) ........ 4

**Regulations**

16 C.F.R. § 1.146(a)(1) ........ 1

## INTRODUCTION

Plaintiff seeks leave to amend his complaint to add an Article III claim. He previously contemplated amending his complaint to add an Article III claim in November 2025, but decided against doing so. Now, over eight months later and nearly two years into this litigation, after summary judgment briefing and argument have been completed, he proposes the same amendment. The Court should reject Plaintiff's attempt to secure a second bite at the apple because of his unexplained and unjustified delay when amendment would prejudice Defendants and be futile. The Court should deny Plaintiff's motion for leave.

## BACKGROUND

Plaintiff filed his complaint on October 17, 2024, bringing claims for violation of the private nondelegation doctrine and the Seventh Amendment. *See* Compl., ECF No. 1. While Plaintiff's administrative proceedings under the Horseracing Integrity and Safety Act ("Act"), 15 U.S.C. § 3051, *et seq.*, were ongoing before the arbitrator, Federal Trade Commission ("FTC") administrative law judge ("ALJ"), and the Commission, Plaintiff pushed to litigate his claims in district court, rather than await a final agency decision. Over the past two years, the parties have litigated two motions for preliminary injunction, completed multiple rounds of supplemental briefing, and briefed and argued summary judgment on Plaintiff's private nondelegation and Seventh Amendment claims. *See* ECF Nos. 10, 26, 27, 29, 45, 46, 48, 49, 50, 55, 56, 57, 65, 82, 83, 87, 88, 89, 90, 96, 101, 102, 111.

In November 2025, before summary judgment, Plaintiff's counsel contemplated amending the complaint to add an Article III claim. *See* Ex. A (email from Plaintiff's counsel dated November 23, 2025, proposing amendment and attaching proposed amended complaint adding Article III claim); Ex. B at 33-37 (proposed amended complaint adding Article III claim). Plaintiff ultimately determined not to amend the complaint, and instead, the parties proceeded expeditiously to summary judgment. *See* Joint Scheduling Report, ECF No. 66 (parties jointly proposing to stipulate to the factual record and move to summary judgment).

The parties proceeded to fully brief summary judgment, and at the summary judgment hearing, counsel for the parties argued the claims plaintiff had chosen to pursue: the private nondelegation

claim and the Seventh Amendment claim. During the argument, the Court asked questions about an Article III theory and a recent Fifth Circuit Article III case, *Intuit, Inc. v. FTC*, 170 F.4th 411 (2026). *See, e.g.*, Summ. J. Hearing Tr. at 11:18-20; 23:10-24; 24:1; 26:13-25; 41:4-13; 43:21-22. Counsel for the Horseracing Integrity and Safety Authority ("Authority") emphasized that there is no Article III claim in this case, *id.* at 41:25-42:1, and urged against infringing party-presentation principles, *see id.* 42:2-18. The Court ordered the parties to brief whether an Article III claim was raised or preserved in Plaintiff's original pleading, or whether Plaintiff intended to seek leave to amend. *See id.* 84:10-24; ECF No. 105.

Plaintiff filed a supplemental brief conceding that he had not preserved a standalone Article III claim and confirming that he intended to seek leave to amend to add one to his complaint. *See* ECF No. 111. On July 31, 2026, Plaintiff filed his motion for leave to amend the complaint, which included a proposed complaint making substantial changes throughout the complaint, and adding a new claim for violation of Article III. Mem. In Supp. of Pl.'s Mot. for Leave to Amend Compl., ECF No. 118 ("Pl.'s Mot.").

**LEGAL STANDARD**

"[T]hough leave to amend is 'freely given when justice so requires,' it is 'not an automatic right.'" *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (quoting Fed. R. Civ. P. 15(a); *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982)). "A district court may . . . deny such leave where there is substantial ground for doing so, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* (citations omitted). "[L]eave can be rightly denied at times," such as "when amendments are filed late in the litigation due to the plaintiff's lack of due diligence, which can cause prejudice and undue delay." *Carmen-Owens v. City of Jacksonville*, 2025 WL 4666292, at *2 (M.D. Fla. July 1, 2025). "Of the potential grounds on which leave can be denied, '[p]erhaps the most important factor . . . and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading.'" *Hales v. Cook*, 2025 WL 3540025, at *2

(N.D. Fla. Jan. 17, 2025) (quoting *Dannebrog Rederis AS v. M/Y True Dream*, 146 F. Supp. 2d 1307, 1313 (S.D. Fla. 2001)).

## ARGUMENT

### I. Plaintiff has unduly delayed amending his complaint.

The Court should reject Plaintiff's motion for leave to amend for several reasons. The first is obvious: Plaintiff unduly delayed amending his complaint to add an Article III claim. Plaintiff filed this action on October 17, 2024, and filed his motion for leave to amend on August 1, 2026—nearly two years later. *See* Compl., ECF No. 1. In the interim, the parties have litigated two motions for a preliminary injunction, submitted numerous rounds of supplemental briefing, and fully briefed and argued cross-motions for summary judgment. Plaintiff had ample time to amend his complaint, and in fact, Plaintiff expressly contemplated amending his complaint to add an Article III claim before summary judgment. *See* Ex. A (email from Plaintiff's counsel dated November 23, 2025, proposing filing amended complaint); Ex. B (proposed amended complaint adding Article III claim). Plaintiff declined to add that claim so that the parties could expeditiously brief summary judgment. Joint Scheduling Report.

Attempting to justify this delay, Plaintiff's motion contradicts itself. It argues that the Commission's final order reset the clock on timely amendment because his Article III claim only became available when that order issued, *see* Pl.'s Mot. at 3-6, but also that he was not required to raise an Article III claim in those administrative proceedings because the Act does not require issue exhaustion and Article III claims are not the kind of claims that need to be raised during administrative proceedings, *see id.* at 11-13; *id.* at 13 ("These factors all presume that the administrative process could be used to resolve a claim before judicial review. But again, that is not the case for Serpe's Article III claim that challenges the power of HIWU and the Commission to adjudicate the Banned Substances Claim *at all*."). Plaintiff can't have it both ways. At a minimum, he either had to timely raise his Article III claim before this Court, or he had to timely raise it in his administrative proceedings—in no world can he invoke his failure to raise an Article III claim in his administrative proceedings as a justification

for his delay in raising one in his district court proceedings.

Further, although Plaintiff claims that the Article III claim is timely because he "seeks to amend his complaint to incorporate the Article III claim immediately after the Commission's Final Order 'altered the landscape' of this case," Pl.'s Mot. at 7, Plaintiff has cited no actual reason for his delay, nor did the Commission's order alter the landscape of the appeal the arbitrator decided more than a year ago. Plaintiff believed he could bring that claim at least as early as November 2025. *See* Exs. A, B. And by the terms of his own argument, Plaintiff could have brought this claim when he filed his original complaint. *See* Pl.'s Mot. at 8 ("Serpe's existing Seventh Amendment claim already raises most of the Article III arguments."); *see id.* at 8-9 (explaining that the Banned Substance Claim initiated against Plaintiff had to be brought from the start in an Article III court because the claim "is subject to Article III's exclusive jurisdiction because the claim is both legal and equitable"). Moreover, because Plaintiff does not believe he must bring an Article III claim under the APA, by his own argument, he need not have awaited the Commission's final order. *See id.* at 8 ("The Eleventh Circuit has also recognized that constitutional challenges to agency action may be brought alongside APA claims, which Serpe does here with his parallel implied equitable cause of action."); *id.* at 11 n.2 ("Plaintiffs may bring equitable constitutional challenges to agency action even when there is no APA claim available, much less an unexhausted issue."). Indeed, he did not properly raise his Article III claim in his administrative proceedings. *See id.* at 11-13. Therefore, under his own theory of his claim, Plaintiff could have brought his Article III claim in his original complaint, and the Commission's final order did not change the landscape of this case in any way relevant to the Article III claim. That claim is not "newly available," and his justification does not excuse his delay.

The only other reason Plaintiff cites for his delay is that he has not previously sought leave to amend, so "he could not have previously failed to cure deficiencies." *Id.* at 7. In other words, Plaintiff has cited delay as his reason for delay. Of course, that circular reasoning does not justify amendment. And as noted, Plaintiff knew of this supposed deficiency as early as November 2025 and does not explain why it took him eight months and a full round of summary judgment briefing and argument

before he tried to cure it. *See also* Fed. R. Civ. P. 15(a) (amendment as of right to cure deficiencies within 21 days).

At bottom, Plaintiff has provided no actual reason for delaying two years before trying to bring an Article III claim, and "such unexplained tardiness constitutes undue delay" warranting denial of his motion for leave to amend. *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004); *see also Maynard v. Bd. of Regents of Div. of the Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (affirming denial of leave to amend where amendment was delayed and "there seem[ed] to be no good reason why [plaintiff] could not have made the motion earlier"); *Poole v. Wichard S.A.S.*, 2022 WL 2903400, at *3 (11th Cir. July 22, 2022) (affirming denial of leave to amend where plaintiff "failed to provide an adequate explanation for his undue delay in seeking leave to amend"); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (affirming denial of leave to amend to add new claims where the plaintiff delayed in seeking leave to amend, offered "no justification for his delay").

## II. Plaintiff's belated amendment improperly attempts to avoid an adverse ruling and circumvent party-presentation principles.

Plaintiff's failure to bring his Article III claim in a timely manner is not merely attributable to a lack of diligence (which alone favors denial of leave to amend). *See Carmen-Owens*, 2025 WL 4666292, at *2. Plaintiff's delay also reflects his intent to "avoid an impending adverse summary judgment," *Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307 (11th Cir. 2002), and circumvent party presentation principles—neither of which furthers the interest of justice.

As explained, Plaintiff contemplated amending his complaint to add an Article III claim prior to moving for summary judgment but decided against it. Plaintiff changed his mind only after the Court asked questions about Article III and the Fifth Circuit's recent decision in *Intuit* during summary judgment oral argument. *See supra.* p. 2. Seeking leave to amend his complaint to add an Article III claim, now, months after summary judgment, thus suggests that Plaintiff either doubts his ability to prevail on his Seventh Amendment claim, or believes that his odds of prevailing are better on the theory raised by the Court than on those raised by his counsel. But "[f]ederal courts adhere to the

principle of party presentation." *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026). "That principle—the rule that points not argued will not be considered—distinguishes our adversarial system of justice from an inquisitorial one." *Id.* (citation modified). Accordingly, "[t]he parties frame the issues for decision while the court serves as neutral arbiter of the matters the parties present." *Clark v. Sweeney*, 607 U.S. 7, 10 (2025) (citation modified); *id.* ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Margolin*, 146 S. Ct. at 1288 ("Because courts are essentially passive instruments of government, we rely on the parties to frame the issues for decision and decide only the questions presented." (citation modified)). The Supreme Court has cautioned against court-suggested theories of relief, at times reversing decisions premised on "an argument suggested by the panel," rather than the parties' presentations. *See United States v. Sineneng-Smith*, 590 U.S. 371, 379 (2020); *see also Margolin*, 146 S. Ct. at 1288 (holding the "Fourth Circuit violated the party-presentation principle when it decided a case different from the one respondent advanced" (citation modified)). Plaintiff is asking this Court to do just the opposite.

Accordingly, there is no basis to permit addition of an Article III claim based on Plaintiff's conscious choice not to raise it earlier and attempt to avoid an adverse summary judgment decision.

**III. Plaintiff's rationale for amendment relies on improper claim splitting.**

Throughout his brief, Plaintiff claims he is "entitled" and has the "undisputed right" to file "an entirely new lawsuit," where he could bring an Article III claim against his HISA adjudication, and therefore, the Court should just let him bring that claim here in the interest of efficiency. Pl.'s Mot. at 5; *see, e.g., id.* at 4 n.1, 5-6. Plaintiff is wrong. Under the claim-splitting doctrine, Plaintiff is not entitled to a second bite at the apple, as any second suit clearly would be barred by binding Eleventh Circuit precedent. Therefore, no efficiency rationale supports his belated proposed amendment.

In *Vanover v. NCO Financial Services, Inc.*, 857 F.3d 833, 840-43 (11th Cir. 2017), the Eleventh Circuit adopted the well-established claim-splitting doctrine. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Id.* (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). "By spreading claims around in multiple

lawsuits in other courts or before other judges, parties waste scarce judicial resources and undermine the efficient and comprehensive disposition of cases." *Id.* (citation omitted); *see also Curtis v. Citibank N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."). "Indeed, it is well settled that a plaintiff may not file duplicative complaints in order to expand their legal rights." *Vanover*, 857 F.3d at 841 (citation modified). "The claim-splitting doctrine thereby ensures that a plaintiff may not split up his demand and prosecute it piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Id.* (citation modified). "The claim-splitting doctrine thus ensures fairness to litigants and conserves judicial resources." *Id.* (citation modified).

The Eleventh Circuit adopted a two-factor test for assessing whether improper claim-splitting exists: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id.* at 842. "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* "A separate lawsuit will only be permitted if it raises new and independent claims, not part of the previous transaction, based on the new facts." *Rumbough v. Comenity Cap. Bank*, 748 Fed. Appx. 253, 255 (11th Cir. 2018) (citation modified).

Application of this test to Plaintiff's case would straightforwardly preclude any second suit seeking to correct mistakes in this lawsuit. Any suit would be brought against the same Defendants: the Authority and the FTC. *See Vanover*, 857 F.3d at 842 (affirming district court's claim-splitting analysis where parties were "identical"). And the case would arise from the exact same transaction or series of transactions and be based on the same nucleus of operative facts: Plaintiff's administrative proceedings for his Banned Substance Violation under the Act. *See id.* (affirming district court's claim splitting analysis where "the factual basis for both lawsuits [were] related in time, origin, and motivation, and they form a convenient trial unit"); *see also* Pl.'s Mot. at 1 (explaining his "Article III claim . . . substantially overlaps with his existing Seventh Amendment claim").

*Vanover* also made clear that the cause of action is irrelevant to the claim-splitting analysis—there, the new lawsuit included "two new causes of action," but because those "claims ar[o]se out of the same transactional nucleus of facts . . . . the addition of the separate causes of action . . . d[id] not prevent application of the claim-splitting doctrine." 857 F.3d at 843. The court explained that "[t]o rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation[.]" *Id.* Nor does it matter that Plaintiff's would-be new claim would be under the APA. His Article III arguments were not even properly presented to the Commission, so any effort to link this claim to the Commission's final order would fail. *See infra.* At any rate, Plaintiff does not seek to bring his Article III claim only under the APA—he also invokes an equitable cause of action. *See* Pl.'s Mot. at 4 ("This claim is based on 5 U.S.C. § 706(2) and an implied equitable cause of action."). And he apparently views the Commission's final order as irrelevant to that claim. *See id.* at 11 n.2 ("Exhaustion is relevant only to Serpe's Article III claim under the APA. Plaintiffs may bring equitable constitutional challenges to agency action even when there is no APA claim available, much less an unexhausted issue.").

Therefore, Plaintiff's contention that he is entitled to bring an Article III claim by separate suit is incorrect, and that premise provides no justification for Plaintiff's belated effort to amend his complaint here.

## IV. Amendment would substantially prejudice Defendants.

Amendment would also substantially prejudice Defendants. The government has expended substantial time and expense litigating this case over the past two years, all while arguing that Plaintiff should have awaited a final Commission decision before bringing his claims. Still, Plaintiff rejected that suggestion at every turn, bringing not one, but two motions for preliminary injunction, and pressing to summary judgment despite Defendants' suggestion that the briefing await a final agency decision. Forcing Defendants to litigate this case before, during, and after the conclusion of his administrative proceedings on an ever-changing factual record has expended substantial public funds, and the government should not be forced to waste additional resources to defend a claim Plaintiff

contemplated bringing last year before opting against doing so. This entire action has run contrary to the orderly and efficient process contemplated by Congress in the Act. *See* 15 U.S.C. § 3058. Plaintiff should not be permitted to start the litigation over with a brand-new claim, without providing any reason why he did not bring that claim earlier, at substantial further public expense. *Cf.* Fed. R. Civ. P. 1 ("These rules . . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

And perhaps even more problematically, permitting Plaintiff's wasteful tactics here could encourage other HISA plaintiffs to follow suit. A ruling permitting Plaintiff to amend his complaint now to add a new claim that, on his own theory, he could have brought from the very beginning would encourage copycats in other HISA litigation going forward.

**V. Amendment is futile.**

Even assuming that an Article III claim became available only upon the issuance of the Commission's final decision (which as explained above, Plaintiff's own motion contradicts), Plaintiff's claim would be futile for failure to exhaust.

As a general matter, "judicial review is not available until an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Ibarra v. Swacina*, 628 F.3d 1269 (11th Cir. 2010); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body has not only erred but has erred against objection made at the time appropriate under its practice."); *Carr v. Saul*, 593 U.S. 83, 88 (2021) ("Administrative review schemes commonly require parties to give the agency an opportunity to address an issue before seeking review of that question."). More specifically, Plaintiff should have exhausted his Article III claim for all the reasons he was required to exhaust his Seventh Amendment claim. *See* FTC MSJ at 10-14, ECF No. 90 (citing APA principles of review and the relevant Congressional process for HISA adjudications, *see* 15 U.S.C. § 3058); *see also Jolley v. United States*, 549 F. Supp. 3d 1, 5-6 (D.D.C. 2021) (holding Article III claim had to be channeled through

administrative review process before it was subject to review in district court).

Plaintiff failed to do so, however, and he did not properly advance his Article III claim before the arbitrator, the FTC administrative law judge ("ALJ"), or the Commission in his agency proceedings. *See In the Matter of Philip Serpe*, FTC Docket No. 9441, Notice of Appeal and Application for Review (July 15, 2025); Decision of the Commission on Review Under 15 U.S.C. § 3058(c)(1) at 9 (June 30, 2026) (concluding Serpe "did not raise the [Article III] argument before the ALJ and waited months before raising it to the Commission; he has thus forfeited the argument")). His Article III claim is therefore futile for his failure to exhaust. *See Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1254-55 (11th Cir. 2007) ("Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in a timely fashion before an administrative agency." (citation omitted)).

Plaintiff attempts to invoke a "good cause exception" to excuse his failure to exhaust. There are several issues with his arguments. First, he cites an FTC regulation creating a good cause exception by which an aggrieved party may present to the FTC ALJ facts and law not presented to the Authority. *See* Pl.'s Mot. at 11 (citing 16 C.F.R. § 1.146(a)(1)). This exception, by its terms, says nothing about this *district court's* ability to consider unexhausted issues. *See* 16 C.F.R. § 1.146(a)(1) (section titled "Review of civil sanction by an Administrative Law Judge" providing that any application for review filed with an ALJ, "[e]xcept for good cause shown, no assignment of error by the aggrieved party may rely on any question of fact or law not presented to the Authority").[1] As Plaintiff cites no other legal basis for a good cause exception, the majority of his analysis is irrelevant to his failure to exhaust.

Where his arguments veer into *Axon* territory, *see* Pl.'s Mot. at 11, *id.* n.2, or claim that the agency adjudication could not have decided his Article III claim in the first place, *see id.* at 12, they sidestep the actual analysis required to make that showing, but also become completely untethered from his explanations for delay. If Plaintiff believes he did not need to bring this claim through his

[1] Nor did Plaintiff attempt to invoke this regulatory good cause exception at the time it was available before the FTC ALJ. *See In the Matter of Philip Serpe*, FTC Docket No. 9441, Notice of Appeal and Application for Review (July 15, 2025).

administrative proceedings in the first place, there is no excuse for his failure to seek leave to amend earlier in this litigation. If "the Commission is not competent to adjudicate structural constitutional claims," Pl.'s Mot. at 11, like Plaintiff says—an argument very much in tension with his decision to raise a Seventh Amendment claim through his FTC proceedings—then he could have raised an Article III claim from the very beginning of this litigation.[2]

Therefore, even if Plaintiff's delay was somehow justified by awaiting the Commission's final decision, Plaintiff's Article III claim would be barred by failing to raise that claim in his administrative proceedings.

## VI. Defendants' partial consent does not support the addition of an Article III claim.

Plaintiff also argues that Defendants' consent to his amendment of his private nondelegation and Seventh Amendment claims somehow justifies his addition of a new Article III claim. *See* Pl.'s Mot. at 4-5. Not so. The FTC did not oppose Plaintiff's amendment of his original claims to conform them to the way the FTC believes they should have been brought in the first place: under the APA, following the completion of the administrative proceedings. The FTC also did not oppose amendment on these grounds because it would allow for more efficient resolution of Plaintiff's claims by obviating the threshold issues raised in the summary judgment briefing. *See, e.g.*, FTC MSJ at 10-14 (raising final agency action and exhaustion issues). But as explained above, Plaintiff has no right to bring a second, duplicative lawsuit on an Article III theory. Therefore, the FTC reasonably objected to his belated attempt to inject that new claim into this lawsuit.

## VII. Any relief should be tailored to redress Plaintiff's injury.

Plaintiff seeks a declaratory judgment, an injunction, and vacatur of his sanctions. *See* Pl.'s Mot. at 13-16. Any further briefing on remedy should follow the Court's order on the merits of Plaintiff's claims because "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (citation omitted), and addressing how to tailor a remedy

[2] The FTC disputes Plaintiff's arguments on the merits of his Article III claim and his exhaustion arguments, but will not further address them for purposes of opposing Plaintiff's motion for leave to amend. It reserves the right to further argue the merits and exhaustion if the parties proceed to summary judgment on this claim.

in the abstract, prior to a ruling on the merits, is of limited use.

Even accepting Plaintiff's arguments at this stage, there is no basis for an injunction. Even if Plaintiff prevails, all his alleged injuries can be remedied through vacatur of the Commission's final order, which would vacate the sanctions imposed against him. The Supreme Court has made clear that in the APA context, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course," and "[i]f a less drastic remedy (such as partial or complete vacatur of [an agency's] decision) [is] sufficient to redress [a plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). Accordingly, an injunction is usually inappropriate where it "does not have any meaningful practical effect independent of its vacatur." *Id.* at 165. And again, whether relief should be narrowed beyond that is more appropriately addressed after the Court's consideration of the merits.

## **CONCLUSION**

For the above reasons, Plaintiff's motion for leave to amend should be denied.

Dated: August 14, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER HALL
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Taylor Pitz*
TAYLOR PITZ
CA Bar No. 332080
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Phone: (202) 305-5200
E-mail: taylor.n.pitz@usdoj.gov

*Counsel for the FTC*